# EXHIBIT A

TRI-STATE DISPOSAL, INC., an )
Illinois corporation, )
                                 )            2018CH02455
                                 )            CALENDAR/ROOM 09
                                 )            TIME 00:00
        Plaintiff,                 )   Case No. _____ Declaratory Jdgmt

                                 )
        vs.                          )   Judge_____
                                 )
THE VILLAGE OF RIVERDALE, )
a municipal corporation; )
LAWRENCE L. JACKSON, Mayor of the )
Village of Riverdale; and THE VILLAGE )
OF RIVERDALE BOARD OF TRUSTEES,)
RODRICK JEFFERSON, )
CASSANDRA RILEY-PINKNEY, )
GREGORY LEWIS, )
BRENDA WILLIAMS, ERIK LEVERE, )
and BRADLEY SMITH, )
                                 )
        Defendants.             )

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT TO
DECLARE VILLAGE OF RIVERDALE ORDINANCE NUMBER 2017-22 INVALID,
AND FOR VIOLATION OF THE OPEN MEETINGS ACT**

Plaintiff, Tri-State Disposal, Inc., an Illinois corporation ("Tri-State"), by and through its

attorneys, Mark A. LaRose, Marissa Alaska and LaRose & Bosco, Ltd, hereby brings its Verified

Complaint against The Village of Riverdale, Lawrence L. Jackson, Mayor of the Village of

Riverdale, and the Village of Riverdale Board of Trustees, Rodrick Jefferson, Cassandra Riley-

Pinkney, Gregory Lewis, Brenda Williams, Erik Levere, and Bradley Smith, and in support

hereof states as follows:

## I.    Introduction and Summary

1.      This Complaint challenges Ordinance Number 2017-22 passed by the Village of

Riverdale on November 28, 2017 granting a conditional use of Riverdale Materials, LLC to

allow it to conduct a waste collection operation at 1201 W. 138th Street, Riverdale, Illinois. *(See* **Exhibit 1,** Village of Riverdale Ordinance Number 2017-22)

2. At every stage of the proceedings before the Village of Riverdale Zoning Board of Appeals and the Village Board, Tri-State challenged the ordinance on procedural and substantive grounds.

3. This lawsuit challenges the procedure (or lack thereof) that resulted in the Village passing said arbitrary and capricious ordinance, not only because the ordinance is detrimental to the public health, safety and environment of the Village of Riverdale, but because it is specifically detrimental to Tri-State, as the ordinance results in unequal treatment of Tri-State.

## II. The Parties

4. Tri-State Disposal, Inc. is an Illinois corporation that operates a solid waste transfer station at 13903 S. Ashland Avenue in the Village of Riverdale, County of Cook, Illinois.

5. The Village of Riverdale is a municipal corporation operating in Riverdale, County of Cook, Illinois.

6. Lawrence L. Jackson is the Mayor of the Village of Riverdale, and is an elected official who resides in Riverdale, County of Cook, Illinois.

7. The Village or Riverdale Board of Trustees are elected officials, who reside in Riverdale, County of Cook, Illinois.

## III. Jurisdiction and Venue

8. Jurisdiction is proper in the Chancery Division as this lawsuit seeks declaration of invalidity of the Village of Riverdale Ordinance Number 2017-22, pursuant to 65 ILCS 5/11-13-25 and Riverdale, Illinois, Municipal Code, Title 17.

9. Venue is proper in Cook County, Illinois, because all of the actions of the defendant(s) occurred in Cook County, Illinois.

## IV. Common Allegations

### A. Tri-State Disposal, Inc.

10. Tri-State is an Illinois corporation that operates a solid waste and construction and demolition transfer station at 13903 S. Ashland Avenue, Riverdale, Illinois.

11. As part of its operation, the Village of Riverdale requires Tri-State to post a $50,000 CD as security for closure/post-closure and clean-up of the site. This CD is still in place for the benefit of the Village of Riverdale and its residents.

12. The Village of Riverdale also requires Tri-State to pay royalties to the Village of Riverdale based on every ton of waste that is processed through its site.

13. Tri-State also has rigorous requirements for permitting and environmental matters through the Illinois Environmental Protection Agency, Cook County Department of Environment, the Village of Riverdale, etc.

14. Tri-State's facility is less than one mile from Riverdale Materials' site.

15. Tri-State appeared at the Zoning Board of Appeals hearings on September 7, 2017 and November 2, 2017, and submitted documents at those hearings. See **Exhibit 2**, Tri-State submittal dated September 7, 2017, and **Exhibit 3**, Tri-State submittal dated November 2, 2017.

