**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-02138 |
| vs. | ) | Judge Sara L. Ellis |
| THE VILLAGE OF RIVERDALE, a municipal corporation; LAWRENCE L. JACKSON, Mayor of the Village of Riverdale | ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

**DEFENDANTS', THE VILLAGE OF RIVERDALE AND LAWRENCE L. JACKSON'S, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendants, Lawrence L. Jackson ("Mayor") and the Village of Riverdale ("Village"), by their attorneys, Montana & Welch, LLC., and move this Court for entry of an order dismissing the Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). In support thereof, Defendants state as follows:

## I. INTRODUCTION

Plaintiff's First Amended Complaint at Law alleges constitutional deprivations allegedly suffered by the Plaintiff, Tri-State Disposal, Inc. ("Tri-State") in relation to a Village of Riverdale ordinance ("the Ordinance") that granted a special use to Riverdale Materials, a non-party, to operate a metal recycling facility and transfer station in the Village of Riverdale. *See Exhibit A, Plaintiff's First Amended Complaint at Law, paragraphs 1-3.* Count I of the Plaintiff's First Amended Complaint claims a violation of procedural due process relating to the Ordinance, Count II of the Plaintiff's First Amended Complaint claims a violation of substantive due process relating to the Ordinance, Count III of the Complaint alleges a violation of the Equal Protection Clause,

Count IV requests Judicial Review of the granting of the special use by Common Law Certiorari, Counst V and VI claim first amendment political retaliation, and Count VII claims breach of contract. The instant motion is directed at dismissal pursuant to Rule 12(b)(6) and 12(b)(1) of all counts of the Plaintiff's First Amended Complaint.

## II. AUTHORITY FOR THE MOTION

### A. Federal Rule of Civil Procedure 12(b)(1)

When moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may opt for a facial attack, i.e., a challenge of the court's subject matter jurisdiction based on the sufficiency of the complaint's allegations, or a factual attack, i.e., a challenge of the factual basis for the court's subject matter jurisdiction. *Boutte v. Chao*, 2007 WL 257627, at 1 (N.D.Ill., Jan. 23, 2007), citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir. 1993). If the Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleadings and allegations, then the movant presents a facial attack and those allegations are taken as true and construed in a light most favorable to the complainant. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d at 1583.

However, if the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction and the allegations in the complaint are not controlling. *Id.* The party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof. *Id.* Thus, once challenged factually, no presumption of truthfulness attaches to a plaintiff's allegations; and, such allegations alone are insufficient to meet the complainant's burden. *See Cedars-Sinai Med. Ctr*., 11 F.3d at 1583-84. The instant Rule 12(b)(1) motion constitutes a factual challenge.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In the alternative, dismissal under Fed. R. Civ. P. 12(b)(6) is proper where the plaintiff fails to state a claim upon which relief can be granted and where the defect appears on the face of the complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim that is plausible on its face." *Adams v. City of Indianapolis*, 742 F. 3d 720, 728 (7th Cir. 2014) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To do so, the complaint must meet two requirements. First, the complaint must describe the plaintiff's claims in sufficient detail to give defendant fair notice of what the claim is and the grounds upon which its rests. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084-85 (7th Cir. 2008); *Lang v. TCF Nat'l Bank*, 249 Fed. App'x. 464, 466 (7th Cir. 2007). Second, the allegations in the pleading must plausibly suggest that plaintiff has a right to relief, raising that possibility above a speculative level. *Tamayo*, *supra*. A claim plausibly suggests a plaintiff has a right to relief when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Adams, supra* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a Complaint does not need detailed factual allegations, it nonetheless is a plaintiff's obligation to provide the grounds for his/her entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* A Complaint will not suffice if it asserts "naked assertion[s]" devoid of further "factual enhancement." *Id* at 557. A complaint "must actually suggest that the plaintiff has a right to relief," as "it is no longer sufficient for a complaint to avoid foreclosing possible bases for relief." *Tamayo, supra* (quoting *EEOC v. Concentra Health Servs*., 496 F.3d 736 (7th Dist. 2007)). Further, under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957)). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). "[A] plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co*., 521 F.3d 686, 699 (7th Cir. 2008).

