**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an | ) | |
| Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CV-02138 |
| | ) | |
| vs. | ) | Judge Sara L. Ellis |
| | ) | |
| THE VILLAGE OF RIVERDALE, et al. | ) | Magistrate Judge Mary M. Rowland |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TRI-STATE DISPOSAL, INC.'S
BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

**POINTS AND AUTHORITIES**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT……………….....   2

II.     LEGAL STANDARDS FOR 12(b)(6) MOTIONS
       AND 12(b)(1) MOTIONS..................................................................................   2

      A.    12(b)(6) Motions ……………………………………………………..   2

            Fed. R. Civ. P. 12 ..................................................................   2

            Fed. R. Civ. P. 8...................................................................   2

            *Skinner v. Switzer,*
            562 U.S. 521, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011)......................   3

      B.    Court's Consideration of Section 12(b)(6) Motions................................   3

            *Killingsworth v. HSBC Bank Nevada, N.A.*
            507 F.3d 614 (7th Cir. 2007)......................................................   3

            *Early v. Bankers Life & Cas. Co.*
            959 F.2d 75 (7th Cir.1992)........................................................   3

            *Cedars-Sinai Med. Ctr. v. Watkins*
            11 F.3d 1573 (Fed. Cir. 1993)..................................................   3

            *Bell Atl. Corp. v. Twombly*
            550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................   4

            *Ashcroft v. Iqbal*
            556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)........................   4

            *Swierkiewicz v. Sorema N. A.*
            534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)..............................   4

            *Erickson v. Pardus*
            551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)........................   5

      C.    12(b)(1) Motions..................................................................................   5

            Fed. Rule Civ. Proc. Rule 12(b)(1)..........................................   5

            28 U.S.C.A. ..........................................................................   5

*Cedars-Sinai Med. Ctr. v. Watkins*
11 F.3d 1573 (Fed. Cir. 1993)...................................... 5

III. WELL-PLED FACTS SET FORTH IN TRI-STATE'S
FIRST AMENDED COMPLAINT ………….................................... 5

A. Allegations of Property Interest.................................... 5

*Bd. of Regents of State Colleges v. Roth*
408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)....................... 6

B. Allegations Regarding Matters of Public Concern. ………………...... 6

C. Allegations Sufficient to Meet the *Monell* Standard............................ 7

D. Allegations of Causal Connection.......................................... 7

E. Allegations that Tri-State Engaged in Speech Protected by
The First Amendment................................................ 8

F. Allegations for Equal Protection Under the "Class of One" Standard... 8

G. Allegations Regarding Breach of Contract............................................ 8

*Gallagher Corp. v. Russ*
309 Ill.App.3d 192, 741 N.E.2d 605 (Ill. App. 1999)............................ 8

H. Allegations Regarding Claim for Common Law Certiorari.................... 9

*Bd. of Educ. of Woodland Cmty. Consol. Sch. Dist. 50 v.
Illinois State Charter Sch. Comm'n*
2016 IL App (1st) 151372, 60 N.E.3d 107............................. 9

I. Allegations of Liability of Mayor Lawrence Jackson............................ 9

*Chicago United Indus., Ltd. v. City of Chicago*
739 F. Supp. 2d 1043 (N.D. Ill. 2010)....................................... 9

J. Allegations Regarding Standing............................................. 10

IV. ARGUMENT........................................................... 11

A. Tri-State's Allegations are Sufficient Regarding Its Equal Protection
Claim and Tri-State as a Class-of-One..………………………….. 11

*McDonald v. Village of Winnetka*
371 F.3d 992 (7th Cir. 2004)......................................................... 11

*Vill. of Willowbrook v. Olech*
528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)..................... 11

*Esmail v. Macrane*
53 F.3d 176 (7th Cir. 1995)............................................................ 12

B.      Tri-State Has Sufficiently Alleged a Protected Property Interest............ 12

*Logan v. Zimmerman Brush Co.*
455 U.S. 422 (1982)..................................................................... 12

C.      Plaintiff's Prayers for Relief Are Proper............................................ 12

28 U.S.C.A. § 2201 (West)............................................................. 13

*Arnold v. KJD Real Estate, LLC*
752 F.3d 700 (7th Cir. 2014).......................................................... 13

D.      Counts V and VI Alleging Political Retaliation Sufficiently
State a Claim............................................................................... 13

*Biblia Abierta v. Banks*
129 F.3d 899 (7th Cir. 1997).......................................................... 14

*Shaikh v. City of Chicago*
No. 00–4235, 2001 WL 123784, at *7, 2001 U.S. Dist. LEXIS 1386,
at *23 (N.D.Ill. Feb. 9, 2001) (Kennelly, J.)
(*Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3, 775 (7th Cir.2000)).    14

*Jacobeit v. Rich Twp. High Sch. Dist.*
227, 673 F. Supp. 2d 653 (N.D. Ill. 2009)......................................... 14

