**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-02138 |
| vs. | ) | Judge Sara L. Ellis |
| THE VILLAGE OF RIVERDALE, a municipal corporation; LAWRENCE L. JACKSON, Mayor of the Village of Riverdale | ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendants, Lawrence L. Jackson ("Mayor") and the Village of Riverdale ("Village") (collectively, "Defendants"), by their attorneys, Montana & Welch, LLC, and for their reply in support of their motion to dismiss Plaintiff's First Amended Complaint, state as follows:

## BACKGROUND

Tri-State Disposal, Inc. ("Tri-State") is a waste management and recycling company operating throughout the Chicagoland Area and Northwest Indiana. Its' municipal solid waste transfer station operates in the Village. In November 2017, the Village passed an ordinance that granted a conditional use to Riverdale Materials, an alleged competitor of Tri-State Disposal, Inc., which allows Riverdale Materials to operate a metal recycling facility and transfer station in the Village (hereinafter the "Ordinance"). Tri-State opposed this Ordinance, the opposition and opinions of Tri-State's representatives were presented to the Village and the Zoning Board, their opposition was considered by the Zoning Board and the Village, and ultimately the Ordinance was

passed by the Village's Board of Trustees. The appropriate channels were taken to pass the Ordinance.

This lawsuit was brought because of Plaintiff's disagreement with the Village's passage of an Ordinance that allows Riverdale Materials to operate in the Village. Yet, Tri-State and Riverdale Materials do not operate similar businesses and are not competitors. In fact, Riverdale Materials is prohibited from processing municipal solid waste at its facility and does not provide waste management services. In addition, while Plaintiff's First Amended Complaint attempts to strip Riverdale Materials of its rights to operate in the Village, Tri-State does not name Riverdale Materials as a Defendant in this matter.

This is a zoning matter. Zoning is primarily a legislative function, and it is within the province of local governmental bodies to determine the use of land and to establish zoning classifications. *La Grange State Bank v. County of Cook*, 75 Ill.2d 301, 307, 26 Ill.Dec. 673, 388 N.E.2d 388 (1979). In the absence of express statutory exclusions, municipalities are empowered by the Illinois Municipal Code to regulate all land uses within their territory. *See* 65 ILCS 5/11–13–1 et seq. (West 2012); *Village of Chatham, Illinois v. County of Sangamon, Illinois*, 216 Ill.2d 402, 430–31, 297 Ill.Dec. 249, 837 N.E.2d 29 (2005); *People of the Village of Cahokia v. Wright*, 57 Ill.2d 166, 168, 311 N.E.2d 153 (1974). Matters relating to zoning lie primarily within the discretion of the municipality, and it is not the province of the courts to interfere with that discretion unless the action of the municipality is shown to be unrelated to the public welfare. *Treadway v. City of Rockford* (1962), 24 Ill.2d 488, 493–94, 182 N.E.2d 219.)

There are absolutely no allegations in the First Amended Complaint that would require the federal court's involvement in this zoning matter. The Plaintiff is disputing the issuance of a special use to non-adjacent landowner in the Village, a legislative decision made by the

municipality for the benefit of its residents. The Plaintiff's only alleged harm is a breach of its contract with the Village. A breach of contract is not a special harm requiring federal court involvement and adequate state remedies are available for the same.

Tri-State simply has no standing to bring this lawsuit. In addition, Tri-State fails to state plausible claims that would entitle it to relief in federal court. Therefore, the Defendants seek to dismiss the Plaintiff's First Amended Complaint in its entirety.

## ARGUMENT

### I. Plaintiff Does Not Adequately Plead It Claims and Inappropriately Relies on Distinguishable Case Law to Support Its Inadequate Pleading.

