# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TRI-STATE DISPOSAL, INC., an )
Illinois corporation, )
                 )
         Plaintiff, )
                 )      No. 18 C 2138
    v. )
                 )      Judge Sara L. Ellis
THE VILLAGE OF RIVERDALE, )
a municipal corporation; and )
LAWRENCE JACKSON, Mayor of the )
Village of Riverdale, )
                 )
         Defendants. )

## OPINION AND ORDER

Similar to the CW television series "Riverdale," this case alleges intrigue, political

subterfuge, and the darkness lurking just under the surface of a seemingly picture perfect small

town.  After the Village of Riverdale (the "Village") passed Ordinance Number 2017-22 (the

"Ordinance") granting Riverdale Materials, LLC ("Riverdale Materials") a special use permit to

operate a waste collection business in Riverdale, Illinois, Tri-State Disposal, Inc. ("Tri-State")

filed this lawsuit against the Village and its Mayor, Lawrence L. Jackson.  Tri-State brings

claims against the Village for violation of procedural and substantive due process (Counts I and

II) and equal protection (Count III), and breach of contract (Count VII).  It also seeks judicial

review of the Ordinance (Count IV).  Finally, Tri-State contends that the Village and Jackson

engaged in political retaliation in violation of the First Amendment (Counts V and VI).

Defendants move to dismiss the first amended complaint under Rule 12(b)(1) for lack of

standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The

Court concludes that Tri-State has standing to pursue its claims but dismisses the due process

claims for failure to allege a deprivation of a protected property interest and the equal protection claim because the first amended complaint and exhibits reveal a conceivable rational basis for the Village's actions. Tri-State also cannot pursue common law *certiorari* review of the Ordinance, where the zoning decision involves a legislative, not administrative, action. But the Court concludes that Tri-State has sufficiently stated its political retaliation and breach of contract claims, which may proceed to discovery.

## BACKGROUND[1]

Tri-State operates a solid waste, construction, and demolition transfer station in Riverdale, having provided waste services for the Village since 2002. In 2012, Tri-State and the Village entered into a written contract for waste services in Riverdale. The contract requires, among other things: Tri-State to pick up trash from Village residents, Tri-State to conduct a spring clean-up, and the Village to pay Tri-State's invoices within fifteen days. Additionally, pursuant to a settlement agreement entered in 2002 between the parties, Tri-State agreed to post a $50,000 bond for the benefit of the Village as security for its site and to pay royalties to the Village. The contract and settlement agreement are currently still in effect. The contract has an end date of July 31, 2019.

Initially, Tri-State supported Jackson's administration. In the summer of 2017, it came to light that a competing disposal business, Riverdale Materials, sought to establish itself in

---

[1] The facts in the background section are taken from Tri-State's first amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motion to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). Because Defendants make a facial challenge to Tri-State's standing allegations, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in Tri-State's favor for purposes of resolving the Rule 12(b)(1) motion. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). The Court also considers the additional exhibits attached to Tri-State's response to the extent they are consistent with the allegations of the first amended complaint. *Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001).

Riverdale with Jackson's support. Riverdale Materials applied for a special land use ordinance to operate a solid waste transfer station, construction demolition station, dirt transfer station, and stone processing facility on its property in Riverdale.[2] Jackson assured Tri-State that Riverdale Materials would have to post the same security and pay the same royalties outlined in the original contract and settlement agreement between Tri-State and the Village to operate in Riverdale. At some point, Tri-State learned that the Village did not plan to require Riverdale Materials to comply with these conditions.

Tri-State's facility is less than one mile from Riverdale Materials' site. Riverdale Materials' property sits on a former landfill that the courts shut down in 1962 because of the environmental condition of the property. The property remains unremediated. In its application for the special use ordinance, Riverdale Materials represented it would use an on-site retention pond for drainage and storm water control. But this pond is not located on its property nor does Riverdale Materials have the right to use it.

