# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, ) ) ) Plaintiff, ) ) v. ) ) THE VILLAGE OF RIVERDALE, ) a municipal corporation; and ) LAWRENCE JACKSON, ) Mayor of the Village of Riverdale, ) ) Defendants. ) | No. 18 C 2138<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

After the Village of Riverdale (the "Village") passed Ordinance Number 2017-22 (the "Ordinance"), Plaintiff Tri-State Disposal, Inc. ("Tri-State") filed this lawsuit against Defendants the Village and its Mayor, Lawrence J. Jackson. The Ordinance granted Riverdale Materials, LLC ("Riverdale Materials") a special use permit to operate a waste collection business in Riverdale, Illinois, where Tri-State also operates a waste collection business. After concluding that Tri-State had standing to pursue its claims, the Court dismissed Tri-State's first amended complaint ("FAC") in part. Doc. 45. The Court dismissed Tri-State's due process claims for failure to allege deprivation of a protected property interest. The Court also dismissed Tri-State's equal protection claim because the FAC and exhibits demonstrated a conceivable rational basis for the Village's decision to pass the Ordinance. Finally, the Court dismissed Tri-State's claim for common law *certiorari* review of the Ordinance because the zoning decision involved a legislative, rather than administrative, action. Notwithstanding, the Court concluded that Tri-State sufficiently pleaded its political retaliation and breach of contract claims.

Tri-State subsequently filed a second amended complaint ("SAC"). In the SAC, Tri-State made minor changes to the FAC, realleged due process, breach of contract, and political retaliation claims against Defendants, and did not plead any new claims. Defendants move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court again dismisses Tri-State's due process claims. The SAC fails to allege a deprivation of a protected property interest, and Tri-State's due process claims fail even if the Court assumes a property interest. Although Defendants initially moved to dismiss Tri-State's political retaliation claims, Defendants subsequently withdrew their motion to dismiss with respect to those claims. Doc. 61. Therefore, Tri-State may still proceed on its claims for political retaliation and breach of contract.

## BACKGROUND[1]

Tri-State operates a solid waste, construction, and demolition transfer station in the Village and has provided waste services to the Village since 2002. On July 24, 2012, Tri-State and the Village entered into a written contract for waste services in Riverdale (the "Contract"). The Contract required Tri-State to pick up trash from Village residents and conduct a spring clean-up. The Contract also required the Village to pay Tri-State's invoices within fifteen days. The parties also entered into a settlement agreement in 2002, wherein Tri-State agreed to post a $50,000 bond for the benefit of the Village as security for its site and pay royalties to the Village. The Contract was in effect until July 31, 2019.

---

[1] The facts in the background section are taken from the SAC as well as the exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). Although the Court presumes familiarity with the factual background set forth in its March 26, 2019 Opinion, Doc. 45, the Court recounts the allegations again here, including any additional allegations from the SAC.

Initially, Tri-State supported Mayor Jackson's administration. In the summer of 2017, Tri-State learned that a competing disposal business, Riverdale Materials, sought to establish itself in Riverdale with Jackson's support. Riverdale Materials applied for a special land use ordinance to operate a solid waste transfer station, construction demolition station, dirt transfer station, and stone processing facility on its property in Riverdale. Riverdale Materials subsequently withdrew its request to operate a solid waste transfer station from its application. Jackson assured Tri-State that Riverdale Materials would have to post security and pay royalties, as the Village required Tri-State to do. At some point, Tri-State learned that the Village did not plan to require Riverdale Materials to comply with such conditions.

Tri-State's facility is less than one mile from Riverdale Materials' site. Riverdale Materials' site is on a former landfill that courts shut down in 1962 due to its environmental condition. The property remains unremediated. In its application for the special use ordinance, Riverdale Materials represented it would use an on-site retention pond for drainage and storm water control. But this pond is not located on its property, and Riverdale Materials does not have the right to use the retention pond. Tri-State owns a retention pond adjacent to the Riverdale Materials site.[2] Runoff and other drainage from Riverdale Materials' site adversely affect the retention pond.

