# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18-CV-02138 |
| vs. | ) ) | Judge Sara L. Ellis |
| THE VILLAGE OF RIVERDALE, et al. | ) ) ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

## JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 AND JUDGE ELLIS' STANDING ORDERS

1. Jurisdiction is conferred upon this court by 28 U.S.C. §1331 for the federal claims found in Counts III and IV, and pursuant to 28 U.S. Code § 1367(a) for the non-federal breach of contract claim in Count V. Venue is proper under 28 U.S.C. §1391(b) because plaintiff and defendant reside in this district and the alleged events giving rise to this action occurred within the Northern District of Illinois. (Ex. A, Answer to Third Amended Complaint ¶¶7, 8).

2. Plaintiff, Tri-State Disposal, Inc. ("Tri-State) is an Illinois corporation that operates a refuse, yard waste, and recyclable materials collection and processing service, with a principal place of business at 13903 South Ashland Avenue in Riverdale, Illinois since 1995. (Ex. B, 2012 Agreement for Refuse, Recyclable, Yard Waste Material Collection/Processing/Disposal Services, TS_01533-TS_01544; Ex. C, Deposition of Sheryl Germany, Pages 22, 40-41.) Tri-State is a family business owned and operated by Sheryl Germany, Jeff Germany, and Tom Germany. (Ex. C, Page 24).

3. Defendant Village of Riverdale is an Illinois municipal corporation operating in Riverdale, County of Cook, Illinois. (Ex. A, ¶5).

4. Defendant Lawrence Jackson is the Mayor of the Village of Riverdale and an elected official who resides in Riverdale, County of Cook, Illinois. (Ex. A, ¶6).

5. In 1999, while operating its business in the Village, Tri-State was alleged to have been in violation of the Village of Riverdale Code of Ordinances. (Ex. D, 1999 Settlement Agreement, TS_01992 – TS_02010; Ex. C, Pages 26-27).

6. In response to the alleged environmental and ordinance issues, the parties entered into a settlement agreement with the stated objective: "to protect public health and welfare and the environment at and in the vicinity of the transfer station by the expansion and clarification of Defendants' operating plans, procedures, and practices, to provide for the

Village's verification of implementation of such changes, and to reimburse the Village for certain costs." (Ex. D, TS_01994).

7. Pursuant to the settlement agreement between the parties, Tri-State agreed to pay the Village host benefit fees on a monthly basis and to post a $50,000 bond to cover the cost of cleaning up the property at 13903 S. Ashland, should Tri-State abandon the same, as well as agreeing to perform many other operational and site improvements. (Ex. D, TS_02003; TS_02004; Ex C., Pages 29-34).
8. In 2012, Tri-State and the Village of Riverdale entered into a service agreement wherein Tri-State would provide garbage removal services to the residents of the Village living in one and two-unit dwellings. (the "Contract"). (Ex. B).
9. The Village did not issue a request for qualifications ("RFQ") for the garbage collection and disposal services; but rather, the Village Board of Trustees exercised its home-rule powers and awarded the Contract to Tri-State. (Ex. E, Deposition of Lawrence Jackson, Page 38).
10. The Contract, which commenced on August 1, 2012 and ended at midnight on July 31, 2019, was signed by then Village President Deyon Dean and Tri-State President Sheryl Germany. (Ex. B). Tri-State's agreement with Riverdale gave it the exclusive right to provide garbage services within Riverdale from August 1, 2012 through July 31, 2019. (Ex. C., Sheryl Germany Deposition, p. 41-42).
11. At no additional cost to the Village, Tri-State agreed to (1) provide refuse disposal services to Village facilities; (2) conduct a yearly spring clean-up for Village residents; and (3) perform Christmas tree pickup during the last full week of December and first two weeks of January. (Ex. B; Ex. C, Page 43).
12. In April 2013, Lawrence Jackson was elected Mayor/Village President of the Village of Riverdale. (Ex. E, Page 23).
13. In April 2016, the Village was operating at a deficit of $5,715,769. (Ex. H, Deposition of David Gonzalez, Part 2, Page 21). The sanitation fund had a net position of (negative) -$1,149.453. (Ex. H, Page 22-23) and there was no cash in the fund. (Ex. H, Page 48). Therefore, in order to pay Tri-State, the Village was borrowing money from other funds. (Ex. H, Page 50).
14. In September 2016, Tri-State met with the Mayor to seek relief from property taxes. (Ex. G, Deposition of Jeff Germany, Page 40) Treasurer Gonzalez informed the Mayor that the Village could not provide the relief Tri-State was seeking because of the Village's problems with cash flow. (Ex. H, Deposition Transcript David Gonzalez, Part 2, Page 36).
15. In April 2017, the Village sanitation fund had a net position of (negative) - $1,149,453 (Ex. H, Page 22-23) and still had no cash in the sanitation fund. (Ex. H, Page 51).
16. In August 2017, the Village had $2,008,588.94 cash on hand to pay bills and had cut checks to pay liabilities in an amount of $2,700,000. Therefore, the Village did not have enough money to pay its bills and held checks to multiple vendors from distribution. (Ex. H, Pages 39-40). The Village Treasurer was responsible for determining which priority bills would be paid and which checks would be withheld from distribution. (Ex. F, Deposition Transcript David Gonzalez, Pages 29-30).