16. Tri-State also appeared at the Village Board Meeting where the subject ordinance was passed, and attempted to present additional materials in opposition to the ordinance. See **Exhibit 4**, Tri-State's proposed verified submittal dated November 28, 2017. That attempt was denied by the Village attorney at the board meeting. See **Exhibit 5**, Transcript of hearing held on November 28, 2017, at pp. 7-10.

17.     Transcripts of all of the hearings are attached hereto as **Exhibit 5** Transcript of hearing held on November 28, 2017; **Exhibit 6,** Transcript of hearing held on November 2, 2017; **Exhibit 7,** Transcript of hearing held on September 7, 2017.

**B.     Riverdale Materials, LLC**

18.     Riverdale Materials, LLC is a start-up company that originally applied for a solid waste transfer station, construction demolition transfer station, dirt transfer station, and stone processing facility. (See **Exhibit 8,** Riverdale Materials Conditional Use Application)

19.     After Tri-State objected, Riverdale Materials deleted from its application its request for a solid waste (trash) transfer station, but the remainder of its application stood unaffected. (See **Exhibit 9,** Riverdale Materials Amended Conditional Use Application)

20.     During the course of the hearings before the Zoning Board of Appeals, representatives from Riverdale Materials made material misrepresentations of fact in testifying in support of its application, including the following:

(a)     misrepresentations about drainage into a retention pond that Riverdale Materials does not own and has no right to use;

(b)     misrepresentations about the environmental condition of the property;

(c)     misrepresentations about having all of the necessary permits to operate the site.

21.     Riverdale Materials was operating the site during the entire period that its application for a conditional use was pending, despite the fact that it did not have the proper permits, nor did it have a conditional use approval.

**C.     The Riverdale Materials Site**

22.     The Riverdale Materials' site is the site of a former landfill that operated from the 1940's to 1962, when the operation was shut down by the courts.

23.     In 1962 the Illinois Appellate Court held that the dump located on the property was both a statutory public nuisance violative of the Illinois Criminal Code and a common law public nuisance, and operation of the dump was permanently enjoined. *City of Chicago v. Fritz*, 36 Ill. App. 2d 457, 184 N.E.2d 713 (Ill. App. Ct. 1962) (*see* **Exhibit 10,** attached).

24.     The dump was used for the deposit of garbage, refuse, chemicals, sludge, waste material and other substances. (**Exhibit 10**).

25.     Additionally, the Court found that the "dump burned seven days a week; that about fifty trucks a day dumped garbage and that chemical and septic tank waste were also dumped there." (**Exhibit 10** at 463).

26.     The Court also found that the dump was burned on a 24-hour basis, and "flames in the dump shoot hundreds of feet into the air, that the flames were caused by magnesium burning, and that the magnesium smoke would rise hundreds of feet in the air and then explode." (**Exhibit 10**)

27.     Accordingly, the Appellate Court affirmed permanently closing the dump due to the horrendous and dangerous environmental condition of the property.

28.     The site remains an unremediated, unlined hazardous waste landfill.

29.     The environmental condition of the site is such that the surface is unimproved, and placing more waste on top of the site will only increase the detrimental and environmental condition of the site.

30.     Riverdale Materials' application states that it proposes to use the site for delivery and processing of municipal solid waste in the form of street sweepings from the City of Chicago.

31.     Riverdale Materials' application and testimony identified an "on-site" retention pond to be used for drainage and storm water control. In reality, the retention pond is not "on" Riverdale Materials' site, is not owned by Riverdale Materials, and Riverdale Materials has no right to use the retention pond.

**D.      The Village of Riverdale Zoning Board of Appeals Hearings**

32.     The Village ordinance requires that a conditional use be subject to hearings and recommendation by the Village Plan Commission. Riverdale, Illinois, Municipal Code §17.03.040 and § 17.03.110.

33.     However, the Village of Riverdale does not have a Plan Commission. The Public Notices with respect to the hearings identify that the hearings would be held before the Zoning Board of Appeals "sitting as the Plan Commission." (See **Exhibit 11**, Public Notices for September 7, 2017 and November 2, 2017 Zoning Board of Appeals hearings)

34.     There are no documents, records, etc. identifying that the Zoning Board of Appeals was ever compiled, appointed, or certified as the Plan Commission, or to "act" as the Plan Commission.