## III. ANALYSIS

### A. Count III of the Plaintiff's Complaint Should be Dismissed Pursuant to Rule 12(b)(6) because the Allegations are Insufficient to Overcome the Rationality That Attaches to Government Actions in a Class-of-One Equal Protections Case.

Count III of the Plaintiff's First Amended Complaint alleges that the actions of the Village in passing the Ordinance violated the equal protection clause of the Fourteenth Amendment to the United States Constitution and the equal protection clause of Article 1, Section 2 of the Constitution of Illinois because it resulted in unequal treatment to Tri-State. *Exhibit A, paragraphs 114-116.* Yet, Tri-State does not belong to a suspect class protected by the Equal Protection Clause. *See Discovery House*, 319 F.3d at 282 (finding that a methadone clinic alleging discrimination based on an adverse zoning decision did not fall within a suspect class (citing *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L.Ed. 2d 313 (1985)). Because Tri-State does not belong to a suspect class, its equal protection claim can only survive if Tri-State properly alleges a class-of-one claim. *Flying J., Inc. v. City of New Haven*, 549 F.3d 538, 548 (7th Cir. 2008); *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005). To succeed under a "class-of-one" equal protection theory, a plaintiff must show that: (i) he was treated differently from other individuals similarly situated; and (ii) there was no rational basis for the

difference in treatment or the cause of the different treatment was "illegitimate animus." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004). In *Lauth v. McCollum,* The Seventh Circuit clarified the standard for pleading a "class-of-one" equal protection claim:

> "A plaintiff who does not belong to any "suspect" (that is favored) class – by definition, the situation of a class-of-one plaintiff – must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the clarification**. Governmental action only fails the rational basis scrutiny if no sound reason for the action can be hypothesized**….Animus thus comes into play only when, no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it." (**Emphasis Added)**

424 F.3d 631, 634 (7th Cir. 2005)(internal citations and quotations omitted). In *Flying J. Inc., v. City of New Haven,* the Seventh Circuit held that the developer of a travel plaza/truck stop failed to state a class-of-one claim because the developer merely alleged that the adverse zoning decision was "adopted out of animus for Flying J and its development plans." 549 F.3d at 545. The *Flying J* decision applied the standard articulated in *Lauth* at the motion to dismiss stage:

> "While the district courts continue to presume the truth of all the allegations in the complaint when evaluating a Rule 12(b)(6) motion to dismiss, **allegations of animus do not overcome the presumption of rationality** and the Court evaluates those allegations once a plaintiff has pled facts that show the irrationality of the government action in question. **This standard reflects the fairly intuitive idea that a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity. It is only when the courts can hypothesize no rational basis for the action that allegations of animus come into play**."

*Flying J,* 549 at 546-547. Similarly, in *Discovery House,* decided before *Lauth,* the Seventh Circuit found that a methadone clinic failed to prove a class-of-one equal protection claim as a matter of law where the clinic failed to meet its burden of "eliminating any 'reasonably conceivable state of facts that could provide a rational basis for the classification.'" 319 F. 3d at 282.

Count III alleges that the Village discriminated against Tri-State by conferring a burden upon Tri-State that it did not confer upon Riverdale Materials, a competing business, when it granted

Riverdale Materials a special use. *Exhibit A, Count III, paragraph 112.* In addition, Tri-State amended its Complaint to include a statement that Tri-State is a class of one, there is no reasonable set of facts that could establish a rational basis for classifying Tri-State differently, and there is no rational reason for the Village's actions other than animus. *Exhibit A, Count III, paragraphs 103, 104, and 105.* Yet, a formulaic recitation of the elements required for a class of one claim is not the same, however, as pleading facts sufficient to demonstrate that the Village's decision to grant Riverdale Materials a special use was irrational and solely the result of animus. The fact that the Village issued a special use to Riverdale Materials that did not contain the same requirements as Tri-State's terms of business with the Village does not render the action per se irrational. *Flying J*, 549 F.3d at 547. As the Seventh Circuit consistently recognizes, "federal courts are not zoning boards of appeal." *Discovery House,* 319 F.3d at 283 (citing *New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474 (7th Cir. 1990)). "Zoning decisions 'will often, perhaps almost always, treat one landowner differently from another…" *Discovery House*, 319 F.3d at 283 (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 565 120 S. Ct., 1073, 145 L. Ed. 2d 1060 (2000)). Rather than provide facts that negate any rational basis for the Village's action, Tri-State merely alleges that the Ordinance resulted in unequal treatment to Tri-State and therefore concludes that no rational basis existed for the decision. Tri-State has not eliminated any reasonably conceivable state of facts that could provide a rational basis for the Village's decision to grant Riverdale Materials a special use. Therefore, Tri-State has failed to plead a class-of-one equal protection claim under the standard articulated by the Seventh Circuit in *Flying J, Inc. v. City of New Haven* and Count III of the Plaintiff's First Amended Complaint must be dismissed with prejudice.