1.      Counts V and VI Sufficiently Allege Cause of Action for
Municipal Liability.......................................................... 14

*Waters v. City of Chi.*
F.3d 575 (7th Cir. 2009)
(*quoting Estate of Sims ex rel. Sims v. Cnty. of Bureau*
506 F.3d 509 (7th Cir. 2007))........................................... 15

2.      Tri-State Properly Alleged First Amendment Activity, and
that the First Amendment Activity was a Factor in
Defendants' Adverse Actions Against Tri-State........................... 15

*Board of County Com'rs, Waubansee County Kan v. Umbehr*
518 U.S. 668 (1996)................................................................ 16

*Lauren W. ex rel. Jean W. v. Deflaminis*
480 F.3d 259 (3d Cir. 2007)...................................................... 17

*Woodson v. Scott Paper Co.*
109 F.3d 913 (3d Cir.1997)...................................................... 17

*Farrell v. Planters Lifesavers Co.*
206 F.3d 271 (3d Cir.2000)...................................................... 17

*Connick v. Myers*
461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)............ 19

E.   Tri-State Sufficiently Pled Standing to Bring All of Its Claims............ 19

*Bennett v. Spear*
520 U.S. 154, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)
(quoting *Lujan v. Defenders of Wildlife*
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)...................... 19

*Valley Forge Christian Coll. v. Ams. United for Separation of
Church and State, Inc.*
454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982))........................ 20

F.   The Plaintiff is Entitled To and Properly Pled Allegations of
Common Law Certiorari.......................................................... 20

*Bd. of Educ. of Woodland Cmty. Consol. Sch. Dist. 50
v. Illinois State Charter Sch. Comm'n*
2016 IL App (1st) 151372, 60 N.E.3d 107............................... 20

G.   The Allegations Against Mayor Lawrence Jackson Should Be Sustained
Under 12(b)(6)........................................................................ 20

H.   Tri-State Properly Alleged Breach of Contract......................... 21

*Gallagher Corp. v. Russ*
309 Ill.App.3d 192, 741 N.E.2d 605 (Ill. App. 1999).............. 21

V.   CONCLUSION……………………………………………………….... 22

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Tri-State filed a comprehensive and well-pled First Amended Complaint alleging violations of Procedural and Substantive Due Process (Counts I and II), violations of the Equal Protection Clause (Count III), common law certiorari challenging the procedures (or lack thereof) used by the Village (Count IV), retaliation in direct response to Tri-State's protected First Amendment speech (Counts V and VI), and breach of contract (Count VII). *See* **Exhibit 1** attached. The Defendants have filed a motion to dismiss all counts and all Defendants.  *See* **Exhibit 2**, attached. Tri-State's First Amended Complaint is well-pled and satisfies the requirements of notice pleading pursuant to the applicable federal rules and any court cases interpreting same.  At this stage of the proceedings, the plaintiff is not required to prove its case, but merely make the allegations necessary to sustain its claim, subject to proof at a later date. For the reasons set forth below, the Defendants' motion should be denied in its entirety.

## II.    LEGAL STANDARDS FOR 12(b)(6) MOTIONS AND 12(b)(1) MOTIONS

### A.    12(b)(6) Motions

A 12(b)(6) motion to dismiss calls for dismissal on the grounds of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12. Pursuant to the Federal Rules of Civil Procedure, Rule 8(a)(1), a plaintiff's complaint should contain "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8.

Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a "plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 529–30, 131 S. Ct. 1289, 1296, 179 L. Ed. 2d 233 (2011).

      B.     Court's Consideration of Section 12(b)(6) Motions

In reviewing a 12(b)(6) motion to dismiss for failure to state a claim, the court accepts as true all factual allegations and the reasonable inferences that can be drawn from them. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614 (7th Cir. 2007). Furthermore, ambiguities in the complaint are resolved in favor of plaintiff. *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992).

Tri-State pleads clear grounds for this Court's jurisdiction in its First Amended Complaint, by stating as follows:

> Jurisdiction for the federal claims (Counts I, II, III, V, and VI ) is proper in the Northern District of Illinois, Eastern Division, pursuant to 42 U.S.C. §1983 and 28 U.S.C. § 1331, which provides that the district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Jurisdiction for the non-federal claims (Counts IV and VII) is proper pursuant to 28 U.S. Code § 1367(a), which provides that the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. (First Amended Complaint, par. 7).

Defendants' motion to dismiss challenges the sufficiency of Tri-State's pleadings regarding jurisdiction. Pursuant to *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) challenging the sufficiency of a Plaintiff's pleadings with regard to jurisdiction constitutes a facial attack; thus Tri-State's allegations should be taken as controlling and construed in the light most favorable to Tri-State.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "factual allegations must be enough to raise a right to relief above the speculative level,

3

on the assumption that all the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*.