Tri-State cites case law that it claims supports its pleading of "short and plain statements of the claims" in the First Amended Complaint. Specifically, Plaintiff cites, *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992 (2002), which relates solely to employment discrimination claims and *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010), which was a case dealing with a pro se plaintiff. The Swanson Court actually went on to state the exact opposite position attributed to it by Tri-State. Specifically, in *Swanson,* the Court stated that pursuant to Rule 12(b)(6), "to state a claim upon which relief can be granted, a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Id.* Further, the Court stated, "the question with which courts are still struggling is how much higher the Supreme Court meant to set the bar, when it decided not only *Twombly*, but also *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This is not an easy question to answer, as the thoughtful dissent from this opinion demonstrates. On the one hand, the Supreme Court has adopted a "plausibility" standard, but on the other hand, it has insisted that it is not requiring fact pleading, nor is it adopting a single pleading standard to

replace Rule 8, Rule 9…Critically, in none of the three recent decisions—*Twombly, Erickson, or Iqbal*—did the Court cast any doubt on the validity of Rule 8 of the Federal Rules of Civil Procedure. To the contrary: at all times it has said that it is interpreting Rule 8, not tossing it out the window." *Id.* Federal Rule of Civil Procedure No. 8 states in pertinent part:

> 8(a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) *a short and plain statement of the claim showing that the pleader is entitled to relief*; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The Plaintiff is still required to plead in its Complaint the grounds upon which it is entitled to relief, in addition to a plain statement of the claim. No law has negated this requirement, as suggested by the Plaintiff. Here, the plaintiff has failed to sufficiently plead its entitlement to the relief requested in all seven counts of its First Amended Complaint.

**A. Plaintiff Does Not Allege a Property Interest Sufficient to Withstand a Motion to Dismiss based on Lack of Jurisdiction and Lack of Standing and the Entirety of the First Amended Complaint Should Be Dismissed.**

The Plaintiff claims for the first time in its response brief that its existing contracts with the Village, its interest in compliance with the terms of its contracts, and its ownership of property within the Village, less than a mile from the Riverdale Materials site, create a property interest and a property right sufficient to entitle it to Federal Court jurisdiction. This is not plead anywhere in the First Amended Complaint.

Further, while Tri-State claims that those newly alleged property interests stem from Illinois State law, they do not cite the State law that creates those alleged property rights. In addition, Tri-State does not claim that these alleged property interests are property rights that have

been specially harmed in order to establish standing in this zoning matter or that they are property rights constitutionally protected by substantive and procedural due process.

The "irreducible constitutional minimum of standing requires that plaintiff have suffered an injury in fact, which is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136–37; 119 L. Ed. 2d 351 (1992). Further, in *Garner v. County of Du Page*, 8 Ill. 2d 155, 133 N.E.2d 303 (1956), the court stated that "for a party to have standing in a court of equity to complain about the use of another's property, he has the burden of proving that he has suffered a special damage by reason of such use which differs from that suffered by the general public." *Id.* at 158–59, 133 N.E.2d 303. In that case, the Court stated that, "… Insofar as the alleged detrimental effects to the city of Naperville are concerned, it is to be noted that while appellants allege themselves to be taxpayers, there is no allegation that the complaint was filed in such capacity or that their burden of taxation will be increased by the industrial use of the rezoned tract. From the tenor of the allegations and the substance of the proof it appears only that if the rezoning does pose a threat of injury to appellants, it will not be different from that of the public generally. To use the words of *Blumberg v. Hill*, Sup., 119 N.Y.S.2d 855, 857, 'As one may not assume the role of champion of a community to challenge public officers to meet him in courts of justice to defend their official acts, * * * so one having only a general interest may not adopt the part of an advocate of municipal welfare * * * to promote a judicial enforcement or interpretation of zoning regulations.'" *Id.* at 159-160, 133 N.E.2d 303. The Supreme Court affirmed the decision, holding that the plaintiffs, who lived 1½ and 3 miles from the proposed development, "failed to prove damage which is different from that suffered by the public generally and therefore found that they had no standing to maintain the action." *Id.* at 159, 133 N.E.2d 303.

Tri-State does not allege a specific harm of a legally protected interest that would warrant invocation of federal court jurisdiction. The only individualized harm Tri-State pleads is the loss of income from the Village's alleged failure to pay invoices for work completed by Tri-State. This is not a specific harm to a legally protected interest that invokes federal court jurisdiction. Further, admittedly, Tri-State is not an adjacent landowner. Tri-State does not allege property devaluation. While Tri-State raises matters of public concern in its Complaint and response brief, these matters of public concern show only that Tri-State cannot be found to have suffered special harm by the passage of this ordinance, as the Complaint asserts that the passage of this ordinance has harmed all residents of the Village, not just Tri-State.

Tri-State has not plead and cannot ultimately prove that it is entitled to relief in federal court because Tri-State has not suffered special damage to a property interest based on the granting of a special use to a third party, Riverdale Materials. Tri-State has no standing that would provide the Court with jurisdiction to preside over this matter and Tri-State cites no case law in its response brief supporting its position regarding standing.