The Village ordinance requires a hearing and recommendation from the Village Plan Commission for conditional use applications. Because the Village does not have a Plan Commission, the notices for hearing regarding Riverdale Materials' special use application indicated that the Zoning Board of Appeals (the "Zoning Board") would hold the hearings sitting as the Plan Commission. No documents or records identify that the Zoning Board had authority to act as the Plan Commission. The Zoning Board held hearings to consider Riverdale Materials' application on September 7, 2017, and November 2, 2017. Tri-State appeared at these Zoning Board hearings and submitted documents in opposition to the conditional use. It criticized the hearing process and the environmental impact of Riverdale Materials' proposed facility, raising

---

[2] After Tri-State objected, Riverdale Materials removed the solid waste transfer station portion of its application.

concerns about hazardous waste, contamination at the site, storm water runoff and drainage, and the apparent special treatment Riverdale Materials was receiving from the Village. At the hearings, Riverdale Materials misrepresented the environmental condition of its property, its drainage plans, and its receipt of all necessary permits to operate the site. Members of the public testified in opposition to the proposed conditional use, raising concerns that the proposed facility would endanger public health and cause property values to decline, that Riverdale Materials' facility did not have adequate drainage, that Riverdale did not need another transfer station, and that Riverdale Materials was already operating without permits and illegally dumping at the site.

After the Zoning Board heard substantive testimony, Jackson fired its chairperson, who had expressed some reservations about the application, and appointed new members with political connections to Jackson. Despite objection from Tri-State and other members of the public, one of the Village attorneys acted as the *de facto* chair of the hearings without authority to do so. On November 2, 2017, the Zoning Board voted four to two to recommend that the Village Board grant the conditional use. The Village Board then took up Riverdale Materials' application on November 28, 2017. At that meeting, the Village Board unanimously passed the Ordinance, allowing Riverdale Materials to operate. The Village Board did not take public comment on the application prior to voting and refused to accept written materials, including from Tri-State, for the record. Jackson strongly supported the application, with a sign at the Riverdale Materials site indicating it was another business Jackson brought to Riverdale.

In early 2018, Tri-State sought to schedule the spring clean-up for that year in accordance with its agreement with the Village. The Village did not respond to Tri-State's numerous attempts to schedule this event and instead advertised a May 5 cleanup conducted by Flood Brothers, another waste contractor. On February 23, 2018, Tri-State filed this lawsuit.

Subsequently, at a March 27, 2018, Village Board meeting, the Village Board passed a motion directing the Chief of Staff to provide notice to Tri-State declining all potential extensions provided in the 2012 agreement with Tri-State and informing Tri-State that the agreement would therefore expire on July 19, 2019. On April 25, 2018, Jackson sent Tri-State a letter in which he complained that Tri-State representatives had harassed him and his staff and requested that Tri-State cease all communications by phone with the Village. The Village also refused to pay Tri-State's invoices from January through April 2018.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Standing

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). "Standing to sue is an important component of that limitation." *Meyers v. Nicolet Rest. of DePere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Id.* (citing *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988)). Standing consists of three elements: (1) an injury

in fact (2) that is fairly traceable to the defendant's challenged conduct and (3) capable of being redressed by a favorable decision. *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560–61). The plaintiff has the burden to demonstrate its standing and must do so with respect to each claim. *Lujan*, 504 U.S. at 561; *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

Defendants primarily argue that Tri-State has not sufficiently alleged an injury of fact, i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted) (internal quotation marks omitted). In the first amended complaint, Tri-State alleges two injuries in connection with all of its claims: (1) injury to its business and contractual interests, and (2) environmental, health, and safety harm to it as a corporate resident of the Village.[3] Tri-State does not clearly articulate the legal basis for finding these injuries cognizable and instead merely points to the paragraphs of the first amended complaint stating its injuries in response to Defendants' standing challenge. *See* Doc. 31 at 19–20 (setting forth the standard for standing and then claiming only that it has "made sufficient pleadings with respect to standing as set forth in [specified paragraphs of the first amended complaint]").

Despite this, the Court agrees that Tri-State has sufficiently alleged an economic harm sufficient to establish injury in fact in connection with its political retaliation and breach of contract claims. For the political retaliation claim, Tri-State alleges it spoke out on a matter of public concern and that, in response, Defendants have declined to further contract with Tri-State for waste disposal, refused to cooperate with Tri-State to allow it to meet its contractual

---

[3] Tri-State does not contend that the Court should find it has taxpayer standing or standing based on a diminution to its property value. The Court expresses no opinion as to whether either of these would provide a basis for finding Tri-State suffered an injury in fact.