A Village ordinance requires a hearing and recommendation from the Village Plan Commission for conditional use applications. The Village does not have a Plan Commission, thus, the notices for hearings about Riverdale Materials' special use application indicated that the Zoning Board of Appeals (the "Zoning Board") would hold the hearings sitting as the Plan

---

[2] The SAC does not specify when Tri-State obtained ownership rights of the retention pond. In Tri-State's opposition to Defendants' motion to dismiss the SAC, Tri-State indicates that it did not own the retention pond when the Village evaluated whether to pass the Ordinance. Rather, Tri-State acquired ownership rights prior to filing the SAC.

Commission. No documents or records identify that the Zoning Board had authority to act as the Plan Commission. The Zoning Board held hearings to consider Riverdale Materials' application on September 7, 2017 and November 2, 2017. Tri-State appeared at the Zoning Board hearings and submitted documents in opposition to the proposed conditional use. Tri-State criticized the hearing process and the environmental impact of Riverdale Materials' proposed facility, raising concerns about hazardous waste, contamination at the site, and storm water runoff and drainage. Tri-State also communicated concerns about the apparent special treatment that the Village gave Riverdale Materials. At the hearings, Riverdale Materials misrepresented the environmental condition of its property, its drainage plans, and its receipt of all necessary permits to operate the site. Members of the public testified in opposition to the proposed conditional use, raising concerns that the proposed facility would endanger public health and cause property values to decline, that the facility lacked adequate drainage, that Riverdale did not need another transfer station, and that Riverdale Materials was already operating without permits and illegally dumping at the site.

After the Zoning Board heard substantive testimony, Jackson fired the chairperson who had expressed some reservations about the application. Jackson then appointed new members with political connections to him. One of the Village attorneys acted as the *de facto* chair of the hearings without authority to do so, despite objections from Tri-State and other members of the public. On November 2, 2017, the Zoning Board voted four to two to recommend that the Village Board grant Riverdale Materials the conditional use.

On November 28, 2017, the Village Board unanimously passed the Ordinance, which allowed Riverdale Materials to operate. The Village Board did not take public comment on the application prior to voting and refused to accept written materials for the record, including

materials from Tri-State. The Village passed the Ordinance despite the documented history of environmental contamination and the lack of any on-site storm water or drainage facility. Jackson strongly supported the application, and a sign at Riverdale Materials' site advertised it as another business Jackson brought to Riverdale.

On February 23, 2018, Tri-State filed this lawsuit. In March 2018, Tri-State sought to schedule the spring clean-up for that year in accordance with its contract with the Village. The Village did not respond to Tri-State's numerous attempts to schedule this event and instead advertised a cleanup to occur on May 5, 2018, conducted by another waste contractor. At a meeting on March 27, 2018, the Village Board passed a motion that directed the Chief of Staff to provide notice to Tri-State that the Village would decline all potential extensions provided in the Contract and inform Tri-State that the contract would therefore expire on July 19, 2019. On April 25, 2018, Jackson sent Tri-State a letter in which Jackson complained that Tri-State representatives had harassed him and his staff and requested that Tri-State cease all telephonic communications with the Village. The Village also refused to pay Tri-State's invoices from January through April 2018.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Tri-State alleges that the Village violated its procedural and substantive due process rights. Tri-State contends it had property interests in its business in the Village and rendering the services contemplated by its Contract with the Village. In the SAC, Tri-State also alleges a property interest in a retention pond adjacent to the Riverdale Materials site, which is "adversely affected by illegal drainage and runoff[.]" Doc. 49 ¶ 82. The Village argues that the Court should dismiss both claims because the Village's actions did not deprive Tri-State of a constitutionally protected property interest and even if the Court finds a constitutionally protected property interest, Tri-State fails to adequately plead how the Village's passage of the Ordinance deprived it of such property interest. The Court again concludes that Tri-State failed to allege a constitutionally protected interest and so dismisses the due process claims.