17. On August 23, 2017, the Village provided legal notice in the Chicago Tribune regarding a public hearing on September 7, 2017 before the Village's Zoning Board of Appeals, acting as the Village Plan Commission, relating to the consideration of an application submitted by Riverdale Materials for a conditional use to allow the operation of a recycling and transfer facility at 1201 W. 138th St. in Riverdale, Illinois. (Ex. I, 8/23/17 Legal Notice, TS_00001).
18. On September 7, 2017, a public hearing was held wherein Riverdale Materials presented their application for a conditional use to the Village Plan Commission. (Ex. J, Transcript of 9/7/17 Proceedings)
19. Sheryl Germany had previously talked to the Mayor regarding her opposition to granting Riverdale Materials a conditional use to operate in the Village, and at these meetings expressed concerns regarding the environmental impact of the operation in addition to the request that the new business also pay the Village a host fee and provide clean-up bond. (Ex. C, p. 71).
20. Tri-State submitted a letter to the Plan Commission regarding Tri-State's opposition to the granting of the conditional use for this property to Riverdale Materials, and spoke to the Plan Commission regarding the same. (Ex. J).
21. The Plan Commission, after hearing all testimony and public comment, voted to continue the hearing to the next meeting so that its' members could have an opportunity to further read the submissions and perform research on the issues discussed. (Ex. J).
22. Mayor Jackson was not present at the hearing on 9/7/17, was not present at any of the hearings relating to this zoning request, and did not at any time sit on the Zoning Board of Appeals or the Plan Commission. (Ex. E, Page 119).
23. On October 23, 2017, the Mayor sent a letter to Tri-State indicating that the Village was contemplating alternate garbage service providers and intended to issue an RFQ for the same for which the Mayor invited and encouraged Tri-State to bid. (Ex. K, 10/23/17 Correspondence). At the time this correspondence was issued, the Village was looking at several different options to decrease operating costs due to the financial constraints it was facing. (Ex. E, Pages 33, 44-45).
24. On November 2, 2017, the continued public hearing on the Riverdale Materials zoning request was held by the Village Plan Commission. (Ex. L, 11/2/17 Transcript of Proceedings).
25. Tri-State submitted a second letter to the Plan Commission regarding Tri-State's opposition to the granting of the conditional use to Riverdale Materials for this property, and spoke to the Plan Commission regarding the same. (Ex. L).
26. At the end of the hearing, the Plan Commission voted to recommend to the Village Board the approval of Riverdale Materials' conditional use application to operate a recycling facility and transfer station at 1201 W. 138th St. subject to various conditions. (Ex. L, Pages 110-112).
27. Mayor Jackson was not present at the hearing on 11/2/17, was not present at any of the hearings relating to this zoning request and did not at any time sit on the Zoning Board of Appeals or the Plan Commission. (Ex. E, Page 119).