35,     As such, the entire process under which the hearings was not in accordance with the Village Zoning Ordinance.

36.     The hearings before the Zoning Board of Appeals were also improper and illegal, since in the middle of the hearing process, and after substantive testimony had been given,

Mayor Lawrence Jackson fired the chairperson of the Zoning Board of Appeals, and loaded the Zoning Board of Appeals with persons politically connected to the mayor.

37.     The newly-appointed persons had not heard any of the substantive testimony to date, were unfamiliar with the situation.

38.     The Zoning Board of Appeals hearings were also improper because they were chaired by Village Attorney Matt Welch, or Matthew Ingersoll from his law firm, without any authority to do so. There is no statute, rule, regulation or ordinance that allows for or authorizes the Village attorney to chair the Zoning Board of Appeals and/or Plan Commission meetings.

39.     Not only did Matt Welch chair the hearings, make rulings on evidence, but he specifically persuaded the members of the Zoning Board of Appeals that the ordinance should be passed, and which conditions should apply.

40.     The involvement of the Village Attorney in *de facto* chairing the Zoning Board of Appeals meetings was objected to both by Tri-State and several members of the public during the hearings.

41.     During the Zoning Board of Appeals hearing on November 2, 2017, **thirteen (13)** members of the public gave testimony and opposition on the proposed conditional use, including Carmelia Shipp, Ms. Horton, Thomas Watson, James Reynolds, Deyon Dean, Roy McKay, William Clark, Cynthia Gilmore, Kay Randall, Janice Sims, Paula Williams, Patricia Plevens, and Ms. Meadors. The objections included:

        (a)     Riverdale Materials' proposed facility would endanger public health due to a history of contamination at the proposed site, which was previously the subject of a lawsuit due to the pollution;

(b)     Riverdale residents suffer the effects of low property values, and granting the conditional use would cause property values to decline and worsen the issue;

(c)     Riverdale Materials' facility did not have adequate drainage;

(d)     Riverdale has no need for a new transfer station, particularly in such close proximity (within .5 miles) of a transfer station that performs the same functions proposed by Riverdale Materials;

(e)     Riverdale Materials was already operating without the required permits;

(f)     Riverdale Materials was illegally dumping and covering it up.

42.     On November 2, 2017, Riverdale Materials submitted documentation to the Zoning Board of Appeals in an attempt to support its false contention that it had obtained all of the permits required in order to operate, when in reality it began operating before it obtained an IEPA permit. (See **Exhibit 12**, Permit Summary).

43.     Riverdale Materials testified at the November 2, 2017 hearing that it covered up contaminated dirt at the site. Tom Mate, general manager of the facility, testified, "You could see where the land was, and I put 2 feet of bricks and concrete over the contaminated stuff because that's what we were told to do. Then we covered with crush stone. Then we put asphalt grinds six inches thick on the material." (See **Exhibit 6**, November 2, 2017 transcript of hearing at p. 80).

44.     On November 2, 2017, the Zoning Board of Appeals voted 4 to 2 to recommend to the Village Board granting the conditional use.

**E.     Actions of the Village Board**

45.     At the time that the ordinance passed at the hearing on November 28, 2017, the Village Board was made up of the following:  Mayor Lawrence L. Jackson, Trustee Rodrick

Jefferson, Trustee Cassandra Riley-Pinkney, Trustee Gregory Lewis, Trustee Brenda Williams, Trustee Erik Levere, and Trustee Bradley Smith.

46.     Despite strong opposition from the plaintiff and the public, this matter was politically rigged from the beginning in favor of Riverdale Materials and to the detriment of the people of the Village of Riverdale, and their health, safety, welfare and environment, and to other businesses in Riverdale, including that of the plaintiff.

47.     Mayor Jackson was a vocal proponent of the project. He even had a sign with his picture posted at the Riverdale Materials' site stating "ANOTHER BUSINESS BROUGHT TO YOU BY THE HONORABLE MAYOR LAWRENCE JACKSON."

48.     On information and belief, the Village Attorney and the Village of Riverdale Board of Trustees violated the Open Meetings Act, since it was apparent at the hearing that this ordinance had been "discussed" by the Village Board and the Village Attorney outside the confines of a public meeting.

**F.    The Ordinance**

49.     On November 28, 2017, ordinance number 2017-22 was passed by unanimous vote without any ability for the public to present any public comment to the board.