**B. Counts I and II of the Plaintiff's Compliant Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Has No Constitutionally Protected Property Interest**

Counts I and II of the Plaintiff's First Amended Complaint allege that the actions of the Village in passing the Ordinance violated Tri-State's procedural and substantive due process rights. *See Exhibit A, Counts I and II.* Specifically, the First Amended Complaint claims that Defendants violated Tri-State's due process rights by failing to follow their own procedures in the

granting of a special use to Riverdale Materials. *See Exhibit A, paragraph 73(a) – (i).* Plaintiff also claims that Defendants violated Tri-State's substantive due process rights by making an arbitrary and capricious conclusion that Riverdale Materials met the conditions necessary to grant it a special use. *See Exhibit A, paragraphs 91-92.* Both Counts request declaratory relief, expressly requesting that the Court find that Tri-State's constitutional rights were violated, declare the Ordinance null and void *ab initio*; and declare operation by Riverdale Materials unauthorized. *See Exhibit A, Counts I and II.*

However, Tri-State has no vested property right to which any constitutional protection, substantive or procedural, would attach. Therefore, Tri-State's federal procedural and substantive due process claims are inadequate.

Section 1 of the Fourteenth Amendment provides that no State shall "deprive any person of ... property ... without due process of law." U.S.C.A.Const. Amend. 14. In a due process case, whether procedural or substantive, a court first reviews whether a plaintiff has been deprived of a constitutionally protected property or liberty interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972); *Polenz v. Parrott,* 883 F.2d 551, 555 (7th Cir. 1989): *Ropiy v. Hernandez,* 363 Ill.App.3d 47, 842 N.E.2d 747 (1st Dist. 2005). Only after a finding of a protected interest and deprivation of it does the court consider whether the defendant "observed elemental due process safeguards, including notice and a hearing." *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 566 (7th Cir. 1991)(citing *Gaballah v. Johnson,* 629 F.2d 1191, 1202 (7th Cir. 1980)).

It is unclear from the Plaintiff's First Amended Complaint what Tri-State is claiming is a constitutionally protected property interest. Plaintiff states Tri-State "suffered damages by loss of income through unequal treatment and competitive disadvantage" due to the Ordinance, that it "suffered a deprivation of its property rights regarding its business," and that it "suffered an

invasion of its legally protected interest;" but Tri-State did not identify or plead in its First Amended Complaint what specific property interest it claims is constitutionally protected. *See Exhibit A, Count I, paragraphs 76, 77, 79 and Count II, paragraphs 93, 94, 96.*

"Property" under the Fourteenth Amendment's due process clause is individual entitlement grounded in state law which cannot be removed except for cause. *Logan v. Zimmerman Brush Co.* 455 U.S. 422 (1982). Not only does Tri-State fail to plead what property interest it has been deprived of; Tri-State also fails to plead or reference any state law that provides a basis for its alleged property interest. Without pleading what property interest is constitutionally protected and the basis for that alleged property right Tri-State cannot allege a violation of its procedural or substantive due process rights. Based on its failure to adequately plead a protected property interest, this Court cannot proceed to the question of whether or not Tri-State's due process rights were violated[1]. Therefore, Counts I and II of Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Tri-State does not present a claim upon which relief can be granted.

### C. Requests for Declaratory Relief Should Be Dismissed Pursuant to Rule 12(b)(6)

All Counts of the Plaintiff's First Amended Complaint at Law request that the Ordinance be declared null and void *ab initio* and that any operation at the site by Riverdale Materials be declared unauthorized. Clearly, Tri-State is seeking declaratory action from the Court, even though Tri-State has amended its Complaint to allege constitutional violations.