To survive motion to dismiss, a complaint must furthermore contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. "A claim has 'facial plausibility' when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). (quoting *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

While *Twombly* and *Iqbal* add a requirement for "facial plausibility," the Court has interpreted such requirement in keeping with previous decisions including *Swierkiewicz v. Sorema* and reaffirmed that this is not meant to negate notice pleading.

A complaint must "contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). The Court's decision in *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010) notes that "The Supreme Court's explicit decision to reaffirm the validity of *Swierkiewicz* ..., which was cited with approval in *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955, 167 L.Ed.2d 929, indicates that in many straightforward cases, it will not be any more difficult today for a plaintiff to meet [Rule 8's pleading] burden than it was before the Court's recent decisions." As *Swanson* states, despite the court's rulings in *Twombly* and *Iqbal*, the Court was "not engaged in a *sub rosa* campaign" to reinstate the old fact pleading system, as it confirmed in

*Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The plausibility

standard can and should be reconciled with notice pleading.

      C.     <u>12(b)(1) Motions</u>

A 12(b)(1) motion to dismiss calls for dismissal due to a lack of subject matter

jurisdiction. Fed. R. Civ. P. 12.  Case law divides Rule 12(b)(1) motions into "facial" attacks and

"factual" attacks, for which there are separate standards. Though Defendants claim to have

mounted a factual attack, their motion at best establishes a facial attack with regard to subject

matter jurisdiction. If motion to dismiss for lack of jurisdiction simply challenges court's subject

matter jurisdiction based on sufficiency of pleading's allegations, then those allegations are taken

as true and construed in light most favorable to complainant. Fed. Rule Civ. Proc. Rule 12(b)(1),

28 U.S.C.A., *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993).

Only if the motion "denies or controverts the pleader's allegations of jurisdiction," is the

movant "deemed to be challenging the factual basis for the court's subject matter jurisdiction"

and the allegations are not controlling. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed.

Cir. 1993). Since Defendants do not deny or controvert Tri-State's allegations of jurisdiction but

rather challenge their sufficiency, their motion does not constitute a factual challenge.

**III.    WELL-PLED FACTS SET FORTH IN TRI-STATE'S FIRST AMENDED
COMPLAINT**

The Defendants claim that Tri-State did not make sufficient allegations necessary to state

its claims. The contrary is evident. The First Amended Complaint contains well-pled allegations

of the following:

      A.     <u>Allegations of Property Interest</u>

Tri-State identified its existing contracts with the Village of Riverdale, and its ownership

of property within the Village of Riverdale as its property interest (**First Amended Complaint,**

pars. 9, 13, 57-59, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149. Existing contracts with municipalities establish a property right under federal law.

The Court has "fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights. The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706, 33 L. Ed. 2d 548 (1972).

Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Tri-State's property interest stems from two aspects of Illinois state law (1) Its interest in compliance with the terms of its existing contracts with the Village of Riverdale (**Exhibits 3** and **4**, attached) (as distinguished from *Roth*, which was decided on the basis the plaintiff had no automatic rights to *renewal* of a contract) and (2) Tri-State's ownership interest in its business/property in Riverdale, less than a mile from the Riverdale Materials Site.

B.    <u>Allegations Regarding Matters of Public Concern</u>

The First Amended Complaint and the exhibits thereto contain detailed allegations that Tri-State raised matters of public concern.

The First Amended Complaint contains allegations of environmental harm to the Village and its residents: paragraphs 19, 21-30, 40-42, 92, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149; and Exhibits 2-7 and 10;the failure of the

6

Village to protect the Village residents by requiring bonding for closure and post-closure should Riverdale Materials just abandon the site: paragraphs 10-12, 48 and 108-113, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149; harm to the property values in the Village of Riverdale: paragraphs 40 and 54 and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, 149, and Exhibits 2-7 and 10; failure to require host fees to the Village of Riverdale regarding materials dumped at Riverdale Materials: paragraphs 48 and 108-115 and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149.

C. Allegations Sufficient to Meet the *Monell* Standard

The Defendants concede that *Monell* requires allegations of one of three things to establish municipal liability for the acts of its policymakers: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Tri-State's First Amended Complaint alleges #2 and #3, and specifically alleges that these actions were taken by the chief policymaker of the Village of Riverdale, its Mayor Lawrence Jackson. Plaintiff plead that, "The retaliation was engaged in as a policy of the Village of Riverdale and its mayor - Defendant Jackson." (First Amended Complaint, pars. 136; 146).

D. Allegations of Causal Connection

Tri-State's First Amended Complaint sets forth specific allegations regarding the nature and timing of its First Amendment speech (criticizing the Mayor and the entire process on matters of public concern) and the causal connection between the First Amendment speech and the retaliatory acts. Those allegations are set forth in paragraphs 14-15, 40-41, 49-69, 130-136,

7

141-146 and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149, as well as Exhibits 2-7, 10, and 15 to the First Amended Complaint.