**B. In the Alternative, Plaintiff Has Failed to Adequately Plead Procedural and Substantive Due Process Violations and Counts I and II of the First Amended Complaint Should Be Dismissed.**

In the alternative, if standing is found to exist, failure to adequately plead a property right that has been specially injured and failure to plead a lack of procedural rights in the passage of the 2017 Ordinance granting Riverdale Materials a special use (hereinafter the "Ordinance") should result in the dismissal of Tri-State's procedural and substantive due process claims. To determine whether due process requirements apply in the first place, the Court must look to the nature of the interest at stake. *Morrissey v. Brewer*, 408 U.S. 471, at 481, 92 S.Ct. 2593, at 2600, 33 L.Ed.2d 484. Only after a finding of a protected interest and deprivation of it does the Court consider

whether the defendant "observed elemental due process safeguards, including notice and a hearing." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 566 (7th Cir. 1991)(citing *Gaballah v. Johnson*, 629 F.2d 1191, 1202 (7th Cir. 1980)). In *Chicago United Industries, Ltd. V. City of Chicago,* 739 F.Supp.2d 1043 (N.D. Il. 2010), the Court held that the City's actions in stopping or reducing existing orders with the plaintiff contractor, failing to award the contractor new contracts when it was the lowest bidder, and failing to extend existing contracts with the contractor did not render the contractor's minority-owned business enterprise (MBE) certification valueless so as to constitute deprivation of a protected property interest in violation of the contractor's procedural due process rights; contractor continued to serve as MBE prime contractor and subcontractor on multiple contracts, and the city continued to make expenditures totaling $939,307 during period in which contractor alleged it was subject to de facto decertification.

Here, Tri-State states in its response brief that it's contracts with the Village and its ownership of property near Riverdale Materials are protected property rights. Yet, Tri-State does not cite any state law that creates those property rights. Further, Tri-State does not state or plead how its contract with the Village provides it with a claim of entitlement to due process in relation to a third party's right to use their property. In addition, Tri-State fails to plead how the granting of a special use to Riverdale Materials injured its contract with the Village, as the contract is ongoing and will not expire until the end of the contract term. Further, Tri-State does not state or plead how its ownership of property near Riverdale Materials provides it with a claim of entitlement to due process relating to Riverdale Materials' use of their non-adjacent property. Tri-State also fails to plead how the granting of a special use to Riverdale Materials harmed its property. Tri-State's contracts with the Village and property within the Village are not protected property rights. Further, even if the Court finds that Tri-State does have protected property rights,

similar to *Chicago United Industries,* Tri-State's contract with the Village and Tri-State's business in the Chicagoland area has not been rendered valueless so as to constitute a deprivation of a protected property interest in violation of Tri-State's procedural due process rights; nor has Tri-State plead that this has occurred or will occur based on the Ordinance. Tri-State continues to serve under its contract with the Village and the Village continues to make expenditures to Tri-State during this litigation. Therefore, Tri-State does not plead and cannot show that it is entitled to relief under procedural or substantive due process claims because it does not have legally protected property rights that were specially damaged by the passage of the ordinance granting Riverdale Materials a special use.

However, if the Court finds that Tri-State has adequately plead a property right that was specially damaged by the passage of the Ordinance, Tri-State still does not meet the threshold pleading requirements for allegations of violations of due process. Specifically, Tri-State's First Amended Complaint alleges that the Village held a public hearing to hear testimony and take evidence about the proposed special use. Tri-State does not allege that it was excluded from any part of that process, and in fact describes its involvement in the process and the objections it voiced to the Village Zoning Board of Appeals regarding the proposed special use. Further, there are no allegations of a flawed public hearing, of flawed action by the Zoning Board of Appeals, of flawed notice, or of flawed action by the Board of Trustees. Further, a deprivation of property resulting from acts of state actors does not constitute a violation of procedural requirements of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Easter House v. Felder,* 910 F.2d 1387, 1396 (7th Cir. 1990), *cert. denied,* 498 U.S. 1067 (1991)(citing *Parratt v. Taylor,* 451 U.S. 527 (1981) and *Hudson v. Palmer,* 468 U.S. 517 (1984)). A mandamus action has been held specifically to be such an adequate state law remedy to preclude a procedural

due process claim. *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1480 (7th Cir. 1990); *Robertson v. City of Plano,* 1999 WL 412468 (N.D.Ill. 1999); *PBM Stone, Inc. v. Palzer,* 251 Ill.App.3d 390, 622 N.E.2d 71 (3rd Dist. 1993). Whether Plaintiff assets its claims under procedural or substantive due process, the availability of adequate state remedies (set forth in the Complaint) is fatal to his claims.