obligations, falsely stated that Tri-State has harassed Jackson and the Village staff, and refused to pay invoices as required. Similarly, with respect to breach of contract, Tri-State claims injury because the Village has not complied with its contractual obligations and has acted to prevent Tri-State from meeting some of its own obligations. Although Defendants seize on merits arguments to negate the existence of injury with respect to these claims, the Court does not consider the merits in determining whether Tri-State has standing. *See Arreola v. Godinez*, 546 F.3d 788, 794–95 (7th Cir. 2008) ("[S]tanding and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is *entitled to relief*."). Instead, because Tri-State has alleged individualized harm it claims to have suffered because of Defendants' alleged acts of political retaliation and refusal to cooperate with it in carrying out the parties' contract, Tri-State has established an injury in fact for these claims.

The remaining claims, which challenge the Village's adoption of the Ordinance, require closer scrutiny. Tri-State alleges that the Ordinance indirectly affects its rights because it places Tri-State at an economic disadvantage. A generalized grievance about the Village's failure to comply with statutory or constitutional obligations, without any corresponding individualized injury to Tri-State, would not suffice to establish standing. *See Foster v. Ctr. Twp. of LaPorte County*, 798 F.2d 237, 243–44 (7th Cir. 1986) (noting that plaintiff could not establish standing based on "a general interest in insisting that government officials comply with statutory or constitutional obligations"). But the fact that the challenged action may harm other Village residents as well does not preclude finding a cognizable injury in fact. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 496 (7th Cir. 2005) ("[T]he particularity requirement does not mean . . . that a plaintiff lacks standing merely because it

asserts an injury that is shared by many people.").  And in this case, Tri-State alleges more than a generalized grievance, claiming that the adoption of the Ordinance, in alleged violation of due process, equal protection, and Illinois common law, has placed it at a competitive disadvantage and hurt its business.  Courts have recognized an injury in fact exists where the plaintiff claims the governmental action causes economic harm to the plaintiff.  *See Clinton v. City of New York*, 524 U.S. 417, 433, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998) (citing 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed. 1994) ("The Court routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III injury-in-fact requirement] . . . . It follows logically that any . . . petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test.")); *Hartigan v. Fed. Home Loan Bank Bd.*, 746 F.2d 1300, 1309 (7th Cir. 1984) ("[A] loss of competitive advantage, however small that loss may be, is the type of palpable economic injury that is recognized as sufficient to lay a basis for standing." (citing *Ass'n of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 154, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970))); *Marshall & Ilsley Corp. v. Heimann*, 652 F.2d 685, 692 (7th Cir. 1981) ("[A]n administrative agency's authorization of an allegedly illegal competitor or form of competition does constitute injury to competitors for standing purposes."). In one case challenging the adoption of a resolution concerning waste disposal, the court found an association had standing on behalf of its members who would be harmed financially by the enforcement of the resolution.  *See Nat'l Waste & Recycling Ass'n v. Warrick County Solid Waste Mgmt. Dist.*, No. 3:15-cv-00158-RLY-MPB, 2016 WL 1222353, at *10 (S.D. Ind. Mar. 29, 2016); *see also Lartnec Inv. Co. v. Ft. Wayne-Allen Co. Convention & Tourism Auth.*, 603 F. Supp. 1210, 1218–19 (N.D. Ind. 1985) (finding plaintiff sufficiently alleged economic loss for

Article III purposes where it claimed the building of a publicly assisted but privately-owned hotel competitor would create competition and reduce profits).  Similarly, Tri-State contends the Ordinance, if allowed to stay in effect, harms its business by improperly allowing a competitor to operate.  At this stage, these allegations suffice to establish injury in fact for Tri-State's remaining claims.