**I.      Procedural Due Process (Count I)**

Tri-State alleges that the Village violated its procedural due process rights in passing the Ordinance. The Village argues that (1) the Village's passage of the Ordinance could not have deprived Tri-State of its interest in the retention pond because Tri-State did not own the pond at that time and did not assert a deprivation of its property during the hearings and (2) Tri-State was afforded due process through its participation in public hearings and submissions to the Village, which contained its objections to the Ordinance. The Fourteenth Amendment of the Constitution of the United States prevents a State from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "An essential component of a procedural due process claim is a protected property or liberty interest." *Khan v. Bland*, 630

F.3d 519, 527 (7th Cir. 2010) (quoting *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007)). To establish a procedural due process violation, Tri-State must demonstrate "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)). There is no protected property interest here, and even if the Court found a protected property interest, the Village did not violate Tri-State's procedural due process rights. Therefore, the Court dismisses Tri-State's procedural due process claim.

### A. Property Interest

As the Court previously explained, to state a claim under the Due Process Clause, Tri-State must first establish a constitutionally protected property interest. *See Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013) ("The threshold question in any due process challenge is whether a protected property or liberty interest actually exists."); *see also Khan*, 630 F.3d at 527. A constitutionally protected property interest is created by "existing rules or understandings that stem from an independent source such as state law." *Kim Constr. Co. v. Bd. of Trs. of the Vill. of Mundelein*, 14 F.3d 1243, 1245–46 (7th Cir. 1994) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In previously evaluating the due process claims that Tri-State repeats here, the Court concluded that Tri-State failed to establish a constitutionally protected property interest. Doc. 45 at 12. Specifically, the Court found that Tri-State did not have a property interest in doing business with the Village, its Contract with the Village, or its ownership of property in the Village. Doc. 45 at 12; *see also Kim*, 14 F.3d at 1246–47 (explaining that an unsuccessful bidder for a public contract does not have a property interest in the award); *Taake v. Cty. of Monroe*, 530 F.3d 538, 542 (7th Cir. 2008) ("[M]ere breaches of contract by the government do not support substantive due process claims under the Constitution."); *Alarm Detection Sys., Inc. v.*

7

*Orland Fire Prot. Dist.*, 326 F. Supp. 3d 602, 624 (N.D. Ill. 2018) (concluding there was no due process violation where the plaintiff failed to demonstrate a protected property interest in municipal business). The Court also concluded that even if Tri-State established a protected property interest, Tri-State failed to plead how the Ordinance deprived it of such interest. Doc. 45 at 13.

Despite the opportunity to replead its claims by asserting a constitutionally protected property interest, Tri-State filed the SAC in substantially the same form. Again, Tri-State fails to articulate a basis for finding its alleged property interests constitutionally protected. It does not provide any reason to question the Court's determination that doing business with the Village, a Contract with the Village, and ownership of nearby property do not amount to protected property interests. Tri-State does include two additional allegations pertaining to a constitutionally protected property interest, however. In the SAC, Tri-State contends that it owns a retention pond adjacent to Riverdale Materials' site, which is adversely affected by activities on the site. The Village argues that Tri-State failed to include additional facts regarding its ownership of the adjacent retention pond and that Tri-State did not specify the rule or law that establishes a constitutionally protected property interest. The Village further argues that Tri-State did not assert its ownership in the retention pond during the Village's evaluation of the Ordinance. Tri-State concedes that it did not own the retention pond during the hearings surrounding the Ordinance and acquired ownership rights "prior to filing its Second Amended Complaint."