28. The Village Board members reviewed the record of the proceedings before the zoning board/plan commission and discussed the proposed conditional use ordinance during a committee of the whole meeting. (Ex. M).
29. On November 28, 2017, at the Village of Riverdale's regular board meeting, the Village Board unanimously passed an ordinance granting a conditional use to allow Riverdale Materials to operate a metal recycling facility and transfer station within the I-2 general industrial district at 1201 W. 138th St. ("Ordinance 2017-22") (Ex. M, 11/28/17 Village Board meeting minutes). The Village Board did not allow Tri-State to present any evidence at this meeting. *Id.*
30. Mayor Jackson did not vote on Ordinance 2017-22. (Ex. M; Ex. E, Pages 124-125). Mayor Jackson signed the ordinance but testified that he had an obligation to sign the ordinance as the Mayor; but, the Village Board enacted the ordinance. *Id.*
31. Tri-State was able to attend public hearings, send letters to Village decision-makers, and voice its concerns to the zoning board and the Village Board of Trustees regarding its objections to granting Riverdale Materials a conditional use to operate in the Village. (Ex. C, Page 83-84).
32. Tri-State did not suffer a loss of income as a result of the Village's granting of a conditional use to Riverdale Materials in 2017. (Ex. C, Page 113).
33. Mayor Jackson had a sign with his picture posted at Riverdale Materials' site stating, "ANOTHER BUSINESS BROUGHT TO YOU BY THE HONORABLE MAYOR LAWRENCE JACKSON." (Ex. N, photo of sign).
34. Trash pickup is an essential service in Riverdale. Riverdale's policy is to grant essential services priority in payment when it does not have the funds to make all payments in a timely manner. (Ex F, Page 77). Treasurer Gonzalez testified that the Mayor never told the Village Treasurer not to pay, to hold back payment, or to slow down payments to Tri-State. (Ex. F, Page 73, 99).
35. Gross income generated by Tri-State through its garbage collection contract in 2018 was an estimated $60,000-$65,000 per month. (Ex. G, Page 18-19).
36. On January 29, 2018, the Village had $389,213.82 cash on hand and outstanding checks to be issued to vendors in the amount of $1,116,628.82; and therefore, held $727,415.09 in checks due to vendors, including but not limited to Tri-State. (Ex. O, January 2018 Village Bank Reconciliation).
37. On February 27, 2018, Attorney Kenneth Bellah issued a demand to the Village in the amount of $193,252.61 for the Village's failure to pay Tri-State's invoices for the months of November and December 2017 and for January 2018. (Ex. P, 2/27/18 Demand Letter).
38. When the Village of Riverdale receives cash flow coming in, its policy is to submit and pay the older bills first. (Ex. F, Page 30).
39. In early March 2018, the Village was served with a Verified Complaint for Declaratory Judgment from Tri-State who was seeking a declaration that Riverdale Ordinance 2017-22 relating to Riverdale Materials was invalid and violated the Open Meetings Act. (Ex. Q, Complaint).
40. In that Complaint, Tri-State noted that Riverdale Materials is a similarly situated competitor. (Ex. Q, paragraph 72). Specifically, Sheryl Germany testified that Riverdale