50.     This arbitrary and capricious ordinance was passed without any requirement that Riverdale Materials post any bond, CD, or security for closure, post-closure, or clean-up of the site, and without any requirement for Riverdale Materials to pay any royalties to the Village.

## COUNT I

### (Declaratory Judgment – Improper Procedure – Zoning Board of Appeals)

51.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50, above, as though fully stated herein.

52.     The Village of Riverdale Zoning Ordinance sets forth the procedure to be followed for the administrative of granting or denying a request for a conditional use. (*See* **Exhibit 13**, attached, portions of Riverdale Municipal Code, Zoning Code § 17.03.040 (The plan commission) and § 17.03.110 (Conditional use).

53.     Among the procedures to be followed is that hearing(s) are to be held before the Village of Riverdale Plan Commission, and at the end of those hearings, the Plan Commission is to make a recommendation to deny or grant, with or without conditions, the conditional use to the full Village Board.

54.     These procedures were not followed in many respects, including but not limited to:

(a)     The Plan Commission did not do anything with respect to this matter, as the Village of Riverdale does not have a Plan Commission;

(b)     The Village of Riverdale allowed the Zoning Board of Appeals to conduct the hearings in this matter, not the Plan Commission. The Zoning Board of Appeals previously was never authorized, compiled or constituted to act as the Plan Commission;

(c)     After the initial hearing was held on September 7, 2017, at which testimony was present by the applicant and Tri-State, the Chairman of the Zoning Board of Appeals, Carmelia Shipp, expressed some reservation in opposition to the application. Almost immediately following her expressed opposition, she was fired from the Zoning Board of Appeals by Mayor Jackson under the pretext that her term had expired, even though it had expired two years earlier, and she was allowed to participate in the first and probably most significant round of hearings;

(d)     That same day, Mayor Jackson appointed three new members to the Zoning Board of Appeals, all of whom were politically aligned with the mayor;

(e)     The new members of the Zoning Board of Appeals had not heard any of the testimony prior to this, and, therefore, were improperly seated in the middle of the pending administrative hearing process to render a recommendation with respect to this application that they neither knew about, heard testimony about, or were qualified to recommend;

(f)     The Village Attorney is the law firm of Montana & Welch. The Village Attorney has no statutory or other authority that authorizes it to chair meetings of the Zoning Board of Appeals or Plan Commission;

(g)     That is exactly what Montana & Welch did – they chaired the meetings of the Zoning Board of Appeals, ruling on evidence and objections, and improperly advising the Zoning Board of Appeals as to how they should vote on this ordinance and what conditions they should include. This improper involvement by the Village attorney, and tainted the entire process;

(h)     The Village allowed the applicant to operate the site even before any application was filed, and before any hearings or recommendations were made;

(i)     In response to FOIA requests, there were no documents of any kind supporting the Village's decision to allow the applicant to operate "temporarily" pending the conditional use application and hearings related thereto.

55.     Because of the improper procedure followed as outlined in paragraph 54(a)-(i), above, the entire process and the recommendation from the Zoning Board of Appeals to the full Village Board was tainted, improper, and void *ab initio*.

56.     Tri-State objected to all of these improper procedures during the course of the

hearings. *See* **Exhibit 2** (September 7, 2017 submittal), **Exhibit 3** (November 2, 2017 submittal),

**Exhibit 6** (Transcript of hearing held November 2, 2017 hearing, at pp. 65-77), and **Exhibit 7**

(Transcript of hearing held September 7, 2017 hearing, at pp. 47-64).

**WHEREFORE,** because the entire process was procedurally flawed and did not follow

the requirements of the Village of Riverdale zoning ordinance, Tri-State respectfully prays that

this Court:

(1)     Declare that Ordinance Number 2017-22 is null and void *ab initio*;

(2)     Declare that any operation at the site by Riverdale Materials, LLC is not

authorized;

(3)     Grant costs to Tri-State;

(4)     For such other relief as this court deems necessary and appropriate.

## COUNT II

### (Declaratory Judgment – Improper Procedure - Village Board)

57.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through

50, above, as though fully stated herein.

58.     This matter was politically wired from the outset.  Even before the application

was filed, Mayor Jackson posted a sign at Riverdale Materials' site stating "ANOTHER

BUSINESS BROUGHT TO YOU BY THE HONORABLE MAYOR LAWRENCE

JACKSON." *See* **Exhibit 14**, photo.