---

[1] If the Court finds a property interest has been plead or if the Plaintiff addresses what property interest it has plead in its response to this motion to dismiss, Defendants will argue in their reply that Tri-State, even if found to have a property interest, has no right to relief under procedural or substantive due process laws in this matter.

The propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power; in contrast to most other actions, there is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action. 28 U.S.C.A. § 2201(a). *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700 (7th Cir. 2014). In order to maintain a declaratory judgment action, the movant must demonstrate a justiciable controversy exists that presents a real, substantial, presently existing controversy as to which specific relief is sought; the movant also must demonstrate a legally protected interest directly at issue and subject to immediate or prospective consequential relief, and the question presented by the movant must be ripe for judicial determination. *Sears, Roebuck & Co. v. American Mut. Liability Ins. Co.*, 372 F.2d 435 (7th Cir. 1967); *Smith v. Transit Cas. Co.*, 281 F. Supp. 661 (E.D. Tex. 1968), decision aff'd, 410 F.2d 210 (5th Cir. 1969).

Here, Tri-State does not plead the jurisdiction upon which this Court is able to hear a declaratory action in this matter. In addition, Tri-State inappropriately seeks declaratory relief by embedding it improperly into its request for relief from alleged constitutional violations. The constitutional violations alleged do not contemplate declaratory relief and Tri-State does not plead any other basis for declaratory judgment. Further, Tri-State does not plead any of the requirements necessary to maintain a declaratory judgment action in federal court. Therefore, all requests for declaratory relief should be stricken and dismissed from the Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) as the Plaintiff fails to plead grounds for its entitlement to declaratory relief.

**D. Counts V and VI Must Be Dismissed as Tri-State Does Not Plead A Widespread Practice of Political Retaliation in the Village or That The Decision By the Village Not To Renew Tri-State's Contract was Based on Tri-State's Alleged Political Affiliations**

Plaintiff claims in Counts V and VI of its First Amended Complaint that Defendants have taken retaliatory actions against Tri-State in response to protected First Amendment speech in violation of 42 U.S.C §1983. Tri-State does not allege anywhere in its First Amended Complaint that the Village has a policy, custom, or practice to retaliate against independent contractors based on the contractor's political affiliation, which immediately nullifies its §1983 claim against the Village. In addition, Mayor Jackson has legislative immunity as argued in Subsection G below. Even further, Tri-State did not engage in protected First Amendment activity; and even if its activity is found to have been protected by the First Amendment; Tri-State does not adequately plead that its activity was a factor in the Defendants' passage of the Ordinance or any other alleged adverse action against Tri-State**.** Each of these arguments, other than legislative immunity which addressed in Subsection G, will be addressed below.

**1. Counts V and VI Fail To State A Valid Cause of Action For Municipal Liability.**

Municipalities, government agents, or policymaking individuals may not be held liable under a respondeat superior theory but may be held liable under Section 1983 for constitutional deprivations pursuant to governmental custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In order to establish liability under *Monell*, a plaintiff must demonstrate: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *See also, Waters v. City of Chi*., F.3d 575, 581 (7th Cir. 2009) *(quoting Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). To state a *Monell* claim, a plaintiff is required to "plead factual content that allows the Court to

draw the reasonable inference that the City maintained a policy, custom, or practice that deprived him of his constitutional rights." *McCauley v. City of Chi*., 671 F.3d 611, 616 (7th Cir. 2011) (*citing Iqbal*, 556 U.S. at 678). In this regard, *Gustafson v. Jones*, 117 F.3d 1015 (7th Cir. 1997), is instructive. There, the District Court dismissed a complaint that alleged that the Milwaukee Police Department had in the past, and continued to, engage in a practice of retaliatory transfer, discipline, and discharge. 117 F.3d at 1021-22. The Seventh Circuit affirmed the District Court's ruling and noted that the isolated incident regarding the plaintiff "was not enough to show that the County itself had a policy or custom that caused the plaintiff's injuries." *Id.* at 1021 (*citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397 (1997)).