> E.    Allegations that Tri-State Engaged in Speech Protected by the First Amendment

The entire complaint constitutes First Amendment speech as it is detailed and critical of the Village and its Mayor on matters of public concern.

Also, prior to the lawsuit, Tri-State filed documents publicly and publicly presented testimony before the de facto Zoning Board of Appeals and the Village Board. Those allegations are set forth in paragraphs 14-16, 53-56, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, 149 and Exhibits 2-10 and 15 to the First Amended Complaint

> F.    Allegations for Equal Protection Under the "Class of One" Standard

Count III of Tri-State's First Amended Complaint explicitly states that, "Tri-State, **as a class of one**, was treated differently from other individuals similarly situated." (First Amended Complaint, par. 105). This same count alleges that Tri-State and Riverdale Materials are similarly situated competitors (First Amended Complaint, par. 104) and details  restrictions and fees imposed upon Tri-State by the Village that are not imposed upon its competitors including Riverdale Materials. (First Amended Complaint, pars.108-117).

> G.    Allegations Regarding Breach of Contract

To properly plead a cause of action in breach of contract under Illinois law, a plaintiff must allege the essential elements which are: (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resultant injury to the plaintiff. *Gallagher Corp. v. Russ,* 309 Ill.App.3d 192, 199, 741 N.E.2d 605, 611 (Ill. App. 1999). Tri-State's First Amended Complaint adequately pleads each and

every one of these essential elements in its First Amended Complaint (pars. 57-69 and 149-158). Tri-State makes allegations with regard to breach of contract, including the Village's failure to pay Tri-State's invoices and failing to cooperate with Tri-State regarding the spring clean-up (First Amended Complaint, pars. 57-69 and149-159).

      H.     <u>Allegations Regarding Claim for Common Law Certiorari</u>

The allegations with respect to common law certiorari are set forth in paragraphs 123-128 of Plaintiff's First Amended Complaint.

When a municipality opts not to adopt the Illinois Administrative Review Act to challenge its decisions, a challenging entity is allowed to, and in fact required to challenge the substance and procedures of the municipal action under common law writ of certiorari. Where enabling statute does not adopt Administrative Review Law and provides no other method for reviewing agency's decisions, "writ of common law certiorari survives as available method of review." *Bd. of Educ. of Woodland Cmty. Consol. Sch. Dist. 50 v. Illinois State Charter Sch. Comm'n*, 2016 IL App (1st) 151372, 60 N.E.3d 107.

      I.     <u>Allegations of Liability of Mayor Lawrence Jackson</u>

Defendants claim that Mayor Lawrence Jackson should be dismissed under 12(b)(6) due to legislative immunity (Defendants' Motion to Dismiss, p. 19-20).

Municipalities can be found liable under § 1983 for violating a plaintiff's civil rights through (1) an express municipal policy, (2) a widespread practice constituting custom or usage, or (3) a constitutional injury caused or ratified by a person with final policymaking authority. *Chicago United Indus., Ltd. v. City of Chicago*, 739 F. Supp. 2d 1043 (N.D. Ill. 2010). Tri-State alleges elements 2 and 3 (First Amended Complaint, pars.130, 136-137, 141, and 146-147).

The Defendants ignore that Counts V and VI allege retaliatory acts against Tri-State taken by Mayor Jackson which were not a part of any attempt to pass legislation. Upon the Mayor's orders, the Village ceased verbal communication with Tri-State and took adverse actions against Tri-State by excluding it from the Spring Clean-Up and withholding its payments.

J.      <u>Allegations Regarding Standing</u>

Tri-State is a corporation in the Village of Riverdale and, in fact, owns property not even a mile away from Riverdale Materials' site. (First Amended Complaint, pars. 4, 9, 13, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, 149.)

Tri-State has a property interest in performance of its existing contracts with the Village of Riverdale (First Amended Complaint, pars. 57-59 and 149-158; Exhibits 3 and 4).

Tri-State repeatedly challenged the ordinance at issue before the de facto Plan Commission, Zoning Board of Appeals, and Village Board and submitted documents evidencing the same (First Amended Complaint, pars. 2, 14-16, 53-56, 74-75, 92, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149; Exhibits 2-10 and 15.)

Tri-State suffered direct harm including large monetary damages at the hands of the Village when the Village, in retaliation against Tri-State for speaking and for filing this lawsuit, failed to pay the invoices for work Tri-State completed (First Amended Complaint, pars. 57-69, 135, 145, 156-157 and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149.)

## IV.     ARGUMENT[1]

### A.     Tri-State's Allegations are Sufficient Regarding Its Equal Protection Claim and Tri-State as a Class-of-One.

Under the federal pleadings standard and the standards for deciding motions under Rule 12(b)(6) as set forth in Section II above, Tri-State's pleading is sufficient at this stage to sustain its claim for equal protection as a class-of-one.