Tri-State's allegations of procedural due process in Count I of its First Amended Complaint must be dismissed, as Tri-State does not have a protected property right, was not specially harmed, was not denied elemental due process, and there are available state remedies. The Defendant's passage of the Ordinance, however seriously it may have harmed Tri-State's business, did not deprive Tri-State of any "property" interest protected by the Due Process Clause and Counts I and II of the Plaintiff's First Amended Complaint must be dismissed.

In addition, both the Supreme Court and the 7th Circuit Court have "emphasized how limited the scope of the substantive due process doctrine is." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir.1998) (citing *Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). Accordingly, substantive due process is not "a blanket protection against unjustifiable interferences with property." *Schroeder v. City of Chicago*, 927 F.2d 957, 961 (7th Cir.1991). Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. *See Glucksberg*, 521 U.S. at 728, 117 S.Ct. 2258. In addition, when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation" before the court will even engage in this deferential rational-basis review. *Doherty v. City of Chicago*, 75 F.3d 318,

323–26 (7th Cir.1996); see also *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir.1997) ("[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that available state remedies are inadequate, the plaintiff has not stated a substantive due process claim." (quotations omitted)).

Here, Tri-State has not plead a state-created property interest. Even if the Court were to find that its contract with the Village created a property right, this Court has held that a substantive constitutional interests, under the Due Process Clause, do not arise simply because a state actor allegedly breaches a contract. *Taake v. County of Monroe*, 530 F.3d 538 (7th Cir. 2008). In addition, Tri-State has not alleged that state remedies are inadequate. Therefore, Tri-State has failed to meet the pleading requirements for a substantive due process claim and Count II of the First Amended Complaint must be dismissed.

**C. The Allegations regarding Equal Protection Violations are Insufficient to Establish a Class-of-One Equal Protection Claim and Overcome the Rationality That Attaches to Government Actions in That Claim and Count III of the First Amended Complaint Should Be Dismissed.**

In its response brief, Plaintiff admits that it is not a suspect class and then states in conclusory fashion that it has met its burden, at this stage, to show both differential treatment and the necessary animus to sustain a claim for equal protection as a class of one. A "class of one" case is a case in which the plaintiff claims that "he is being treated arbitrarily worse than someone or ones identically situated to him." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). Here, plaintiff does not plead or allege that there has been a similar situation or that Tri-State was treated differently from any similarly situated person or entity. Therefore, Tri-State cannot establish that it constitutes a "class of one" under Seventh Circuit jurisprudence. Because Tri-State does not allege any similar situation or any disparate treatment, it cannot negate "any reasonably

conceivable state of facts" that could provide a rational basis for the classification. *Id.* To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). Allegations of animus do not overcome the presumption of rationality and the Court evaluates those allegations of animus once a plaintiff has pled facts that show the irrationality of the government action in question. *Flying J. Inc., v. City of New Haven,* 549 F.3d 538, 547 (7th Cir. 2008). Tri-State is not a class of one; therefore, cannot establish an equal protection claim.

Tri-State's allegations regarding equal protection violations fail the essential pleading standards under Seventh Circuit decisions; and thus Count III of the Plaintiff's First Amended Complaint should be dismissed.

### D. Common Law Certiorari is Not Appropriate Method of Reviewing the Allegations in the Complaint and Count IV of the First Amended Complaint Must be Dismissed.

The Plaintiff responds that because the Village of Riverdale Zoning Ordinance does not adopt the Administrative Review Act that common law certiorari is an appropriate method of review. However, Plaintiff does not address the difference between legislative and administrative decisions and does not address the Illinois statute designating special use ordinance decisions as legislative decisions.

The Riverdale Plan Commission's recommendation to the Village Board to adopt the Ordinance which provided a special use to Riverdale Materials is considered a legislative decision rather than an administrative act. Legislative decisions are not subject to review via common law certiorari; therefore, Count IV of Plaintiff's First Amended Complaint should be dismissed.