To the extent Tri-State alternatively seeks to base standing on an environmental injury due to the fact that courts previously shut down the Riverdale Materials site as a hazardous landfill and that it remains unremediated, Tri-State must adequately allege its use of the affected area and that it qualifies as a person "for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."  *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Enviro. Servs. (TOC), Inc.*, 528 U.S. 167, 183, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)).  The injury must be specific to the plaintiff, not generally to the environment.  *See Laidlaw*, 528 U.S. at 181.  Here, the pleadings do not sufficiently allege how the passing of the Ordinance, allowing Riverdale Materials to operate in a location with environmental hazards, causes individualized injury or harm to Tri-State.  *Cf. Franklin County Power*, 546 F.3d at 925–26 (finding plaintiff adequately established an injury in fact by stating in an affidavit that exposure to emissions from plant while visiting lake located three miles from the plant would cause her to stop visiting the lake).  Tri-State instead only alludes to the potential environmental risks that could generally result from the operation of the Riverdale Materials facility based on the history of that site, but this is not sufficient.  *See Protect Our Parks, Inc. v. Chicago Park Dist.*, No. 18-cv-3424, 2019 WL 670260, at *4 (N.D. Ill. Feb. 19, 2019) (finding that plaintiffs did not adequately allege environmental harm for standing purposes where they did not include any allegations of their use

or enjoyment of park or that the alleged environmental harm would affect them personally and instead relied on allegations that the proposed building would harm the park's natural environment). But because the Court has found an alternative basis for establishing an injury in fact, Tri-State's failure to adequately allege environmental harm does not prevent the Court from proceeding to consider whether Tri-State's allegations meet the remaining elements of standing.

The parties only briefly discuss causation and redressability, with Defendants conclusorily stating that Tri-State has not pleaded an injury that can be redressed in this case. The Court disagrees, however. A favorable decision on Tri-State's claims could lead to nullification of the Ordinance, specific performance of the parties' contract, and provide Tri-State with damages for any injuries it has suffered. Although Defendants claim some of this relief is not available to Tri-State, this again goes to the merits of Tri-State's requests for relief, not whether it has standing. *See Lac Du Flambeau*, 422 F.3d at 502 ("Redressability thus depends upon the relief requested, not the relief LDF could prove it was entitled to on the merits."). Therefore, the Court addresses these questions below, and at this stage finds that Tri-State has standing to pursue its claims.

## II.    Due Process Claims (Counts I and II)

Tri-State brings claims for both procedural and substantive due process violations against the Village. To state a claim under the Due Process Clause, Tri-State must allege a deprivation of a constitutionally protected property interest. *Kowalski v. Boliker*, 893 F.3d 987, 1001 (7th Cir. 2018). To qualify as a constitutionally protected property interest, the right must be created by "existing rules or understandings that stem from an independent source such as state law." *Kim Constr. Co. v. Bd. of Trs. of the Vill. of Mundelein*, 14 F.3d 1243, 1245–46 (7th Cir. 1994) (citation omitted) (internal quotation marks omitted). The Village argues that Tri-State has failed

to plead the deprivation of a constitutionally protected property interest. Tri-State claims that it

has a property interest in doing business in the Village, in its contracts with the Village, and in its

property in the Village. Tri-State does not articulate a basis for finding these interests

constitutionally protected. Illinois courts have found companies do not have a property interest

in receiving municipal contracts, *see id.* at 1246, or in doing business with a municipality, *see*

*Alarm Detection Sys., Inc. v. Orland Fire Protection Dist.*, 326 F. Supp. 3d 602, 624 (N.D. Ill.

2018) (noting the plaintiff failed to provide any authority to demonstrate a protected property

interest in municipal business). Nor does it appear that Tri-State has a protected property interest

in its existing contract with the Village. *Cf. Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d

1248, 1250 (7th Cir. 1996) ("For when a state repudiates a contract to which it is a party it is

doing nothing different from what a private party does when the party repudiates a contract; it is

committing a breach of contract. It would be absurd to turn every breach of contract by a state or

municipality into a violation of the federal Constitution."). *But see Khan v. Bland*, 630 F.3d 519,

529, 535–36 (7th Cir. 2010) (noting plaintiff may have a property right in existing contracts with

county housing authority but that breach of that contract cannot support a substantive due

process claim). Finally, Tri-State fails to plead how its ownership of property entitles it to due

process with respect to action not directed at that property. *See Muscarello v. Ogle County Bd.*

*of Comm'rs*, 610 F.3d 416, 423 (7th Cir. 2010) (finding that a plaintiff did not have a property

interest "in the lifting of zoning restrictions on another's property" and could not base a property

interest on a disguised taking claim of the "diminution of investment-backed expectations");

*Residences at Riverbend Condo. Ass'n v. City of Chicago*, 5 F. Supp. 3d 982, 986–88 (N.D. Ill.