As the Court previously explained, Tri-State's property is not subject to the Ordinance, thus, Tri-State does not have a protected property interest in its new allegations as an adjacent landowner. Doc. 45 at 12–13. The Ordinance only applies to Riverdale Materials' site. In *Muscarello v. Ogle County Board of Commissioners*, the Seventh Circuit concluded that the plaintiff failed to allege a due process claim because there was no protectable property interest. *See* 610 F.3d 416, 423 (7th Cir. 2010). There, the plaintiff owned nonresidential property

adjacent to property subject to a zoning ordinance. *Id.* at 418, 423. The Court explained that the plaintiff was "unable to describe a property interest that [was] not speculative." *Id*; *see also Residences at Riverbend Condo. Ass'n v. City of Chicago*, 5 F. Supp. 3d 982, 986 (N.D. Ill. 2013) (concluding that the plaintiffs did not have a constitutionally protected property interest in property adjacent to the property subject to an ordinance). Tri-State attempts to establish a non-speculative interest by alleging that it owns an adjacent retention pond that is affected by runoff from the site. However, the Village passed the Ordinance in 2017, and Tri-State became the owner of the retention pond in 2019. Therefore, Tri-State did not own the retention pond when the Village passed the Ordinance, and Tri-State knew of the Ordinance when it acquired ownership rights to the retention pond. Because Tri-State did not own the adjacent retention pond at the time of the hearings, it cannot claim that the Ordinance deprived it of a property interest in the retention pond. *See Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 709 (7th Cir. 2004) (explaining "a contract to buy something is not tantamount to ownership of the thing" for purposes of a property interest); *see also Khan*, 630 F.3d at 527 ("To claim a property interest protected by the Fourteenth Amendment, 'a person . . . must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it.'" (quoting *Roth*, 408 U.S. at 577)). Tri-State acquired the retention pond *after* the hearings and cannot assert now that the Ordinance deprived it of a property interest in the retention pond. And without any protected property interest, Tri-State's procedural due process claim fails again.

### B. Deprivation of Property Interest and Denial of Due Process

Even if the Court assumes a protected property interest, Tri-State failed to plead how the Village's actions in passing the Ordinance violated its rights under the Due Process Clause. Tri-State contends that the Village failed to provide a meaningful opportunity for it to be heard and

9

the hearings did not occur before the proper body. The Village argues that Tri-State was involved in the Village's public hearings and had a meaningful opportunity to be heard. Additionally, Tri-State did not assert a property interest in the retention pond during that process and cannot argue a due process violation now.

"[P]rocedures 'due' in zoning cases are minimal." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994). "[L]ocal governments are not required to respect property owners' rights, and there is therefore no obligation to provide hearings to ascertain a protected core." *Id.* at 167. Moreover, when a legislative body makes zoning decisions, the impacted parties have no right to notice and an opportunity to be heard. *See Ind. Land Co.*, 378 F.3d at 710 ("[L]egislation normally is general in scope rather than targeted on a specific individual, and its generality provides a safeguard that is a substitute for procedural protections[.]"). Here, Tri-State acknowledges that it participated in public hearings and shared its opinion about the Ordinance with the Village. Tri-State appeared at the hearings on September 7 and November 2, 2017, and submitted documents at those hearings. Tri-State had multiple opportunities to raise its concerns about the Ordinance. The Village not only provided notice and an opportunity to be heard, but Tri-State actively participated in the process. The Village offered more process than the Due Process Clause requires. *See, e.g.*, *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cty., Ind.*, 57 F.3d 505, 513 (7th Cir. 1995) (concluding the plaintiff was afforded procedural due process when it attended a public hearing and was not denied an opportunity to speak). Additionally, it is immaterial that the Village used procedures different than the procedures set forth in its municipal code. *See, e.g.*, *River Park*, 23 F.3d at 166 ("[T]he

Constitution does not require state and local governments to adhere to their procedural promises."). Therefore, the Court dismisses Tri-State's procedural due process claim.[3]

## II. Substantive Due Process (Count II)

Tri-State also claims that the Village violated its substantive due process rights because the Village's decision to pass the Ordinance was arbitrary and capricious. The Village argues that there is no fundamental right at stake and the Ordinance has a rational basis because the Village identified specific justifications for its enactment. "Intrusion upon a cognizable property interest is a threshold prerequisite to a substantive due process claim." *Khan*, 630 F3d at 535 (quoting *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1002 (7th Cir. 2008)). As discussed, Tri-State has failed to establish a property interest. And even if a property interest exists, Tri-State's substantive due process claim fails because it does not involve a fundamental right and the Village had a reasonable basis for passing the Ordinance.