4

Materials is a competitor of Tri-State's transfer station business, not their garbage collection business. (Ex. C., Page 57) .In addition, Tri-State alleges that during the course of the Village Plan Commission hearings, it demanded that if the conditional use was granted to Riverdale Materials that Riverdale Materials be required to have a host community agreement similar to that of Tri-State and be required to pay royalties to the Village. (Ex. Q, paragraph 77) After filing the Complaint, Tri-State emailed the Village regarding scheduling of the annual Spring Clean-Up. The email was sent to Jerome Russell and cc'd to Robert Scharnhorst. It stated, "Mr. Russell, Has the Village given any thought to when they would like to have the annual Spring Clean-Up Event? The event is held on a mutually agreed upon date sometime at the end of March or the beginning of April on a Saturday from the hours of 6 am to 12 pm. In the past, the Village has sent out notices to the residents a few weeks prior to the event making them aware of what they can put out for collection as well as the date and time of the event. Every year we run a garbage truck through each alley once, collecting bulk debris that the residents have accumulated over time. Residents are asked to have the material placed out for collection no later than 6 am on the morning of the event. Sincerely, Jeff Germany." (Ex. R, March email correspondence).

43. On March 20, 2018, Tri-State emailed the Village once again regarding the scheduling of the annual Spring Clean-Up. This email forwarded Tri-State's March 16th email to Jerome Russell and Robert Scharnhorst to Mayor Jackson and several Village Trustees including Rodrick Jefferson, Erik LeVere, Bradley Smith, Cassandra Riley-Pinkney, Greg Lewis, and Brenda Williams. This email correspondence stated, "Good Afternoon Mayor, Last week, I had emailed Mr. Russell and Mr. Scharnhorst in regards to the annual Spring Clean-Up. I am contacting you today since I haven't heard back from either of them and we have a lot of residents contacting our office inquiring about the event. Usually by this time every year, we have a date set for the event and as of now, we haven't heard from anyone at the Village in order to schedule a date for this. Currently we have the following dates available; April 7th, April 14th, and April 21st. Can you please discuss this and have someone contact Kathy in our office to set this up. Please keep in mind that we will need a 10-day notice in order to properly staff for this event. Have a great day. Sincerely, Jeff Germany." (Ex. R, March email correspondence).
44. The Mayor directed Jerome Russell not to respond to Tri-State when Tri-State contacted Riverdale to set up the 2018 Spring Clean-Up. (Ex. Z, Jerome Russell Deposition, p. 34).
45. On March 27, 2018, the Village Board passed a motion directing the Chief of Staff, on behalf of the Village, to provide notice to Tri-State that the Village would be declining any and all extensions provided in the Contract and that the Contract would expire on July 19, 2019. In addition, the Village would be obtaining proposals from alternative waste disposal contractors for review by the Village Board on or before June 15, 2018. (Ex. S, 3/27/18 Village Board meeting minutes).
46. Mayor Jackson did not vote on the motion to decline an extension of the Contract with Tri-State and obtain proposals for alternative vendors. (Ex. S).
47. The plain language of the Contract allowed the Village to cancel the Contract by providing Tri-State with at least ninety (90) days' notice of the cancellation. (Ex. B; Ex. C, Page 44).