59.     At the hearing before the Village Board on November 28, 2017, Village Attorney

Matt Welch, upon the matter being introduced to the Board by Mayor Jackson, stated to the

board members, "Yes. This was the ordinance that we discussed." (*See* **Exhibit 5,** Transcript of hearing held November 28, 2017, at p. 5, lines 3-4).

60.     Therefore, it is obvious that there were off the record and non-public discussions between the Village attorney and the board members prior to the hearing.

61.     The board members voted on this ordinance without requesting any comment from Tri-State or members of the public, reserving public comment to after the trustees voted on the ordinance.

62.     Tri-State objected to this procedure.

63.     The board members that voted on this did not have the benefit of public comment.

64.     Tri-State had prepared written submissions and comments to be considered by the board. The written submissions were not allowed to become part of the record, or read into the record, and the Village attorney improperly made that decision.

65.     Because of the flaws in the procedural process before the Zoning Board of Appeals set forth in Count I, paragraph 54 (a)-(i), above, the entire process before the Village board was procedurally flawed.

**WHEREFORE,** because the entire process was procedurally flawed and did not follow the requirements of the Village of Riverdale zoning ordinance, Tri-State respectfully prays that this Court:

(1)     Declare that Ordinance Number 2017-22 is null and void *ab initio*;

(2)     Declare that any operation at the site by Riverdale Materials, LLC is not authorized;

(3)     Grant costs to Tri-State;

(4)     For such other relief as this court deems necessary and appropriate.

# COUNT III

## (Declaratory Judgment – Substantive Violations –
## Zoning Board of Appeals and the Village Board)

66.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50, above, as though fully stated herein.

67.     The Ordinance required the Zoning Board of Appeals to make findings with respect to various conditions, including but not limited to the following:

(a)     That the establishment, maintenance, or operation of the conditional use will not be detrimental to, or endanger the public health, safety, morals, comfort, or general welfare;

(b)     That the conditional use will not be injurious to the uses and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood; and,

(c)     That adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided.

(Riverdale, Illinois, Municipal Code §17.03.110).

68.     The Zoning Board of Appeals findings in favor of these three conditions is against the manifest weight of the evidence at the respective hearings, because:

(a)     There was substantial testimony that the proposed waste operation at Riverdale Materials would be detrimental to the community and the neighboring properties, and detrimental to their property value;

(b)     The Riverdale Materials property is an unclosed, highly contaminated, hazardous waste site, and its operation on the site will only aggravate an already horrendous environmental condition;

(c)    The applicant misrepresented testimony with respect to at least the following points:

> (i)    that the site did not have any environmental problems;

> (ii)    that they had all the permits necessary to operate the site (which they were already operating at the time of the hearings); and

> (iii)    that they had proper drainage into an on-site retention pond when in fact the retention pond is on a neighboring site, and the applicant has absolutely no right, title or interest to the retention pond or the use thereof.

(d)    Several members of the public and Tri-State objected to these matters at the various hearings.

69.    The Zoning Board of Appeals' recommendation to the Village Board that the applicant met the conditions necessary to grant a conditional use permit is against the manifest weight of the evidence.

**WHEREFORE,** because defendants violated substantive portions of the Village of Riverdale Ordinance, Tri-State respectfully prays that this Court:

(1)    Declare that Ordinance Number 2017-22 is null and void *ab initio*;

(2)    Declare that any operation at the site by Riverdale Materials, LLC is not authorized;

(3)    Grant costs to Tri-State;

(4)    For such other relief that this court deems necessary and appropriate.

## COUNT IV

### (Violation of Equal Protection Clause
### Zoning Board of Appeals and Village Board)

70.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50, above, as though fully stated herein.

71.     Plaintiff has a special interest in opposing and having this arbitrary and capricious ordinance struck down, because the ordinance as written, both directly and tacitly, results in unequal treatment of Tri-State and the applicant Riverdale Materials.

72.     Tri-State and Riverdale Materials are similarly situated competitors who both currently operate transfer stations in the Village of Riverdale, and as such, are entitled to equal protection of the laws.

73.     To operate in the Village of Riverdale, in 2002, Tri-State was required to post a $50,000 CD for the benefit of Riverdale in the event amounts were necessary to close or remediate the site if Tri-State refused to do so.

74.     During the course of the hearings and submittals by Tri-State, Tri-State requested, and in fact demanded, that if the conditional use was granted that the upstart company Riverdale Materials would be required to post a like-type of security for the benefit of the Village for remediation and/or closure in the event that Riverdale Materials failed to do so.