Here, Tri-State has plead no facts that support a reasonable inference that the Village engaged in "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice" of politically retaliating against independent contractors for their objections to Village decisions regarding special use permits. *Waters*, 580 F.3d at 581. Instead, Plaintiff makes a conclusory statement that "the retaliation was engaged in as a policy of the Village of Riverdale and its mayor – Defendant Jackson." *See Exhibit A, paragraph 128.* Plaintiff provides no factual basis for that conclusory allegation. *Id.* Tri-State's Complaint is completely devoid of any facts that support an inference that the Village engaged in a widespread policy, practice, or custom that led to Tri- State's alleged constitutional violations. Therefore, Counts V and VI must be dismissed against the Village with prejudice pursuant to Rule 12(b)(6) because it does not sufficiently plead facts to state a claim to relief for municipal liability.

**2. Tri-State Did Not Engage in Protected First Amendment Activity; and Even If Found to Have Engaged in Such Activity, Does Not Adequately Plead that its Activity Was A Factor in the Defendants' Passage of the Ordinance or Any Other Alleged Adverse Action Against Tri-State**

To establish retaliation in violation of the First Amendment, a government contractor must prove: (1) it engaged in activity protected by the First Amendment; (2) the defendants took an adverse action against it; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse action. *Lyons v. Vaught*, No. 16–1062, 2017 WL 5622816, at (8th Cir. Nov. 22, 2017). *Board of County Com'rs, Waubansee County Kan v. Umbehr* is analogous to this case, with the exception that Tri-State was never entitled to automatic renewal of its contract. In *Board of County Com'rs, Waubansee County Kan,* during the term of his at-will contract with the County to haul trash, respondent Umbehr was an outspoken critic of the Board of County Commissioners. *Board of County Com'rs, Waubansee County Kan v. Umbehr*, 518 U.S. 668 (1996). After the commissioners voted to terminate (or prevent the automatic renewal of) Umbehr's contract, allegedly because they took Umbehr's criticism badly, he brought suit against two commissioners under 42 U.S.C. § 1983. *Id.* The District Court granted Commissioners summary judgment, but the Tenth Circuit reversed in relevant part and remanded, holding that the First Amendment protects independent contractors from governmental retaliation against their speech, and that the extent of that protection must be determined by weighing the government's interests as a contractor against the free speech interests at stake in accordance with the balancing test applied in the government employment context under *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811. However, the Supreme Court explained that to prevail, Umbehr had to show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him. *Board of County Com'rs, Waubansee County Kan*, 518 U.S. 668, 685 (1996). If Umbehr could make that showing, the Board would then have a valid defense if it could show, by

a preponderance of the evidence, that, in light of their knowledge, perceptions, and policies at the time of the termination, the Board members would have terminated the contract regardless of Umbehr's speech. See *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Board would also prevail if it could persuade the District Court that the County's legitimate interests as a contractor, deferentially viewed, outweighed the free speech interests at stake.

In this case, Tri-State is still working in the Village in accordance with the contract the Village has with it. Tri-State will continue to work in the Village until its contract expires in July 2019. Tri-Sate's contract with the Village was not subject to an automatic renewal clause. Tri-State does not plead that the decision by the Village Board in March 2018 not to extend its contract in July 2019 was motivated by its speech on a matter of public concern, an initial showing that requires Tri-State to prove more than the mere fact that Tri-State criticized the Village before terminating the contract.

According to the First Amended Complaint, Tri-State began to criticize the Village's process for considering Riverdale Materials' (a competing disposal business) application for a special use in September 2017. *See Exhibit A, paragraph 55.* The exhibits attached to the Complaint indicate that Tri-State was in opposition to the grant of a special use permit to Riverdale Materials, not as a matter of public concern; but because it did not want a competitive disposal business operating in Riverdale. In fact, the first "criticism" cited in the Complaint was a September 2017 letter to the Riverdale Zoning Board of Appeals stating Tri-State's strenuous objection to Riverdale Materials' application and to "demand" that the Zoning Board of Appeals either take no action or deny the application for the reasons stated in the letter. *See Exhibit A, Exhibit 2.* In that letter, Tri-State stated that the application should not be approved because, "there

is no need for another recycling transfer station in the Village of Riverdale since Tri-State Disposal's transfer station is less than ½ mile from the proposed site." *Id.* This letter is not a "criticism" of the Village or the Mayor. Further, the subject matter of this letter does not involve a matter of public concern. To the contrary, this is a letter written to attempt to eliminate private business competition. In addition, while certain other exhibits to the Complaint make allegations regarding the make-up of the Zoning Board of Appeals being improper, the exhibits, additional letters and transcripts of proceedings before the Zoning Board of Appeals, clearly demonstrate that Tri-State's motivation for speaking out against the Village granting Riverdale Materials a special use to operate in the Village was not to protect the public; but was to protect its private business interests. This is not protected speech on a matter of public concern. Therefore, Tri-State's allegations of political retaliation based on these "criticisms" does not entitle Tri-State to relief.