The Defendants correctly set forth the pleading requirements for "class-of-one": (i) It was treated differently from other individuals similarly situated; and (ii) there was no rational basis for the difference in treatment or the cause of the different treatment was "illegitimate animus." *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004).This is exactly what Tri-State pled in Count III. (Exhibit 1, pars. 102-122). Tri-State is not required to prove its case at this point, but merely make allegations under 12(b)(6) sufficient to put the Defendants on notice of its claim. As set forth in the well-pled facts of Tri-State's First Amended Complaint, that Tri-State has met its burden at this stage to show both the differential treatment and the necessary animus.

In *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) the Court held that a homeowner could assert an equal protection claim against the village as a class of one based on allegations that the village intentionally demanded a 33-foot easement as condition for connecting her property to a municipal water supply, while requiring only 15-foot easement from similarly situated property owners, and that the village's demand was irrational and wholly arbitrary. Plaintiff claimed the Village's demand was motivated by ill will from a previously successful lawsuit plaintiff filed against them.

---

[1] The arguments below are set forth in the order presented in Defendants' Motion.

In *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995) the Court refused to dismiss plaintiff's equal protection suit, ruling that the complaint stated a claim: "Esmail has taken a different route, that of the equal protection clause, which does not require proof of a deprivation of life, liberty, or property. What it does require, and what Esmail may or may not be able to prove, is that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective."

### B. Tri-State Has Sufficiently Alleged a Protected Property Interest.

Defendants next claim that Plaintiff has no constitutionally protected property interest. The Defendants are wrong. Tri-State's allegation of a protected property interest are included in plaintiff's First Amended Complaint, paragraphs 4, 9, 13, 57-69, 149-158, and as incorporated in Plaintiff's Counts I-VII at paragraphs 57, 58, 70, 90, 102, 123, 129, 140, 149, and 158-159. The Defendants concede that property under the Fourteenth Amendment due process clause is "an individual entitlement grounded in state law, which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). Tri-State identified its contracts with the Village of Riverdale that are grounded in state law and which cannot be removed (terminated or denied) except for cause. Tri-State also identified its ownership of real property within less than a mile of the site that is affected adversely by the Village's actions in granting the special use permit, and Tri-State's allegations of matters of public concern.

### C. Plaintiff's Prayers for Relief Are Proper.

The Defendants argue pursuant to Federal Rule 12(b)(6) that all counts in Plaintiff's Complaint should be dismissed because Tri-State allegedly improperly seeks a declaratory judgment from this court. The Defendants are incorrect.

12

When Plaintiff challenges various improper and unconstitutional actions of a municipality, it is axiomatic that part of the relief sought is a request that the Court strike down the action as null and void *ab initio*. That is exactly what the Plaintiff requested the Court to do. Without the offensive and illegal actions being declared null and void, any decision in favor of Tri-State on this matter would be virtually meaningless.

Assuming, *arguendo*, that the Court considers plaintiff's request to strike down the ordinance as a plea for declaratory judgment, the Court may consider the same. Pursuant to 28 U.S.C.A. § 2201 (West), "In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." While the federal court's jurisdiction to hear a declaratory judgment action is, as the Defendants state, not "automatic or obligatory," (*Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014)) the Court possesses discretion to hear such a case. As all claims that Tri-State has pending against defendants are encompassed in its First Amended Complaint pending before this Court, any decision made by this Court will satisfactorily adjudicate the claims in this proceeding.

### D.    Counts V and VI Alleging Political Retaliation Sufficiently State a Claim.

The Defendants allege under Federal Rule 12(b)(6), that Counts V and VI for political retaliation do not state a cause of action because Tri-State has not alleged policy, custom and practice of political retaliation or because Mayor Jackson has legislative immunity.

Tri-State's allegations are sufficient to establish political retaliation. Tri-State alleges that the retaliation taken toward it was by the policy of Mayor Jackson and the Village (First

13

Amended Complaint, pars. 49-69, 130, 136, and 141) and that Mayor Jackson acted outside the sphere of legitimate legislative activity (First Amended Complaint, par. 138).

Plaintiff does not dispute defendants' contention that when acting "in the sphere of legitimate legislative activity," legislators are "immune from deterrents to the uninhibited discharge of their legislative duty." *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997). However, Mayor Jackson acted outside the sphere of legislative activity in several respects. Mayor Jackson held sham proceedings with an improperly constituted Plan Commission, during which he fired the chairperson who expressed concerns about the Riverdale Materials site in the middle of the proceedings. (First Amended Complaint, pars. 31-36 and 73). Additionally, the Mayor's retaliation against plaintiff in refusing to schedule the spring clean-up, refusing to pay plaintiff's invoices for services provided and quashing any attempted communications with the Village were not legislative acts.