### E. Tri-State Does Not Adequately Plead a Monell Claim for Municipal Liability and Counts V and VI Against the Village Must Be Dismissed

The Plaintiff concedes that the Defendants recitation of the factors required to establish a *Monell* claim which would create municipal liability include pleading of: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom and practice; and (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Plaintiff also concedes that it only pleads requirements (2) and (3) by specifically alleging that retaliation was engaged in as a policy of the Village and its Mayor. This is wholly insufficient to meet the pleading requirements for a *Monell* claim.

Tri-State's Complaint is completely devoid of any facts that support an inference that the Village engaged in a widespread policy, practice, or custom of politically retaliating against independent contractors for their objections to Village decisions regarding special use permits. Therefore, Counts V and VI must be dismissed against the Village with prejudice pursuant to Rule 12(b)(6) because it does not sufficiently plead facts to state a claim to relief for municipal liability.

**F. Tri-State Did Not Engage in Protected First Amendment Activity; and Even If Found to Have Engaged in Such Activity, Does Not Adequately Plead that its Activity Was A Factor in the Defendants' Passage of the Ordinance or Any Other Alleged Adverse Action Against Tri-State**

In its response brief, Plaintiff again states in conclusory fashion that it has met its burden, at this stage, to plead the elements required for its political retaliation claim. Specifically, Plaintiff indicates in its response, but does not plead, that the filing of this Complaint and Tri-State's opposition to the Ordinance is protected first amendment activity. Plaintiff also argues, but does not plead anywhere in its First Amended Complaint, that Defendants retaliated against Tri-State by allegedly breaching their contract with Tri-State. Specifically, Tri-State argues that Tri-State's retaliation claim is based on the decision of the Defendants to withhold and deny Tri-State's

rightfully-earned compensation and interfere with Tri-State's rights under its existing contracts with the Village.

Tri-State has not plead that the alleged breaches of contract by the Village were motivated by speech on matters of public concern. Tri-State's "speech" relates to its business interests. Further, Tri-State does not plead that the allegedly protected conduct was a substantial factor in the Village decision to allegedly breach its contract with Tri-State. The mere facts that Tri-State opposed the Ordinance and then filed a lawsuit, is not sufficient to plead political retaliation, especially given the fact that certain invoices have been paid and the contract between the parties is still in full force and effect.

Plaintiff cites the *Lauren W. ex rel* case for this proposition that First Amendment political retaliation requires that the Plaintiff plead not only that it engaged in protected activity; but also that the retaliatory action was sufficient to deter a person of ordinary firmness for exercising his or her rights AND there was a causal relationship between the protected activity and the retaliatory action. Plaintiff glosses over the second requirement and solely argues about a causal link in its response brief. That is likely because the plaintiff has not plead or shown that it has been deterred from exercising its rights based on the allegedly retaliatory action of the Defendants; and therefore Tri-State is missing a key requirement that would entitle it to relief. Further, Defendants cannot plead that they have been deterred based on the alleged breaches in contract, as they have filed and continue to pursue this lawsuit, continue to speak out against Riversdale Materials, and continue to work pursuant to their contract with the Village. There has been no deterrence and thus Tri-State cannot plead or argue that there has been facts or circumstances that have prevented Tri-State from exercising its rights.

Further, plaintiff's argument that there is a causal connection between the protected activity and the retaliatory action, based on the timing of the alleged breach of contract, is not plead anywhere in its First Amended Complaint. However, even if Plaintiff pleads that prior to the filing of its Complaint, the Village had always paid invoices within thirty days and after the Complaint invoice payments were late, that is hardly enough to plead political retaliation. This fact is not evidence of a pattern of adverse actions by the Defendants sufficient to establish the Village' motive and the requisite causal link to adequately plead retaliation. The mere fact that delayed payments were made while Tri-State and Defendants were engaged in litigation is not sufficient to support an inference of causation. *Chicago United Industries, Ltd.*, 739 F.Supp.2d 1043, 1055 (2010).

The issue here is whether or not plaintiff has plead the necessary elements and whether plaintiff will ever be able to plead the necessary elements of political retaliation given the facts of this case. Plaintiff's First Amended Complaint and response brief does not support its conclusion that it has established its entitlement to relief for political retaliation. Plaintiff has not plead and does not have facts to support a claim of political retaliation and Counts V and VI should be dismissed.