2013) (noting that although "a property owner whose real property is subject to land use

regulation has a protected property interest under the Fourteenth Amendment," adjacent property owners do not).[4]

Even assuming a protected property interest, Tri-State has not pleaded how the passage of the Ordinance has deprived it of these property interests. Its contract with the Village remains in effect and was not subject to automatic renewal, and Tri-State does not claim an entitlement to renewal. Therefore, the fact that the Village has chosen not to renew the contract does not amount to a deprivation of its interest in its existing contract. *See Khan*, 630 F.3d at 528–29 (finding that although plaintiff may have had a property interest in his existing contracts, he did not have an expectancy to enter into new contracts where he did not point "to any provision of the contract, federal law, or state law that would entitle him to continued participation in the Section 8 program beyond performance of his existing contracts"). And, as discussed above, Tri-State's allegations do not suggest that the Ordinance has specifically affected its property. Therefore, Tri-State has not adequately alleged the deprivation of a protected property interest, and the Court dismisses the due process claims without prejudice.[5]

## III.    Equal Protection Claim (Count III)

To state a class of one equal protection claim, Tri-State must plead facts suggesting that a state actor discriminated against it with no rational basis. *Miller v. City of Monona*, 784 F.3d

---

[4] In *Residences at Riverbend*, the court also noted that "Illinois courts do not recognize property values, air, or light as constitutionally protected property interests." 5 F. Supp. 3d at 988.

[5] In reply, the Village argues that Tri-State has not alleged other elements of a due process claim. But because the Village raised these arguments for the first time in reply, the Court does not address them here. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010). Separately, the Court questions whether, at least for purposes of substantive due process, Tri-State can allege any such fundamental right that the Ordinance infringed. *See Pro-Eco, Inc. v. Bd. of Comm'rs of Jay County, Ind.*, 57 F.3d 505, 514 (7th Cir. 1995) (noting that a corporation does not have a fundamental right entitling it to pursue a substantive due process claim claiming infringement of that right); *Active Disposal, Inc. v. City of Darien*, No. 09 C 2930, 2010 WL 1416461, at *3 (N.D. Ill. Mar. 31, 2010) (same). Tri-State should take this concern, and those raised by the Village in reply, into consideration when determining whether it can amend to properly state a claim for violation of both substantive and procedural due process.

1113, 1120 (7th Cir. 2015). Although a common method of making such a showing is to identify a comparator who was treated differently, Tri-State need not "identify specific examples of similarly situated persons in [its] complaint[ ]." *Id.* (quoting *Capra v. Cook County Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013)). Tri-State may avoid dismissal by pleading that the Village "lacked a rational basis for singling [it] out for intentionally discriminatory treatment." *Id.* at 1121. A complaint does not survive by merely alleging an improper motive, however. *Id.* At the pleading stage, "[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment." *Id.* (alterations in original) (quoting *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)). And plaintiffs may "plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials." *Id.*

Tri-State bases its claim of disparate treatment on the Village requiring it to post a $50,000 bond and pay royalties to the Village, conditions that the Village did not impose on Riverdale Materials when it approved the Ordinance. The Village argues that Tri-State has not sufficiently alleged facts to demonstrate that the Village passed the Ordinance without these conditions because of animus and without a rational basis for the action. The first amended complaint, along with the exhibits attached to it and Tri-State's response, provide at least one conceivable rational basis for the difference in treatment. Specifically, Tri-State agreed to the bond and royalties as part of a settlement of litigation between the parties over whether Tri-State had the appropriate authorizations to conduct its operations in Riverdale. *See* Doc. 31-4. The inclusion of these terms as part of a settlement agreement suggests that nothing in the Village ordinance or state or federal law requires the imposition of such conditions on any potential waste management operator in Riverdale. And Tri-State provides nothing to dispel the inference that the different treatment resulted from the negotiation of contractual terms surrounding the