"[S]ubstantive due process is not a blanket protection against unjustifiable interference with property. And it does not confer on federal courts a license to act as zoning boards of appeals." *Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 508 (7th Cir. 2013) (quoting *Gen. Auto Serv. Station*, 526 F.3d at 1000–01). "[T]he scope of substantive due process is very limited." *Campos v. Cook Cty.*, 932 F.3d 972, 975 (7th Cir. 2019) (alteration in original) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). To state a substantive due process claim, Tri-State must "demonstrate either that the ordinance infringes a fundamental liberty interest or that the ordinance is arbitrary and unreasonable, having no substantial relation

---

[3] In its Opposition to Defendants' motion to dismiss, Tri-State argues for the first time that the Village's actions constitute a taking in violation of the Constitution. Tri-State's argument on this issue is underdeveloped, and as such the Court will not consider it. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (holding that a party waives an argument if it is "underdeveloped, conclusory, or unsupported by law"); *TinleySparks, Inc. v. Vill. Of Tinley Park*, 181 F. Supp. 3d 548, 561 (N.D. Ill. 2015) (same).

to the public health, safety, morals, or general welfare." *Greater Chicago Combine & Ctr., Inc. v. City of Chicago*, 431 F. 3d 1065, 1071 (7th Cir. 2005) (quoting *Pro-Eco*, 57 F.3d at 514). "Substantive due process protects only the most egregious and outrageous governmental action." *Campos*, 932 F.3d at 975.

The Court previously questioned whether Tri-State could allege a fundamental right for purposes of a substantive due process claim. Doc. 45 at 13 n.5. In the SAC, Tri-State again fails to allege that the Village infringed on a fundamental right, and the Court cannot discern any fundamental right at stake here. *See Mid-Am. Waste Sys., Inc. v. City of Gary, Ind.*, 49 F.3d 286, 291 (7th Cir. 1995) ("Depositing garbage in landfills is not exactly a fundamental right, either . . . . A claim that the Constitution protects this industry from public control—even when the landfill is public property—would bring nothing but belly laughs."); *see also Pro-Eco*, 57 F.3d at 514 (concluding the plaintiff failed to plead a fundamental liberty interest in its challenge to an ordinance that prevented it from building a landfill in the county). Moreover, "[c]orporations do not have fundamental rights[.]" *Pro-Eco*, 57 F.3d at 514 (quoting *Mid-Am. Waste Sys*, 49 F.3d at 291).

Additionally, Tri-State cannot adequately allege that the Ordinance is arbitrary and unreasonable. "[G]overnmental action passes the rational basis test if a sound reason may be hypothesized." *Greater Chicago*, 431 F.3d at 1071–72 (quoting *Pro-Eco*, 57 F.3d at 514). In previously evaluating Tri-State's equal protection claim, the Court identified rational bases for the Village's actions, including that the Village could have had different priorities for waste facilities than it did when it entered the settlement agreement with Tri-State in 2002. Doc. 45 at 15. Additionally, the Village could have thought the Ordinance would positively impact the

12

local economy. Because there are potential sound reasons for the Village's decision to pass the Ordinance, Tri-State's substantive due process claim also fails.

Tri-State has failed to state claims under the Due Process Clause. Because the Court already provided Tri-State an opportunity to remedy its FAC and Tri-State's response to the present motion to dismiss failed to address any of the deficiencies identified in the Court's prior Opinion and Order, the Court dismisses Tri-State's due process claims with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [57]. The Court dismisses Counts I and II with prejudice.

Dated: January 28, 2020

_____
SARA L. ELLIS
United States District Judge