48. The financial condition of the Village continued to decline and the Village was actively seeking ways to reduce the Village's operating costs. (Ex. E, Page 27; Ex. T, Checks on hold by the Village from January 2018-March 2018). Specifically, the Village "had a lot of bills that were backlogged, and so we were looking for new vendors that could—so we could down-size operating costs, not just in sanitation, but in other areas as well." (Ex. E, Page 27).
49. In April 2018, the Village was holding three checks due and owing to Tri-State in the amount of approximately $198,342.48. (Ex. U, January-April 2018 Total Outstanding Check List).
50. On April 18, 2018, the Village officially informed Tri-State that it wished to cancel the Contract pursuant to its terms upon its expiration on July 31, 2019. This correspondence was sent by Village Administrator Tim Williams and copied to the Mayor, Village Clerk and Village Attorney. (Ex. V, 4/18/18 Correspondence to Tri-State from Village).
51. On April 28, 2018, communication was sent to Tri-State from the Mayor based on complaints from the Village Clerks and other Village staff members that Tri-State was consistently calling the Village and being overly aggressive and harassing in inquiring about past due payments. (Ex. E, Pages 83-84). The Mayor was unable to recall specific Village employees that complained about Tri-State's harassing phone calls; but indicated it was generally the clerks in Village Hall that were complaining. (Ex. E, Pages 79, 83).
52. Tri-State understood this correspondence and the Village complaints to be solely related to the collection of money owed for outstanding invoices. (Ex. C, Page 97).
53. Further, Mayor Jackson's 4/28/18 letter did not deter Tri-State from speaking out against the Village or pursuing this lawsuit. (Ex. C, Page 98; Ex. G, Page 65). 54. As of May 1, 2018, $261,953.50 was due and owing from the Village to Tri-State for service provided from January 2018 – May 2018. (Ex. Y, Tri-State accounts receivable as of 5/1/18).
55*(sic)*.On May 8, 2018, Tri-State contacted the Village and indicated its belief that the Village was in violation of its contract with Tri-State based in part on the provision relating to the Spring Clean-Up. (Ex. W, 5/10/18 Correspondence).
56. The Village responded to the concern and requested that Tri-State schedule the Spring Clean-Up for a future date. (Ex. X, 5/29/18 Correspondence). In addition, the Village requested that future communication relating to the allegations in the complaint occur amongst counsel and not amongst the parties. (Ex. X).
57. Tri-State indicated that it would not be scheduling the Spring Clean-Up because it was their position that that clean-up had already occurred with Flood Brothers at a cost of approximately $18,000 to the Village. (Ex. Z, Russell Deposition, Page 34-36).
58. Tri-State did not perform a Spring Clean-Up in 2018.  (Ex X)
59. There was no provision in the Contract regarding the consequences of Tri-State's failure to perform the free spring cleanup. (EX.C, Page 108).
60. In addition, not performing the spring clean-up did not deter Tri-State from speaking out against the Village or continuing to pursue the lawsuit. (Ex G, Page 60).
61. On June 8, 2018, Tri-State filed its First Amended Complaint, which for the first time contained allegations of political retaliation and breach of contract. (Ex. AA, First Amended Complaint).

6

62. On December 10, 2018, the Village paid Flood Brothers $18,537.90 for services provided in May 2018. (Ex. BB; Ex. Z, Russell Deposition)
63. Tri-State continued to provide garbage collection services to the Village of Riverdale through the end of its contract term in July 2019, despite Tri-State's criticisms of the Village relating to Riverdale Materials. (Ex. C, Page 88-89).
64. In Spring 2019, Jerome Russell was ordered by the Mayor to respond to Tri-State to set up the 2019 Spring Clean-Up and the Spring Clean-Up was performed by Tri-State. (Ex. Z, Russell Deposition p. 37-38).
65. On July 31, 2019, Tri-State's Contract with the Village expired. (Ex. B). Tri-State was not guaranteed a contract extension with the Village of Riverdale past July 2019. (Ex. B).
66. The Village did not solicit competitive bids for the successor garbage disposal service contract. (Ex. E, p. 35-37). Consequently, Tri-State was not allowed to participate in any bid to retain or obtain a new contract from the Village of Riverdale for garbage disposal services. (Ex. C, Page 120). The Village did not request a rate reduction from Tri-State when seeking to reduce its operating costs on waste collection, and instead hired Flood Brothers. (Ex. E, Page 29-30).
67. The Village Board of Trustees, not including Mayor Jackson, awarded a garbage collection/disposal contract to Flood Brothers Disposal at a significantly reduced monthly rate and services began in August 2019. (Ex. CC, Third Amended Complaint, Ex. 20, Village of Riverdale Ordinance 2018-22; Ex. F, Page 99).
68. In October 2019, the Village Board of Trustees passed Ordinance 2018-22, which required all dwellings in the Village to utilize Flood Brothers, which was a change from prior practice; but required for garbage regulation within the Village. (Ex. E, Pages 143-144; Ex. CC). This Village ordinance states that the need for new rules arose due to landlords of multiunit buildings not paying vendors and garbage pick-ups not occurring with regularity. (Ex. E, Pages 143-144).
69. The owners of multi-unit apartment buildings in Riverdale had previously been required to contract their own refuse haulers individually. (Ex. C, p. 41-42) Prior to the ordinance, Tri-State, in addition to several other garbage disposal companies, held individual contracts with apartment buildings throughout the Village. Tri-State's monthly revenue from these individual contracts amounted to approximately $7,000 per month. (Ex. C, p. 94-95). The passage of this ordinance thus resulted in a $7,000 per month decrease in revenue to Tri-State. (Ex. C, p. 120-121).
70. The Village did not make its overdue July 2019 invoiced payment to Tri-State in the amount of $65,653.49 until March 2, 2020. (Ex. C, Page 100).
71. There are currently no outstanding invoices owed to Tri-State from the Village. (Ex. C, Page 101 and Page 106; Ex. G, Page 69) However, there are still outstanding requests for interest payments provided to the Defendants through supplemental discovery. (Ex. B; Ex. EE, Tri-State supplemental discovery responses). There is no provision within the contract relating to late payment fees or fines. (Ex. B).
72. Several criticisms voiced by Tri-State in 2017 and alleged in the Third Amended Complaint related to environmental concerns Tri-State had with the site upon which Riverdale Materials was to operate. (Ex. CC, paragraphs 57-58; Ex. C, Page 63). Specifically, Tri-