75.     As part of its requirement to operate in the Village of Riverdale, Riverdale Materials is required to pay a royalty to the Village of Riverdale for every ton of material (solid waste, construction and demolition material, or any other materials collected at the site) delivered to and processed to the site.

76.     Since the early 2000's, Tri-State has paid more than $1 million in royalties to the Village of Riverdale.

77.     During the course of the hearings and submittals by Tri-State, Tri-State requested, and in fact demanded, that if the conditional use was granted, that the upstart company Riverdale Materials would be required to have a similar host community agreement as a condition, and be required to pay royalties to the Village of Riverdale.

78.     Despite knowledge of all of this information, and request and demand that the conditional use include conditions for bonding or CD and royalties, the Zoning Board of Appeals and the Village Board passed this ordinance totally ignoring and not including these very important conditions.

79.     The result of this is unequal treatment of Tri-State and Riverdale Materials, as Riverdale has conferred a burden upon Tri-State that it has not conferred upon Riverdale Materials.

80.     The distinction requiring Tri-State to post a CD and pay royalties to the Village but not requiring the same of Riverdale Materials has no rational basis, is not based upon legitimate Village interest, and, in fact, is in direct violation of the interests of the Village of Riverdale and its citizens.

81.     This unequal treatment specifically affects Tri-State differently than all other taxpayers, as it is required to satisfy these conditions, and has done so, while its direct competition, Riverdale Materials, is not required to do so.

82.     The actions of the Village board violate the equal protection clause of the Fourteenth Amendment to the United States Constitution and the equal protection clause of Article 1, Section 2 of the Constitution of the State of Illinois.

**WHEREFORE,** Tri-State respectfully prays that this Court:

(1)     Declare that Ordinance Number 2017-22 is null and void *ab initio*;

(2)     Declare that any operation at the site by Riverdale Materials, LLC is not authorized;

(3)     Grant costs to Tri-State;

(4)     For such other relief as this court deems necessary and appropriate.

## COUNT V

### (Violation of the Open Meetings Act)

83.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50, above, as though fully stated herein.

84.     Upon information and belief, the Village of Riverdale Board of Trustees met privately and secretly with Village Attorney Matt Welch between the dates of November 2, 2017 and November 28, 2017.

85.     At the hearing before the Village Board on November 28, 2017, Village Attorney Matt Welch, upon Mayor Jackson's introduction of Ordinance 2017-22 to the Village Board, stated to the board members, "Yes. This was the ordinance that we discussed." **(Exhibit 5**, Transcript of hearing held November 28, 2017, at p. 5, lines 3-4).

86.     The Village Board did not discuss the pending ordinance at any public meeting prior to November 28, 2017.

87.     Plaintiff's attorneys submitted a Freedom of Information Act (FOIA) request to the Village of Riverdale on February 13, 2018, requesting information pertaining to any non-public meetings held between November 2, 2017 and November 28, 2017.

88.     The Village of Riverdale has not yet provided a response to said FOIA request, but on February 21, 2018, extended its time to respond by five business days to allow for review

and determination of whether materials are exempt from disclosure under Section 7 of the Freedom of Information Act.

89.     The actions of the Village Board, in holding a private and secret meeting regarding Ordinance Number 2017-22, violate 5 ILCS 120/1 through 6, the Open Meetings Act, as well as Riverdale, Illinois Municipal Code §2.08.120. (*See,* **Exhibit 13**, at § 2.08.120)

**WHEREFORE,** Tri-State respectfully prays that this Court:

(1)     Order the Village of Riverdale to immediately make the minutes of this meeting available to the public;

(2)     Award reasonable attorney's fees to Tri-State Disposal, Inc.; and,

(3)     Award any further relief that the Court deems necessary and just.

Respectfully submitted,

TRI-STATE DISPOSAL, INC., an
Illinois corporation, Plaintiff

By: _____
Mark A. LaRose, One of Its Attorneys

Mark A. LaRose
Marissa R. Alaska
LaRose & Bosco, Ltd.
Firm I.D. No. 37346
200 N. LaSalle Street, Suite 2810
Chicago, IL 60601
(312) 642-4414
Fax (312) 642-0434
mlarose@laroseboscolaw.com
malaska@laroseboscolaw.com

## VERIFICATION

I, Sheryl Germany, President of Tri-State Disposal, Inc., under oath and subject to penalties for perjury, and based on my personal knowledge, do hereby verify and affirm that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

_____
Sheryl Germany