Further, Plaintiff's original verified complaint solely sought declaratory judgment to cease the operation of Riverdale Materials in the Village. The First Amended Complaint also seeks the same declaratory judgment. The subject matter of Tri-State's pre-litigation "criticisms" and its lawsuit against the Defendants is unrelated to matters of public concern and is solely related to protecting Tri-State's private business interests. Therefore, the activity engaged in by Tri-State is not activity protected by the First Amendment and Tri-State's allegations of political retaliation must be dismissed pursuant to Rule 12(b)(6) because Plaintiff cannot plead factual content that would allow the Court to infer that the Defendants are liable for political retaliation.

Yet, even if the Court concludes that the pleadings show that Tri-State's pre-litigation "criticisms" and lawsuit against the Defendants were motivated by a matter of public concern, the Plaintiff does not plead facts to support its conclusory statement that the protected conduct was a substantial or motivating factor in the defendants' decision to take "adverse action" against Tri-

State. Cities and other governmental entities make a wide range of decisions in the course of contracting for goods and services. *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996). The Constitution accords government officials a large measure of freedom as they exercise the discretion inherent in making these decisions. *Board of Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S., at 674,116 S.Ct., at 2346. Interests of economy may lead a governmental entity to retain existing contractors or terminate them in favor of new ones without the costs and complexities of competitive bidding. *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 725 (1996). A government official might offer a satisfactory justification, unrelated to the suppression of speech or associational rights, for either course of action. *Id.* The first may allow the government to maintain stability, reward good performance, deal with known and reliable persons, or ensure the uninterrupted supply of goods or services; the second may help to stimulate competition, encourage experimentation with new contractors, or avoid the appearance of favoritism. *Id.* These are choices and policy considerations that ought to remain open to government officials when deciding to contract with some firms and not others, provided of course the asserted justifications are not the pretext for some improper practice. *Id.* In view of the large number of legitimate reasons why a contracting decision might be made, fending off baseless First Amendment lawsuits should not consume scarce government resources. *Id.* If the government terminates its affiliation with a service provider for reasons unrelated to political association, *Mt. Healthy City Bd.of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), as, for example, where the provider is unreliable, or if the service provider's political "affiliation is an appropriate requirement for the effective performance" of the task in question, *Branti v. Finkel*, 445 U.S., at 518, 100 S.Ct., at 1295, there will be no First Amendment violation.

While the Plaintiff claims via one conclusory paragraph in their First Amended Complaint that the motion to terminate the Village's agreement with Tri-State was made in retaliation for their alleged free speech and the filing of this lawsuit, Tri-State provides no factual support for this claim. Tri-State is still operating pursuant to contract in the Village. Tri-State is not entitled to renewal of its contract in July 2019. The Village's decision was in no way politically motivated or related to the allegations in Tri-State's Complaint and Plaintiff does not plead any facts to dispute the same. The decision not to renew Tri-State's contract would have been made regardless of Tri-State's opposition to the granting of a special use to Riverdale Materials and Plaintiff does not plead any facts to dispute the same. Tri-State does not adequately plead facts supporting a cause of action for political retaliation; therefore, Counts V and VI of the First Amended Complaint must be dismissed with prejudice pursuant to Rule 12(b)(6).

**E. Tri-State Lacks Standing to Bring Any of Its Claims and All Counts of the Complaint Should Be Dismissed with Prejudice.**

Standing is a jurisdictional challenge properly raised via Rule 12(b)(1). *Ballentine v. United States*, 481 F.3d 806, 810 (3rd Cir. 2007). Jurisdiction is a function of restrictions placed upon it by both the United States Constitution and federal statutory law, both of which must authorize a federal court to hear a given type of case." *Int'l Union Pac. of Operating Eng'rs, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009). Accordingly, it "has been the virtually universally accepted practice of the federal courts to permit any party to challenge or, indeed, to raise *sua sponte* the subject-matter jurisdiction of the court at any time and at any stage of the proceedings." *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008). "When reviewing a dismissal for lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Id*. at 625 (quoting

*Long v. Shorebank Dev. Corp*., 182 F.3d 548, 554 (7th Cir. 1999)). Nonetheless, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–657 (7th Cir. 2008) (quoting *Shorebank Dev. Corp*., 182 F.3d at 554). The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161, 137 L. Ed. 2d 281 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)); see also, *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 127 S. Ct. 2553, 2562, 168 L. Ed.2d 424 (2007)("Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing enforces the Constitution's case-or-controversy requirement.'"