Furthermore, legislative immunity is an affirmative defense and, as with qualified immunity, should not be the basis of a motion to dismiss. Also, "dealing with the issue of qualified immunity on a Rule 12(b)(6) motion is a 'delicate matter that district courts should approach carefully'; the Seventh Circuit has stated that qualified immunity 'is almost always a bad ground for dismissal and is better addressed at summary judgment.'" *Shaikh v. City of Chicago*, No. 00–4235, 2001 WL 123784, at *7, 2001 U.S. Dist. LEXIS 1386, at *23 (N.D.Ill. Feb. 9, 2001) (Kennelly, J.) (*Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3, 775 (7th Cir.2000)); *Jacobeit v. Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653 (N.D. Ill. 2009).

1. Counts V and VI Sufficiently Allege Causshorte of Action for Municipal Liability.

Municipal defendants often rely heavily on the *Monell* standard. The Defendants in this case are no different. Defendants correctly identify the necessary *Monell* demonstration in page

14

10 of its brief: In order to establish liability under *Monell,* a plaintiff must demonstrate: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See also, Waters v. City of Chi.,* F.3d 575, 581 (7th Cir. 2009) (*quoting Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007)). (Defendants' Motion to Dismiss at p. 10).

Tri-State's allegations are sufficient to establish a proper pleading at this stage as set forth in the following paragraphs of the First Amended Complaint: 49-69, 130, 136, 138, and 141.A pleading at this stage under 12(b)(6) satisfies the *Monell* requirement to establish municipal liability for the actions of Mayor Jackson and against the Village and Mayor Jackson for same.

2. Tri-State Properly Alleged First Amendment Activity, and that the First Amendment Activity was a Factor in Defendants' Adverse Actions Against Tri-State.

Defendants claim that Tri-State did not allege First Amendment activity or that its activity was not the motivating factor for the passage of the ordinance. In this regard, the Defendants arguments fall way short of the legal standard.

The allegations alleging the First Amendment activity are contained in the First Amended Complaint at paragraphs 2, 14-16, 49-69, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and 149, and Exhibits 2-7, 10, and 15. Those allegations are sufficient to establish the necessary pleading at this stage under 12(b)(6). Also, the entire originally filed Complaint was protected First Amendment speech relating to matters of public concern.

Second and perhaps more importantly, the Defendants miss the point on what the alleged retaliatory acts are. The gravamen of Tri-State's retaliation claim is that once it publicly opposed

15

the ordinance and Mayor Jackson, and once it filed the complaint in this case, that Mayor
Jackson and his regime retaliated against Tri-State by failing and refusing to pay them hundreds
of thousands of dollars that were owed under its existing contracts (First Amended Complaint at
paragraphs 57-59, 135, 145, and 156-158); failed and refused to allow Tri-State to fulfill its
contractual obligations to perform the spring clean-up, instead incurring thousands of dollars to
hire another waste contractor to perform the same (First Amended Complaint at paragraphs 60-
64, 69, and 150-158); by instructing the Village personnel not to have any verbal communication
with Tri-State (First Amended Complaint at par. 69 and Exhibit 15 to Plaintiff's First Amended
Complaint); and by falsely accusing Tri-State of various improprieties with respect to its
interactions with the Village of Riverdale personnel (Exhibit 15 to Plaintiff's First Amended
Complaint ). What more do the Defendants need to put them on notice of the First Amendment
speech, and the retaliatory acts made as a result thereof?

Defendants' citation to and focus on *Board of County Com'rs, Waubansee County Kan v.*
*Umbehr*, 518 U.S. 668 (1996) is a red herring. While the decision not to rehire a contractor was
central to *Umbehr,* the central issue in Tri-State's retaliation claim is the decision of Defendants
to withhold and deny Tri-State's rightfully-earned compensation and interference with Tri-
State's rights under its existing contracts with Riverdale. In retaliation for Tri-State's first
amendment protected speech, Defendants refused to pay Tri-State over $260,000.00 for the
services Tri-State rendered to the Village of Riverdale. Also in retaliation for Tri-State's first
amendment protected speech, defendants refused to cooperate with Tri-State to set up the spring
cleaning Tri-State is contractually bound to perform and hired another contractor to do so, at the
unnecessary expense and to the detriment of Tri-State and the Village residents.

16

Defendants claim that if Tri-State, *arguendo*, is found to have participated in first amendment protected speech, it does not adequately plead that this activity was a factor in defendants' adverse action against Tri-State. However, Tri-State's First Amended Complaint sets forth specific allegations regarding the nature and timing of its First Amendment speech (criticizing the Mayor and the entire process on matters of public concern) and the causal connection between the First Amendment speech and the retaliatory acts. (First Amended Complaint, pars. 49-69 and 129-158).