**G. Breach of Contract**

Tri-State again responds that its pleading is adequate at this stage in the lawsuit. Tri-State then complies with 735 ILCS 5/2-606 and attaches the contracts allegedly breached by Defendants. However, Tri-State does not argue in its response and has not plead facts that support the elements of its breach of contract claim. There are no facts plead and no arguments made in the response brief that support the existence of a breach of contract by the Village or resultant injury to Tri-State from the alleged breach of contract. Tri-State alleges that a Spring Clean-Up was not

performed pursuant to contract; however, Tri-State also concedes that the Spring Clean-Up is done at no charge to the Village, and so neither party lost money or was damaged by the failure to coordinate this clean-up. In addition, while the lawsuit was pending, the Village, once informed of this alleged breach of contract for failure to schedule the Spring Clean-Up, attempted to coordinate the same with Tri-State to no avail. *See Exhibit A*, Letters regarding Spring Clean Up. There was absolutely no injury to Tri-State from this alleged breach. Tri-State also claims that Defendants breached the contract by delaying payments of invoices. Yet, Tri-State does not argue and does not plead that it was injured by this alleged delay. No injury is plead and no facts exist under which injury can be plead; and therefore, Plaintiff is unable to maintain a claim for breach of contract.

**H. Mayor Immunity**

The Plaintiff does not address in its response brief the Illinois statute or case law which delineates Mayor Jackson's immunity from the claims in the First Amended Complaint. The Plaintiffs do not dispute that Mayor Jackson was acting in his legislative capacity when he and the Village Board passed the Ordinance. Plaintiff's argue that Mayor Jackson should be held liable for political retaliation, which allegedly solely relates to breach of contract claims and does not relate to the Ordinance wherein a special use was granted to Riverdale Materials. This is directly contrary to plaintiff's claims that its first amendment speech relating to the Ordinance is the reason the Mayor retaliated against it by breaching its contract. Tri-State attempts to create legislative liability based on flawed and inaccurate statements. Mayor Jackson is not liable for his role in the Ordinance granting a special use to Riverdale Materials and any resultant claims relating to the same. Illinois law is clear that this special use ordinance was a legislative act for which Mayor Jackson is completely immune.

Therefore, Counts V and VI as they relate to Mayor Jackson should be dismissed, as Mayor Jackson is immune from liability.

**I. Requests for Declaratory Relief Should Be Dismissed Pursuant to Rule 12(b)(6)**

Plaintiff states in its response that when a plaintiff challenges various improper and unconstitutional actions of a municipality it is axiomatic that part of the relief sought will be a request that the Court strike down the action as null and void *ab initio*. Plaintiff provides no statutory or precedential support for this conclusory statement.

Plaintiff's initial Complaint at Law sought declaratory judgment in relation to the Ordinance at issue. That Complaint was brought pursuant to 65 ILCS 5/11-13-25 and subsequently amended after the Defendant's filing of a motion to dismiss in which it argued that Tri-State was not entitled to declaratory relief. The Plaintiff is clearly still attempting to obtain declaratory relief and is now improperly requesting it as a remedy in each Count of its First Amended Complaint. Plaintiff has not appropriately plead the elements that would entitle it to declaratory relief and it has not cited any case law that would entitle it to declaratory relief as any remedy for the Counts plead. The requests for declaratory relief as a remedy in each Count of the Complaint should be dismissed, as the elements required to obtain declaratory judgment have not been appropriately plead.

Further, if the Court declared the Ordinance null and void *ab initio,* Riverdale Materials would arguably no longer be able to operate its business in the Village. Yet, Riverdale Materials is not a defendant; despite having a significant interest in the outcome of this case if the Court allows the Plaintiff to continue to request this type of declaratory relief.

Respectfully submitted,

MONTANA & WELCH, LLC.

By:*/s/ Erin E. Blake* ____________________
One of the attorneys for the Defendants

John P. Wise (ARDC No. 6238380)
Erin E. Blake (ARDC No. 6295914)
MONTANA & WELCH, LLC
11950 S. Harlem Avenue – Suite 102
Palos Heights, IL 60463
(708) 448-7005
jwise@montanawelch.com
eblake@montanawelch.com