operation of the facilities and the Village's specific concern, at the time, with Tri-State's compliance with all permit requirements.  Indeed, Tri-State has not alleged any differences in the zoning treatment of the two operations, perhaps because zoning decisions typically satisfy the rational basis requirement.  *See Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003) ("[F]ederal courts are not zoning boards of appeal."); *Maum Meditation House of Truth v. Lake County, Ill.*, 55 F. Supp. 3d 1081, 1089 (N.D. Ill. 2014) ("[Z]oning ordinances imposing restrictions on use and occupation of private land, including distinguishing between residential and commercial and other uses, satisfy the rational basis test.").  Here, the Village's current leadership could have interpreted the Village's zoning requirements differently or placed different priorities on waste facilities than the Village did when it entered into the settlement agreement with Tri-State in 2002.  Such a change in circumstances provides an additional rational basis for the challenged action.  *See Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (finding class of one claim failed where different board members considered zoning variance requests made over different time periods); *John C. & Maureen G. Osborne Revocable Family Tr. v. Town of Long Beach, Ind.*, No. 3:17-cv-227 JD, 2018 WL 1471903, at *10–11 (N.D. Ind. Mar. 26, 2018) (concluding that plaintiff's allegations revealed a rational basis for difference in treatment where new interpretation was adopted by new officials with different zoning priorities).  Although Tri-State contends in conclusory fashion that the Village acted irrationally, even to the extent the Village did act with some animus toward Tri-State, the equal protection claim still fails because the challenged action has a potential rational basis.  *See Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014) ("If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no."); *D.B. ex rel. Kurtis B.*, 725 F.3d at 686 ("[T]he test for rationality does

not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiff's claim is a *conceivable* rational basis for the difference in treatment."). Because Tri-State's pleadings have revealed a possible rational basis for the Village's actions, Tri-State has pleaded itself out of court on this claim.

## IV.     Common Law *Certiorari* (Count IV)

Tri-State requests that the Court judicially review the Zoning Board's recommendation to the Village Board in favor of adoption of the Ordinance by way of common law *certiorari*. Common law *certiorari* is a general method for reviewing the administrative actions of agencies and tribunals "when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review." *Hanrahan v. Williams*, 673 N.E.2d 251, 253–54, 174 Ill. 2d 268, 220 Ill. Dec. 339 (1996). But common law *certiorari* is not available for review of legislative actions. *See E. St. Louis Sch. Dist. No. 189 Bd. of Educ. v. E. St. Louis Sch. Dist. No. 189 Fin. Oversight Panel*, 811 N.E.2d 692, 698, 349 Ill. App. 3d 445, 285 Ill. Dec. 205 (2004) ("Administrative agencies can also act in a quasi-legislative manner, which actions are not subject to review by a writ of *certiorari*."). Under Illinois law, zoning decisions are legislative, not administrative, actions. *See* 65 Ill. Comp. Stat. 5/11-13-25 ("Any decision by the corporate authorities of any municipality . . . in regard to any petition or application for a special use, variance, rezoning, or other amendment to a zoning ordinance shall be subject to de novo judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes."). Therefore, although some other basis may exist for review of the Ordinance, the Court cannot review it pursuant to common law *certiorari* and so dismisses this claim with prejudice.[6]

---

[6] It appears that § 11-13-25 also does not specifically provide Tri-State with the ability to challenge the Ordinance. *See Conaghan v. City of Harvard*, 60 N.E.3d 987, 1003, 2016 IL App (2d) 151034, 406 Ill.

## V.     Political Retaliation Claims (Counts V and VI)

Tri-State alleges that Defendants retaliated against it in violation of the First Amendment for Tri-State's opposition to the Ordinance and its filing of the present lawsuit. To sufficiently state such a claim, Tri-State must show that "(1) [it] engaged in activity protected by the First Amendment; (2) [it] suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015)). Defendants argue that Tri-State's political retaliation claims fail for several reasons.

First, the Village argues that it cannot be held liable for any political retaliation where Tri-State has not sufficiently alleged a basis for municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Tri-State cannot hold the Village liable on a theory of *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Instead, Tri-State must allege (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *Id.* Tri-State argues that it has adequately alleged a widespread practice and that its injury was caused by a person with final policymaking authority,

---

Dec. 436 (2016) ("[S]ection 11-13-25 does not create a right of action for property owners to challenge zoning decisions."). Some Illinois cases suggest that Tri-State may pursue a declaratory judgment action for review of the Ordinance. *See Paul v. County of Ogle*, 103 N.E.3d 585, 594–95, 2018 IL App (2d) 170696, 422 Ill. Dec. 453 (2018) (noting that cases have not foreclosed pursuit of a declaratory judgment action for review of a special use permit decision). Although the Village argues that the Court should strike all of Tri-State's requests for declaratory relief as improper, because the Court is dismissing all of Tri-State's claims requesting such relief, the Court defers consideration of the propriety of declaratory relief until such a request is properly before the Court.