State publicly voiced their opposition to Riverdale Materials operating in Riverdale because of their environmental and business concerns. (Ex. C, Page 59)
73. Yet, on February 19, 2019, Tri-State purchased a retention pond adjacent to the Riverdale Materials site. (Ex. DD, Tri-State Real Estate Contract).
74. Other than environmental concerns regarding the Riverdale Materials site, Tri-State was only concerned "that they [Riverdale Materials] were being held to the same standards we were." (Ex. C, Page 70).
75. If Riverdale Materials would have obtained the proper permits and authorizations and would have been required to operate in a manner similar to Tri-State, including paying royalties to the Village and posting a bond or other financial security for closure and post-closure, Tri-State most likely would not have had an objection to the Village's granting them a conditional use to operate in the Village. (Ex. C, Page 78; Ex. G, Page 44).
76. Further, if Tri-State became aware that the Village was not paying other contractors on time in 2018 and 2019 that fact could change their assumption regarding the retaliatory nature of the Village's delays in paying Tri-State's invoices, if those delays and outstanding payments were also severe in nature. (Ex. G, Page 68).
77. Tri-State is unaware of any prior instances wherein Mayor Jackson or the Village retaliated against independent contractors within the Village based on their objections to Village zoning decisions. (Ex. C, Page 74, Ex. G, Page 43).

| | |
|---|---|
| John P. Wise (ARDC No. 6238380)<br>Erin E. Blake (ARDC No. 6295914)<br>**MONTANA & WELCH, LLC**<br>11950 S. Harlem Avenue, Suite 102<br>Palos Heights, IL 60463<br>(708) 448-7005<br>jwise@montanawelch.com<br>eblake@montanawelch.com | Respectfully submitted,<br>***VILLAGE OF RIVERDALE and***<br>***LAWRENCE JACKSON, DEFENDANTS***<br><br>By: _/s/ Erin E. Blake_<br>One of Defendants' Attorneys |
| Mark A. LaRose (ARDC No. 6183288)<br>David J. Aron (ARDC No. 6320232)<br>**LaRose & Bosco, Ltd.**<br>200 N. LaSalle Street, Suite 2810<br>Chicago, IL 60601<br>(312) 642-4414<br>Fax (312) 642-0434<br>mlarose@laroseboscolaw.com<br>daron@laroseboscolaw.com | ***TRI-STATE DISPOSAL, INC.***<br><br>By: _/s/ Mark A. LaRose_<br>One of Plaintiff's Attorneys |