To satisfy standing, a plaintiff must demonstrate that: (1) "he has suffered 'injury in fact,' (2) "the injury is 'fairly traceable' to the actions of the defendant," and (3) "the injury will likely be redressed by a favorable decision." *Spear*, 520 U.S. at 162, 117 S. Ct. at 1161 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136–37; 119 L. Ed. 2d 351 (1992); citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72, 102 S. Ct. 752, 757–59, 70 L. Ed. 2d 700 (1982).) "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). Standing thus "involves whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Discovery House*, 319 F.3d at 279.

Specifically, in relation to the first requirement of standing, the "irreducible constitutional minimum of standing requires that plaintiff have suffered an injury in fact, which is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical." *Lujan*, 504 U.S. at 560. As argued above, Tri-State does not allege a specific harm of a legally protected interest that would warrant invocation of federal court jurisdiction. Tri-State is a business still functioning pursuant to contract within the Village of Riverdale. Tri-State is attempting to quell business competition to protect its private business interests. Tri-State does not have and does not plead a protected property interest, Tri-State did not engage in protected First Amendment Activity, and Tri-State has not suffered and has not plead a concrete injury that is redressable by a favorable outcome in this case. Tri-State's First Amended Complaint simply regurgitates the law in a conclusory fashion without providing supporting or applicable facts in an attempt to protect its business position within the Village. But, Tri-State's First Amended Complaint simply states no controversy that warrants invocation of federal court jurisdiction; therefore should be dismissed pursuant to Rule 12(b)(1) because there is no factual basis for the Court's subject matter jurisdiction.

**F. Count IV Requesting Judicial Review By Common Law Certiorari Should Be Dismissed As Administrative Functions Are Not At Issue In This Case.**

Count IV of the Plaintiff's Complaint seeks judicial review of the Plan Commission's recommendation to the Village Board to adopt Ordinance 2017-22 via a writ of common law certiorari. *See Exhibit A, paragraph 118.* The plaintiff states that because the Village of Riverdale Zoning Ordinance does not adopt the Administrative Review Act, the review of the Plan Commission's decision is available via a writ of common law certiorari. *See Exhibit A, paragraph 119.*

Yet, review by common law certiorari is not available to the Plan Commission's legislative decision to recommend a special use for Riverdale Materials. The Administrative Review Act is applicable only where it is expressly adopted by an act creating or conferring power on the agency involved; and where the act does not contain express reference to the Administrative Review Act and provides no other form of review, **then common-law certiorari is general method for reviewing** actions of agencies and tribunals **exercising administrative functions**. *Hanrahan v. Williams*, App. 2 Dist.1994, 205 Ill.Dec. 311, 267 Ill.App.3d 735, 643 N.E.2d 262, appeal allowed 208 Ill.Dec. 359, 161 Ill.2d 526, 649 N.E.2d 415, reversed 220 Ill.Dec. 339, 174 Ill.2d 268, 673 N.E.2d 251, rehearing denied, certiorari denied 118 S.Ct. 56, 522 U.S. 812, 139 L.Ed.2d 20. Common law certiorari is not the appropriate method for review of a legislative act.

65 ILCS 5/11-13-25 states that any decision by the corporate authorities of any municipality, in regard to any petition or application for special use, is subject to de novo review as a legislative decision. In 2006, the Illinois legislature enacted an amendment to section 11–13–25 of the Illinois Municipal Code, in order to define every special use, variance, rezoning, or other amendment to a zoning ordinance, as a legislative act rather than as an administrative act for purposes of review.

Therefore, the Riverdale Plan Commission's recommendation to the Village Board to adopt the Ordinance which provided a special use to Riverdale Materials must be considered a legislative decision rather than an administrative act. Legislative decisions are not subject to review via common law certiorari; therefore, Count IV of Plaintiff's First Amended Complaint must be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a cause of action upon which relief can be granted.