In a First Amendment retaliation case a plaintiff may establish causation by proving 'a pattern of antagonism coupled with timing.'" *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007). To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000). All of the adverse actions came on the heels of Tri-State's political opposition and the filing of its complaint. Furthermore, all of the adverse actions were in stark contrast to years of contractual interaction between Tri-State and Riverdale. Prior to the spring of 2018, Riverdale had regularly paid Tri-State within 30 days; since Tri-State's initial complaint was filed in February of 2018, Riverdale's payments were up to 120 days late or not at all. (First Amended Complaint at pars. 57- 69, and 156).

The 2002 Settlement Agreement with the Village of Riverdale contained provisions requiring Tri-State to: regulate loading and unloading activities (**Exhibit 4** at ¶ 11(a)); regulate

the storage of waste and recyclable materials (**Exhibit 4** at ¶ 11(b)); make capital improvements to the facility (**Exhibit 4** at ¶ 13); limit the receipt of various waste (**Exhibit 4** at ¶¶ 14, 16); monitor the storage of waste and recyclable materials (**Exhibit 4** at ¶ 18); regulate motor vehicle and container parking and storage (**Exhibit 4** at ¶ 19); maintain facility staffing improvements (**Exhibit 4** at ¶¶ 21-24); improve the facility policies and procedures (**Exhibit 4** at ¶ 25); maintain financial responsibility and indemnity commitments; (**Exhibit 4** at ¶¶ 29-31). None of these requirements were imposed on Riverdale Materials. Perhaps most importantly, the Settlement Agreement required Tri-State to post a $50,000 bond for financial assurance for closure and other obligations (**Exhibit 4** at ¶ 33). The Agreement also required payment of royalties to Riverdale, which Tri-State has paid substantially over $1,000,000 since 2002. These requirements were not imposed on Riverdale Materials, even though Tri-State repeatedly advised the Village that those same requirements should apply to protect and benefit Riverdale and its residents. Instead of leveling the playing field and protecting the people of the Village of Riverdale, Riverdale merely allowed Riverdale Materials to operate without any of these safeguards.

For many years up to the spring of 2018, Tri-State and the Village cooperated regarding the annual spring clean-up event (First Amended Complaint at 57-69 and 149-158; Exhibits 3 and 4). The event was successful, it helped the Village and its residents, there was no charge from Tri-State to the Village, and Tri-State obtained good will and good publicity in the Village from performing the clean-up. After the complaint was filed, the Village refused to even communicate with Tri-State regarding the spring clean-up (First Amended Complaint at 57-69

and 149-158) and hired another contractor to do it, wasting the taxpayers' money all because of the mayor's animus toward Tri-State. [2]

Defendants complain that Tri-State's motives are out of private concern regarding competition rather than public concern. However, Tri-State enumerated a lengthy list of concerns regarding the unremediated, environmentally hazardous site and the welfare of the residents of Riverdale. (First Amended Complaint, pars. 14-17, 21-30, 52-56, 92-93, and as incorporated in Plaintiff's Counts I-VII at paragraphs 70, 90, 102, 123, 129, 140, and149, as well as Exhibits 2-7 and 10. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983). It is, in fact, impossible for a plaintiff to file a successful lawsuit without having a personal stake in the matter, as is required for standing. The record, on whole, overwhelmingly verifies that that Tri-State's speech was on matters of public concern, i.e. the environmental and safety hazards posed by a company not properly permitted or bonded operating on a polluted site.

**E.      Tri-State Sufficiently Pled Standing to Bring All of Its Claims.**

Defendants challenge Tri-State standing pursuant to Rule 12(b)(1).  Tri-State sufficiently alleged standing under the very standard set forth in Defendants' Brief – that the Plaintiff must plead that (1) he suffered an "injury in fact,"' (2) the injury is "fairly traceable" to the actions of the defendant, and (3) the injury will likely be redressed by a favorable decision.  (Defendants' Brief at p. 17 citing *Bennett v. Spear,* 520 U.S. at 162, 117 S. Ct. at 1161 (quoting *Lujan v.*

---

[2] Tri-State asserts that the factual allegations of the First Amended Complaint must be measured and taken as true at the time of its filing, and subsequent acts or evidence would not be relevant or appropriate at this motion to dismiss stage.  If the Defendants attempt to raise in their reply facts or factual issues occurring after the filing of the First Amended Complaint regarding the Village's retaliatory acts of non-payment and refusal to allow Tri-State to conduct the Spring Clean-Up, Tri-State reserves the right to seek leave to file a sur-response to address same.

*Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37; 119 L. Ed. 2d 351

(1992); citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,*

*Inc.* 454 U.S. 464, 471-72, 102 S. Ct. 752, 757-59, 70 L. Ed. 2d 700 (1982)).

Under this standard, which Defendants both allege and admit, Plaintiff has made

sufficient pleadings with respect to its standing as set forth in plaintiff's First Amended

Complaint at paragraphs 4, 9, 13, 57-69, 76-83, 93-101, 112-122, and 123-128, 135-139, 145-

147, and 156-158).