Jackson.  The Village wholly ignores the allegations concerning Jackson as a final policymaker and does not provide any argument that Jackson does not qualify as a final policymaker under state or federal law.  Therefore, at this stage, taking Tri-State's allegations as true, the Court finds a sufficient basis for municipal liability.

Next, Defendants argue that Tri-State's speech did not address a matter of public concern.  *See Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013) ("A viable First Amendment retaliation claim by a public employee requires, at a minimum, that the speech being retaliated against be constitutionally protected, which means that the speech must involve a matter of 'public concern.'").  The parties agree that, as an independent government contractor for the Village, Tri-State must plead that its speech concerned a matter of public concern to proceed on its First Amendment retaliation claims.  *Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 679, 685, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996).  "Whether a statement rises to the level of public concern is a question of law, and in answering this question we look to the 'content, form, and context' of the statement."  *Kristofek*, 712 F.3d at 984 (quoting *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009)).  "The motive of the speaker is relevant as part of the 'context' in which the speech was made, but content 'remains the most important factor in determining whether speech addresses a matter of public concern.'"  *Id.* (quoting *Chaklos*, 560 F.3d at 712).

Here, Defendants argue that Tri-State primarily opposed the Ordinance and filed this lawsuit because it did not want a competitor to operate in Riverdale.  Defendants claim any concerns about the environmental, health, or safety impact of Riverdale Materials' operations was secondary to this business concern.  Tri-State did, indeed, make arguments about how the Village did not need another recycling transfer station so close to the existing one Tri-State

operates. But it also highlighted concerns about the potential environmental and safety issues posed by establishing a waste management facility at the proposed site, submitting documentation to support these concerns. Tri-State also raised issues of how the Riverdale Materials site may pose financial problems for the Village and its residents. These allegations amount to more than mere criticism of the Zoning Board or Village Board before they took action to approve the ordinance. *See Umbehr*, 518 U.S. at 686 (stating that alleging retaliation motivated by speech on a matter of public concern as an independent contractor requires plaintiff "to prove more than the mere fact that he criticized the Board members before they terminated him"). And while the first amended complaint reveals that Tri-State did have some personal interest in speaking out against the Ordinance, this does not necessarily remove it from First Amendment protection. *See Gazarkiewicz v. Town of Kingsford Heights, Ind.*, 359 F.3d 933, 942 (7th Cir. 2004) ("[S]peech of public importance is only transformed into a matter of private concern when it is motivated *solely* by the speaker's personal interests."); *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002) ("[E]ven if Gustafson and Cornejo were advancing some private interests when they raised concerns about Jones's orders, their claim survives as long as they also intended to bring to light what they believed to be the negative law enforcement consequences of the new policy."); *Chicago United Indus., Ltd. v. City of Chicago*, 669 F.3d 847, 852 (7th Cir. 2012) (stating that the filing of a lawsuit that included allegations of public concern was assumed to be enough to bring the case within the protection of the First Amendment). Although ultimately the facts may demonstrate that Tri-State did not speak on a matter of public concern and instead its speech was motivated primarily by its private business interests, at this stage, the Court cannot make that conclusion.

Defendants also argue that Tri-State has not adequately alleged that its protected speech served as a substantial or motivating factor in Defendants' decision to terminate Tri-State's contract with the Village, citing to various cases allowing governmental entities latitude in making contracting decisions. *See* Doc. 25 at 15. Although the Village's interests in contracting or evidence that it would have terminated the contract regardless of Tri-State's speech may serve as a valid defense to Tri-State's claim, Tri-State need not anticipate that defense in its pleadings. *See Umbehr*, 518 U.S. at 685 (noting that the county may have a defense if it can show that it "would have terminated the contract regardless of [plaintiff's] speech" or that "the County's legitimate interests as contractor, deferentially viewed, outweigh the free speech interests at stake"); *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013) (concluding that, only after the plaintiff meets his initial burden of establishing the protected speech was a motivating factor in the adverse action does a court consider the defendant's counterevidence that it would have taken the action even absent the protected speech). At this stage, Tri-State need only allege that the speech served as a motivating factor for Defendants' actions, which in this case encompasses not only the notification of non-renewal but also the failure to pay invoices on time and cooperate with Tri-State in scheduling the spring clean-up. Tri-State has included allegations that these actions came soon after Tri-State's speech and contrasted with Tri-State's previous interactions with Defendants. This suffices, at this stage, to plead a First Amendment retaliation claim.[7] *See McCarragher v. Ditton*, No. 14 C 08591, 2017 WL 2180436, at *7–8 (N.D. Ill. May 18, 2017) (noting that causation is typically a factual matter and that a plaintiff need only plausibly allege that the protected conduct was a motivating factor for the decision); *Garner v. City of Country Club Hills, Ill.*, No. 11-cv-5164, 2012 WL 3017966, at *3 (N.D. Ill. July 23, 2012) ("Plaintiff is