**G. Mayor Lawrence L. Jackson Should Be Dismissed Pursuant to Rule 12(b)(6).**

Mayor Jackson was acting in a legislative capacity when he and the Village Board passed the Ordinance; therefore, he is immune from liability relating to the same. The Ordinance granting a special use to Riverdale Materials was a legislative act by the Village Board pursuant to section 11–13–25 of the Illinois Municipal Code, which defines every special use, variance, rezoning, or other amendment to a zoning ordinance, as a legislative act rather than as an administrative act for purposes of review. *Dunlap v. City of Schaumburg*, 394 Ill.App.3d 629,641, 333 Ill.Dec. 819, 915 N.E.2d 890 (1st Dist. 2009). When acting "in the sphere of legitimate legislative activity," legislators are "immune from deterrents to the uninhibited discharge of their legislative duty." *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997). The Seventh Circuit has affirmed that, when legislators act collectively to pursue a view of the public good through legislation, they must be free to represent their constituents "without fear of outside interference." *Id.* Immunity plainly applies to local legislators acting in their official capacity. *Id.* at 49 (local legislators "absolutely immune from suit under § 1983 for their legislative activities"). When the Village adopted Ordinance 2017-22, each member of the Village Board, including the Mayor, was acting in his or her official capacity. *Hawthorne v. Village of Olympia Fields,* 2004 Ill.2d 243, 790 N.E.2d 832, 839 (2003). Absolute immunity exists even if a particular legislator acted based on improper motives. *Id.*; *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 140 L.Ed.2d (1998). Therefore, Mayor Lawrence L. Jackson is absolutely immune from the Plaintiff's claims and should be dismissed with prejudice from this lawsuit.

**H. Tri-State Does Not Adequately Plead a Breach of Contract Claim**

In Count VII, the Plaintiff claims, presumably under Illinois state law, that the Village has breached its contract with Tri-State by failing to pay certain invoices and failing to cooperate with Tri-State to schedule a Spring Clean-Up. *See Exhibit A, Count VII.*

Under Illinois law, there are four elements to a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199, 741 N.E.2d 605, 611 (Ill. App. 1999). All of these elements must be met in order for a plaintiff to seek recovery of damages. *Id.*

Initially, Tri-State fails to state the grounds upon which it seeks relief. Secondly, Tri-State fails to meet the mandatory requirements set forth in Section 2-606 of the Illinois Code of Civil Procedure, which states that "if a claim…is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit …" *735 ILCS 5/2-606, Exhibits.* Despite attaching fifteen exhibits to its First Amended Complaint at Law, Tri-State failed to attach the contract it claims the Village breached; therefore, Count VII should be dismissed.

In the alternative, if the Court still considers the allegations of breach of contract despite Tri-State's failure to attach the contract to the Complaint, Tri-State is unable to plead facts that support each element of the breach of contract claim because no facts have been plead that support the existence of a breach of contract by the Village or resultant injury to Tri-State from the alleged breach of contract. Therefore, Count VII of the Plaintiff's First Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state factual content that allows the Court to infer the Defendants' liability.

## IV. Conclusion

The Plaintiff's First Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(1) because Tri-State does not have standing to bring this lawsuit. In addition, the First Amended Complaint must be dismissed with prejudice pursuant to Rule 12(b)(6) because the

Plaintiff has failed to properly plead any plausible claim that would suggest that Tri-State has a right to relief. Finally, it is improper for the Plaintiff to name the Mayor, as he is immune from Plaintiff's complaints and therefore should be dismissed with prejudice.

WHEREFORE, for all the above reasons, the Defendants respectfully request the Court to dismiss, with prejudice, the Plaintiff's First Amended Complaint and for any other relief the Court deems just and appropriate.

Respectfully submitted,

MONTANA & WELCH, LLC.

By: */s/ Erin E. Blake* ____________________
One of the attorneys for the Defendants

John P. Wise (ARDC No. 6238380)
Erin E. Blake (ARDC No. 6295914)
MONTANA & WELCH, LLC
11950 S. Harlem Avenue – Suite 102
Palos Heights, IL 60463
(708) 448-7005
rbruen@montanawelch.com
jwise@montanawelch.com
eblake@montanawelch.com