**F.      The Plaintiff is Entitled To and Properly Pled Allegations of Common Law
         Certiorari.**

Where enabling statute does not adopt Administrative Review Law and provides no other

method for reviewing agency's decisions, writ of common law certiorari survives as available

method of review.  *Bd. of Educ. of Woodland Cmty. Consol. Sch. Dist. 50 v. Illinois State*

*Charter Sch. Comm'n,* 2016 IL App (1st) 151372, 60 N.E.3d 107. The Village of Riverdale

Zoning Ordinance does not adopt the Administrative Review Act.

**G.      The Allegations Against Mayor Lawrence Jackson Should Be Sustained
         Under 12(b)(6).**

The Defendants attempt once again to set up the strawman by claiming that the only

improper actions alleged against Mayor Jackson was passing of the ordinance that allowed

Riverdale Materials to dump on already highly-contaminated ground, and under circumstances

completely adverse and unequal to obligations it imposed on Tri-State to operate its business.

The Defendants ignore that Counts V and VI directly relate to the actions of Mayor Jackson after

the passing of the ordinance, and in direct response to Plaintiff's filing of this complaint and its

public criticisms of Mayor Jackson for matters of public concern – both of which are protected

First Amendment activity. The Defendants' argument that Mayor Jackson should be dismissed should be rejected outright.

### H. Tri-State Properly Alleged Breach of Contract.

The Defendants again attempt to persuade this court that Tri-State should be required to prove its case at this juncture, as opposed to merely make sufficient allegations.

Tri-State made sufficient allegations with respect to breach of contract. Defendants admit on page 21 of their Motion to Dismiss that there are four elements to a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff, citing *Gallagher Corp. v. Russ,* 309 Ill.App.3d 192, 199, 741 N.E.2d 605, 611 (Ill. App. 1999). Those elements are exactly alleged in Tri-State's First Amended Complaint at paragraphs 57-69, 77-80, 95-98, 119, 145, and 149-158, as well as Exhibits 3 and 4.

Tri-State has two currently existing contracts with the Village of Riverdale: its "Agreement for Refuse, Recyclable, Yard Waste Material Collection/Processing/Disposal Services," and its "Settlement Agreement," attached hereto as **Exhibit 3** and **Exhibit 4**. The former includes the clause regarding the Spring Clean Up (*See* Exhibit 3, page 6) as well as invoicing and payment deadlines (*See* Exhibit 3, page 12); the latter includes conditions/regulations on Tri-State's operation and the host agreement/fees (See Exhibit 4, pages 13-14 and 16).

The Defendants also complain that the contracts were not attached to the First Amended Complaint. This second argument, technical and nitpicky as it is, is only partially correct. Tri-State did reference the specific portions of the contract that relate to the allegations against the Village (First Amended Complaint at paragraphs 57-69, 78, 96, and 149-158) to rectify this

situation. The two contracts between Tri-State and the Village of Riverdale are attached hereto as Exhibits 3 and 4. While the court certainly has the discretion to dismiss the breach of contract claim for failure to attach the contracts to its First Amended Complaint, such action would not serve the interests of the parties or judicial economy. The contracts exist; they have now been presented to the court, and on that basis the technicality addressed by the Defendants pursuant to 735 ILCS 5/2-606 has been rectified.

## V. CONCLUSION

**WHEREFORE,** for the reasons stated herein, Plaintiff Tri-State Disposal, Inc. respectfully requests that this Honorable Court enter an order denying Defendant's Motion to Dismiss in its entirety, and ordering Defendant to answer Plaintiff's First Amended Complaint.

Respectfully submitted,

**TRI-STATE DISPOSAL, INC., an Illinois corporation, Plaintiff**


By: s/ Mark A. LaRose
Mark A. LaRose
Attorney for Plaintiff

Mark A. LaRose (ARDC No. 6183288)
Marissa R. Alaska (ARDC No. 6315171)
LaRose & Bosco, Ltd.
200 N. LaSalle Street, Suite 2810
Chicago, IL 60601
(312) 642-4414
Fax (312) 642-0434
mlarose@laroseboscolaw.com
m.alaska@laroseboscolaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused to be served a copy of the foregoing PLAINTIFF TRI-STATE DISPOSAL, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS to all counsel of record listed below by e-filing through the United States District Court, Northern District of Illinois, Eastern Division's e-filing system this 29th day of August, 2018.

Counsel for Defendants
Ms. Erin E. Blake (eblake@montanawelch.com)
Mr. Richard Bruen, Jr. (rbruen@montanawelch.com)
Mr. John Wise (jwise@montanawelch.com)
Montana & Welch, LLC
11950 S. Harlem Avenue, Suite 102
Palos Heights, IL  60463


/s Mark A. LaRose
Mark A. LaRose