---

[7] In reply, Defendants also argue that Tri-State has not sufficiently alleged that Defendants took an adverse action sufficient to deter future First Amendment activity, but the Court does not address this argument because Tri-State did not have an opportunity to respond to it. *See Dexia*, 629 F.3d at 625.

not required to plead specific evidence of intent at this stage; she is only required to plead fact that if true raise the possibility of relief about a 'speculative level.'").

Finally, Jackson argues that Tri-State cannot proceed against him because he acted in a legislative capacity in passing the Ordinance. Although legislative immunity may protect Jackson from any actions surrounding the adoption of the Ordinance, Tri-State's political retaliation claim does not allege that Jackson and the Village adopted the Ordinance in retaliation for its speech. Although Tri-State's speech concerned a legislative action, Jackson's alleged retaliatory acts—terminating Tri-State's contract, instructing Tri-State not to communicate with the Village except in writing, failing to cooperate with Tri-State to set up the spring clean-up, and failing to pay invoices pursuant to the parties' contract—do not. Nothing in the first amended complaint suggests that legislative immunity covers these later actions. Therefore, the Court cannot dismiss the political retaliation claims against Jackson based on immunity and allows them to proceed against both Defendants.

## VI.    Breach of Contract Claim (Count VII)

Finally, the Village challenges Tri-State's breach of contract claim, arguing that Tri-State has not sufficiently pleaded the elements of this claim and that Tri-State did not attach a copy of the contract as required by Illinois law. Initially, the Village's argument that Tri-State must have attached the contract to the complaint misstates federal law. Although Illinois procedure requires the plaintiff to attach the contract on which it bases its breach of contract claim to the complaint, *see* 735 Ill. Comp. Stat. 5/2-606, this procedural requirement does not apply to cases in federal court, *see, e.g.*, *Hales v. Timberline Knolls, LLC*, No. 15 C 2622, 2017 WL 25174, at *8 (N.D. Ill. Jan. 3, 2017) ("[Plaintiff] is not procedurally required to attach the contract to state a claim for breach."); *Mitchell v. United Med. Sys., Inc.*, No. 10 C 6273, 2011 WL 1526985, at *5 (N.D.

Ill. Apr. 20, 2011) (same); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002) (same). Even if this requirement applied, Tri-State remedied the issue by attaching the relevant contract to its response.

Next, under Illinois law, a breach of contract claim consists of four elements: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) injury to the plaintiff. *Gallagher Corp. v. Russ*, 741 N.E.2d 605, 611, 309 Ill. App. 3d 192, 242 Ill. Dec. 326 (1999). The Village claims that Tri-State has not sufficiently pleaded facts to establish that it breached the contract or that Tri-State suffered damages. But this ignores the allegations of the first amended complaint, in which Tri-State pleads that the Village has breached the contract by failing to pay certain invoices as required by the contract and did not cooperate with Tri-State to organize the spring clean-up. Tri-State also pleads injury, claiming that the Village has not paid Tri-State as required and hired another waste management company to conduct the spring clean-up, despite that being a requirement of Tri-State's contract with the Village. Although the Village may ultimately establish that no breach occurred or that Tri-State did not incur any damages because of the alleged breaches, at this stage, Tri-State has sufficiently placed the Village on notice of its breach of contract claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [25]. The Court dismisses Tri-State's due process claims without prejudice and its equal protection claim and common law *certiorari* claim with prejudice.

Dated: March 26, 2019

SARA L. ELLIS
United States District Judge