# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TRI-STATE DISPOSAL, INC., an    )
Illinois corporation,    )
   )
       Plaintiff,    )    Case No. 1:18-cv-02138
   )
     vs.    )    Judge Sara L. Ellis
   )
THE VILLAGE OF RIVERDALE,    )
a municipal corporation;    )
LAWRENCE L. JACKSON, Mayor of the    )
Village of Riverdale    )
   )
       Defendants.    )

## EXHIBITS TO TRI-STATE DISPOSAL, INC.'S
## 56.1 STATEMENT OF ADDITIONAL FACTS IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Exhibit FF**    Illinois Secretary of State LLC File Detail Report on Centennial Holdings, LLC

**Exhibit GG**    Declaration of Jeffrey Germany

**Exhibit HH**    October 10, 2017 Letter from Mayor Jackson to Carmelia Shipp

**Exhibit II**    November 28, 2017 Village Record of Proceedings Transcript

**Exhibit JJ**    Riverdale Village Code 2.08.070

**Exhibit KK**    65 ILCS 5/6-4-1 and 5/6-4-2

**Exhibit LL**    February 10, 2020 Cease and Desist Notice to Riverdale Materials

**Exhibit MM**    Declaration of Sheryl Germany

**Exhibit NN**    Declaration of Mark A. LaRose

**Exhibit OO**    February 12, 2020 Letter to Daley and Georges regarding threatening phone call

**Exhibit PP**    Copy of *Weeks v. City of Plano*, No. 88 C 0518, 1989 WL 20831 (N.D. Ill. Mar. 1989)

# EXHIBIT FF



Office of the Secretary of State Jesse White

# ilsos.gov

# Corporation/LLC Search/Certificate of Good Standing

## LLC File Detail Report

| File Number | 06805337 |
| --- | --- |
| Entity Name | CENTENNIAL HOLDINGS LLC |
| Status | ACTIVE |

### Entity Information

**Principal Office**
14501 S. UNION
RIVERDALE, IL 608270000

**Entity Type**
LLC

**Type of LLC**
Domestic

**Organization/Admission Date**
Thursday, 15 March 2018

**Jurisdiction**
IL

**Duration**
PERPETUAL

### Agent Information

Name
TAMMY WATSON

Address
15059 FOREST VIEW LN
SOUTH HOLLAND , IL 60473

Change Date
Thursday, 15 March 2018

## Annual Report

For Year
2022

Filing Date
00/00/0000

## Managers

Name
Address
LAWRENCE L JACKSON
14501 S. UNION
RIVERDALE, IL 60827

Name
Address
TAMMY WATSON
15059 FORESVIEW LANE
SOUTH HOLLAND, IL 60473

## Series Name

NOT AUTHORIZED TO ESTABLISH SERIES

Return to Search

File Annual Report

Adopting Assumed Name

Articles of Amendment Effecting A Name Change

Change of Registered Agent and/or Registered Office

(One Certificate per Transaction)

This information was printed from www.ilsos.gov, the official website of the Illinois Secretary of State's Office.

# EXHIBIT GG

# DECLARATION UNDER OATH OF JEFFREY GERMANY

I, Jeffrey Germany, being duly sworn on oath and under penalty of perjury, do hereby state as follows:

1.     I am the Operations Manager and corporate secretary for Tri-State Disposal, Inc.

2.     The facts contained in this Declaration are based on my personal knowledge, and if called to do so, I could competently testify to these facts.

3.     I have personally observed Defendant Mayor Jackson and Riverdale Materials' owner Jim Bracken frequently socializing for lunches in south suburban Midlothian. I have personally seen them there several times, and have personal knowledge that they frequently have lunch (approximately once per week in Midlothian).

4.     As I testified in my deposition, prior to September and October of 2017, Tri-State was regularly paid by the Village in 30-45 days (the contract with Riverdale says 15 days). Tri-State was okay with that. However, almost immediately after Tri-State issued criticism regarding the Riverdale Materials' site, the procedures, the contamination, the run-off, the fact that Riverdale didn't own the retention pond, that there should be both post-closure bonds and royalties required of Riverdale Materials, payments went from being received in 30-45 days to 180 days and more. Because of this Tri-State had to scramble to pay all of its bills, including payrolls, expenses, loan payments, utilities, property taxes, which never stopped during this period, and payment of these bills was hampered, if not completely interrupted, by the lack of payments from Riverdale. The Village still owes Tri-State some interest on the late payments.

5.     Also, even though Tri-State had the right to terminate essential trash pick-up services and to not pay royalties due to Riverdale's lack of payment, Tri-State continued to provide its usual and essential services to the Village residents and continued to pay royalties to the Village.

6.     In addition, Tri-State suffered damages to its reputation by not being allowed to participate in the 2018 Spring Clean-up. Residents called us for advice on when the clean-up will happen, and because of the Village's action (inaction) we could not provide them with any information, which made us look totally incompetent.

7.    Tri-State's other damages include the loss of the opportunity to bid on the garbage contract. Also, Tri-State lost contracts that it had with multi-family building owners when the Mayor approved requiring these owners to use Flood Bros. as its sole garbage contractor.

8.    The Village contract that Tri-State was not given an opportunity to bid on, was worth approximately $60,000 to $65,000 per month, and Tri-State expected it to continue for at least five (5) years.

9.    Tri-State lost contracts that it had with multi-family building owners when the Mayor approved requiring these owners to use Flood Bros. as its sole garbage contractor. In addition, Tri-State earned approximately $6,000 per month on the multi-family contract, or approximately $72,000 a year.  Tri-State expected the multi-family contract to go on indefinitely, but because of the ordinance the Mayor approved requiring multi-family owners to use Flood Bros. as its sole garbage contractor, Tri-State lost that approximate $72,000 per year.

Further Declarant Sayeth Not.

_____

Jeffrey Germany

# EXHIBIT HH



# VILLAGE OF RIVERDALE
157 WEST 144TH STREET, RIVERDALE, IL 60827
PHONE (708) 841-2200 • FAX (708) 841-7587

## Lawrence L. Jackson
Mayor

10/10/17

*PRIVATE AND CONFIDENTIAL*

Carmelia Shipp
14211 S. Parnell
Riverdale, Illinois 60827

Re:     Termination of Limited/Term Appointment

Dear Ms. Shipp,

This letter is to inform you that your appointment as a Zoning Board of Appeals Commissioner has ended and will not be renewed.

I would like to take this opportunity to thank you for your contribution to the Zoning Board of Appeals and the Village of Riverdale.

I wish you all the best in your future endeavors.

Sincerely,

Lawrence L. Jackson
Mayor

# EXHIBIT II

1

2  TRI-STATE DISPOSAL, INC.,            )
                                        )
3                   Complainant,        )
                                        )
4  vs.                                  )
                                        )
5  RIVERDALE MATERIALS, LLC,            )
                                        )
6                   Respondent.         )

7

8                   Record of proceedings in the

9  hearing of the above-entitled cause, at 157 W. 144th

10 Street, before the Board of Trustees of the Village

11 of Riverdale, in the City of Riverdale, County of

12 Cook, State of Illinois, before Victoria D. Rocks,

13 CSR, Notary Public, commencing at 7:00 o'clock p.m.,

14 on the 28th day of November, 2017, A.D.

15

16

17

18

19

20

21

22

23

24

## Page 2

```
 1   APPEARANCES:
 2
            LaROSE & BOSCO, LTD.
 3          MR. MARK LaROSE
            200 N. LaSalle Street
 4          Suite 2810
            Chicago, Illinois  60601
 5          (312) 642-4414
            mlarose@laroseboscolaw.com
 6
            appeared on behalf of the Complainant.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

## Page 3

```
 1                   I-N-D-E-X
 2
 3
        Report of Proceedings:    4 - 15
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

## Page 4

```
 1
 2        MR. JACKSON:  Good evening.  I will call the
 3   regular meeting of the Board of Trustees to order.
 4        It's 7:00 o'clock.  Today's date is
 5   November 28, 2017.  We'll have a moment of
 6   meditation, reflection.
 7        If everyone could please stand for the
 8   pledge of allegiance.  Roll call.
 9        MS. HOLCOMB:  Trustee Jefferson.
10        MR. JEFFERSON:  Here.
11        MS. HOLCOMB:  Cassandra Riley-Pinkney.
12        MS. PINKNEY:  Here.
13        MS. HOLCOMB:  Trustee Lewis.
14        MR. LEWIS:  Here.
15        MS. HOLCOMB:  Trustee Williams.
16        MS. WILLIAMS:  Here.
17        MS. HOLCOMB:  Trustee Levere.
18        MR. LEVERE:  Here.
19        MS. HOLCOMB:  Trustee Smith.
20        MR. SMITH:  Here.
21        MR. JACKSON:  A quorum is present.  Item 3 on
22   new business, an ordinance of the Village of
23   Riverdale, granting a conditional use to allow a
24   metal recycling facility and transfer station within
```

## Page 5

```
 1   the I-2 general industrial district known as 1201
 2   West 138th Street.  Mr. Welch.
 3        MR. WELCH:  Yes.  This was the ordinance that
 4   was discussed.  There was a hearing.  And the record
 5   that was provided by Chief Scharnhorst to all of the
 6   members establishes the Zoning Board of Appeals gave
 7   a recommendation to adopt, subject to the conditions
 8   that are set forth in the ordinance.
 9        MR. JACKSON:  Are there any questions for the
10   Village attorney?  May I please have a motion to
11   adopt.
12        MR. WELCH:  So moved.
13        MR. JEFFERSON:  Second.
14        MR. LaROSE:  Excuse me, Mr. Mayor.
15        MR. JACKSON:  You're out of order, sir.
16        MR. LaROSE:  You're not going to take public
17   comments on this?
18        MR. WELCH:  There is a public comment on the
19   agenda.
20        MR. LaROSE:  Which will be worthless if you
21   pass the ordinance before this comment.
22        MR. WELCH:  Sir, the record has been provided.
23   Everything you stated from the hearing is in the
24   record.  They have it.  They reviewed it, and public
```

**Page 6**

1  comment is at the conclusion.

2      MR. LaROSE:  Not the document that I delivered

3  at 2:00 o'clock today.  It's outside the record.

4      MR. WELCH:  Please sit down.  You'll have your

5  chance during public comment.

6      MR. LEWIS: I second.

7      MR. JACKSON:  Roll call, please.

8      MS. HOLCOMB:  Trustee Lewis.

9      MR. LEWIS:  Here.

10      MR. WELCH:  You have to say yes.

11      MR. LEWIS:  Yes.

12      MS. HOLCOMB:  Trustee Lewis.

13      MR. LEWIS:  Yes.

14      MS. HOLCOMB:  Trustee Smith.

15      MR. SMITH:  Yes.

16      MS. HOLCOMB:  Trustee Jefferson.

17      MR. JEFFERSON:  Yes.

18      MS. HOLCOMB:  Trustee Riley-Pinkney.

19      MS. RILEY-PINKNEY:  Yes.

20      MS. HOLCOMB:  Trustee Williams.

21      MS. WILLIAMS:  Yes.

22      MS. HOLCOMB:  And Trustee Levere.

23      MR. LEVERE:  Yes.

24      MR. JACKSON:  Motion passed.  Members of the

**Page 7**

1  public now have an opportunity to address the Board.

2  You'll be allowed to speak once for three minutes.

3  When you're recognized by the Chair, please state

4  your name for the record.  Mr. LaRose.

5      MR. LaROSE:  Thank you, Mayor.  Mr. Mayor,

6  members of the Board, Officers, my name is Mark

7  LaRose, principal of the law firm of LaRose Bosco.

8      I represent Tri-State Disposal, the folks

9  that run a transfer station in town for going on 20

10  years.  They pick up your trash.  Supply more than a

11  million dollars of royalties to the Village, and

12  they have posted a $50,000 CD for the benefit of

13  Riverdale in case anything goes wrong at the site.

14  An 18 year perfect operating history.

15      Today I delivered or my assistant delivered

16  to Linda Alexander at 2:00 o'clock a package for

17  each of you with respect to the transfer station

18  ordinance that you just passed.

19      I would like to ask that this be made part of

20  the record for this hearing.

21      MR. WELCH:  The hearing is closed.  This is not

22  a hearing, this is a meeting.  And Mr. LaRose, as an

23  attorney, you should be aware that there are other

24  parties that have an interest in this application

**Page 8**

1  and to submit something without discussion and

2  without them having the ability to submit additional

3  evidence to refute what you're proposing to submit,

4  it causes problems as it relates to those people's

5  rights.

6      Everyone had an opportunity to submit

7  documentation and evidence into the record.  It's

8  now closed.

9      MR. LaROSE:  Except, Mr. Welch, it would have

10  been impossible at the hearing to submit a

11  transcript of the hearing.

12      It would have been impossible at the hearing

13  to submit the results of an FOIA request that I had

14  to make after the hearing.  So these are things that

15  some of which were in there before, but new stuff.

16  And I think you should accept it.

17      But if you don't, I want a ruling on the

18  record so the Court --

19      MR. WELCH:  It's not a hearing.

20      MR. LaROSE:  I am asking for this to be part of

21  the record.

22      MR. WELCH:  This Board is not here to make a

23  ruling.  There is no ruling.  They are not the

24  Zoning Board.

**Page 9**

1      The Zoning Board is the one who controlled

2  the record.

3      MR. LaROSE:  Except, Mr. Welch, as an attorney

4  you should know that the actions of this Board today

5  are subject to review by the Circuit Court of Cook

6  County.

7      So this is a hearing, and this is a

8  decision--

9      MR. WELCH:  Respectfully, you're wrong.  Here

10  is why.  Let me explain.  This is subject to de novo

11  review.

12      Do you understand what de novo review is?

13      MR. LaROSE:  Yes.  It means new.  I took Latin

14  in law school too.

15      MR. WELCH:  This is considered a legislative

16  action subject to de novo review.  So in the event

17  that you have issues and want to take it to the

18  Circuit Court, we're going to create our own record.

19      MR. LaROSE:  Yes.

20      MR. WELCH:  All right.

21      MR. LaROSE:  I would like this to be part of

22  the record that you are creating.

23      MR. WELCH:  That is created in the Circuit

24  Court.  The Zoning Board record is closed.

Page 10

1     MR. LaROSE:  Okay, but the Zoning Board action
2  is also subject to review under the administrative
3  review law.
4     MR. WELCH:  Incorrect.
5     MR. JACKSON:  Your time is expired.
6     MR. LaROSE:  Half it of it has been taken up by
7  the lawyer.  I would like somebody to tell me--
8     MR. JACKSON:  Your time is expired.  Does
9  anyone wish to address the Board?
10     MR. WELCH:  You could submit it as a resident
11  or a citizen, whatever you like.  You could submit
12  it, but it's not going to be made part of the Zoning
13  Board record.
14     MR. LaROSE:  And I did submit it.  I was told
15  it would be part of the package.
16     MR. JACKSON:  Sir, would you please approach
17  the podium.
18     MR. LaROSE:  Thank you.  See you all in court.
19     MR. JACKSON:  State your name for the record.
20     MR. STEWART:  Good evening.  My name is Paul
21  Stewart.  I just want to say I have known
22  Mr. Bracken and his team and have worked closely
23  withh them over the years throughout the City of
24  Chicago and State of Illinois.

Page 11

1     You can't ask for a better business person to
2  come into your community.  I know that there may
3  have been some concerns, some questions that have
4  been raised.  We were at the meetings prior and had
5  heard the concerns that have been addressed.
6     I just wanted to express a positive light on
7  the new business coming into this community.  And
8  the participation with minority companies throughout
9  Cook County has been very impressive based on my
10  interaction with the company over the years.  So I
11  appreciate your time.
12     MR. JACKSON:  Thank you for your comments.
13  Mr. Reynolds.
14     MR. REYNOLDS:  James Reynolds, 13920 South
15  Racine, Riverdale, Illinois.  I only have one
16  question.
17     I would like to know how this company can be
18  operating.  Are they operating on a permit that was
19  issued by the Village of Riverdale or are they
20  operating on a temporary permit?
21     Had they been given a permit to operate by
22  the Village of Riverdale?
23     MR. WELCH:  As I stated before, the Village
24  authorized them to continue to operate while the

Page 12

1  zoning application was being processed.
2     MR. REYNOLDS:  How can that be?  Say, for
3  instance, I want to start a business, and I just
4  say, well, I'm just going to start operating until
5  you make a decision to give me a permit.  How did
6  that come about?  That's all I want to know.
7     MR. WELCH:  As I stated in the hearing --
8     MR. REYNOLDS:  It was not stated in the
9  hearing.
10     MR. WELCH:  The Village originally deemed them
11  a contractor yard.  On further review, it was deemed
12  that a contractor yard was not the correct
13  determination.
14     MR. REYNOLDS:  But they stated --
15     MR. WELCH:  I'm answering the question.  On
16  further review it was deemed that the contractor's
17  yard was not the correct use determination.
18     So they had already started operating when
19  they were deemed the contractor's yard.  So we then
20  brought them in and informed them that the proper
21  use should be a metal recycling transfer station.
22  And they agreed to submit to the conditional use
23  permit process, and they understood that in the
24  event this conditional use was not granted, that

Page 13

1  they would be subject to be shut down.
2     MR. REYNOLDS:  Do they have a permit?
3     MR. WELCH:  They were authorized.
4     MR. REYNOLDS:  Do they have a permit?
5     MR. WELCH:  They were not issued a paper
6  permit, no.
7     MR. REYNOLDS:  Thank you.  That is all I wanted
8  to know.
9     MR. JACKSON:  Mr. Marzano.
10     MR. MARZANO:  Joseph Marzano, 458 West 136th
11  Place.  I haven't been to a lot of meetings lately,
12  but every time I come, people want to speak
13  negatively.
14     I do want to thank the Board.  So the
15  residents know, right before Thanksgiving the Board
16  and the Mayor were able to hand out 370 food boxes
17  to residents.  These are families that wouldn't have
18  a Thanksgiving dinner if it weren't for the Mayor
19  asking for donations for food.
20     My second thing is I've lived in Riverdale
21  for a long time and all the land on 138th has been
22  empty since I was a kid.
23     I don't see the problem with people wanting
24  to come into Riverdale, spend their own money

Page 14

1  redeveloping the land and bringing income to the
2  Village of Riverdale, offering jobs.
3       I just think people should stop bringing
4  politics into this.  They got nothing else to do, so
5  they're going to pick on it.  So Board, I'm asking
6  you to support what you just passed and keep
7  supporting it.  It's going to bring jobs, tax
8  dollars and everything into Riverdale.
9       MR. JACKSON:  Thank you for your comments.
10 Ms. Shipp.
11      MS. SHIPP:  Good evening, Board.  I just want
12 to say that I have been praying for Riverdale, and I
13 pray to God that the injustice that is going on in
14 Riverdale will come to an end.
15      I know in my heart, I know that there's
16 justice.  God tells me so.  But how can a land
17 that's been contaminated and, in fact, the Village
18 had a lawsuit against it for being contaminated,
19 which never been cleaned up.  And you allow the
20 business to do some more business.
21      I don't know where is your integrity.  You
22 were sworn in to serve the people of Riverdale.
23 Where is it?  I asked before how much money is in it
24 for you.  How much is your integrity.  This little

Page 15

1  town, poor as it is, you could look around for a
2  community, people of color.
3       We're the people that they do the most damage
4  to.  I would like to know where is your integrity in
5  regard to this company.  I pray, and I know God will
6  answer my prayer that the unlawfulness of this town
7  will come to an end.
8       MR. JACKSON:  Anyone else?  There are no other
9  comments.  I ask for a motion to adjourn.
10      MS. WILLIAMS:  So moved.
11      MR. JACKSON:  All in favor.
12      MR. LEWIS:  Second.
13      MR. JACKSON:  Meeting adjourned at 7:23 p.m.
14 Have a good night.

Page 16

1  STATE OF ILLINOIS )
2                    ) ss:
3  COUNTY OF C O O K )
4
5           VICTORIA D. ROCKS, C.S.R., Notary
6  Public, being first duly sworn, deposes and says
7  that she is a Certified Shorthand Reporter, doing
8  business in the City of Chicago, County of Cook,
9  State of Illinois, and reported proceedings in the
10 Courts in said County;
11           That she reported in shorthand and
12 thereafter transcribed the foregoing proceedings;
13           That the within and foregoing
14 transcript is a true, accurate, and complete record
15 of the proceedings had upon the hearing in the
16 County of Cook, State of Illinois, on this 11th day
17 of December, 2017.
18
19 _Victoria Rocks  CSR_
20 _____
              VICTORIA D. ROCKS, C.S.R.
21            License No. 084-002692
22
23
24

**$**

**$50,000**
  7:12

**1**

**1201**
  5:1

**136th**
  13:10

**138th**
  5:2 13:21

**13920**
  11:14

**18**
  7:14

**2**

**20**
  7:9

**2017**
  4:5

**28**
  4:5

**2:00**
  6:3 7:16

**3**

**3**
  4:21

**370**
  13:16

**4**

**458**
  13:10

**7**

**7:23**
  15:13

**7:00**
  4:4

**A**

**ability**
  8:2

**able**
  13:16

**accept**
  8:16

**action**
  9:16 10:1

**actions**
  9:4

**additional**
  8:2

**address**
  7:1 10:9

**addressed**
  11:5

**adjourn**
  15:9

**adjourned**
  15:13

**administrative**
  10:2

**adopt**
  5:7,11

**agenda**
  5:19

**agreed**
  12:22

**Alexander**
  7:16

**allegiance**
  4:8

**allow**
  4:23 14:19

**allowed**
  7:2

**answer**
  15:6

**answering**
  12:15

**Appeals**
  5:6

**application**
  7:24 12:1

**appreciate**
  11:11

**approach**
  10:16

**asked**
  14:23

**asking**
  8:20 13:19 14:5

**assistant**
  7:15

**attorney**
  5:10 7:23 9:3

**authorized**
  11:24 13:3

**aware**
  7:23

**B**

**based**
  11:9

**benefit**
  7:12

**better**
  11:1

**Board**
  4:3 5:6 7:1,6 8:22,24 9:1,
  4,24 10:1,9,13 13:14,15
  14:5,11

**Bosco**
  7:7

**boxes**
  13:16

**Bracken**
  10:22

**bring**
  14:7

**bringing**
  14:1,3

**brought**
  12:20

**business**
  4:22 11:1,7 12:3 14:20

**C**

**call**
  4:2,8 6:7

**can't**
  11:1

**case**
  7:13

**Cassandra**
  4:11

**causes**
  8:4

**CD**
  7:12

**Chair**
  7:3

**chance**
  6:5

**Chicago**
  10:24

**Chief**
  5:5

**Circuit**
  9:5,18,23

**citizen**
  10:11

**City**
  10:23

**cleaned**
  14:19

**closed**
  7:21 8:8 9:24

**closely**
  10:22

**color**
  15:2

**come**
  11:2 12:6 13:12,24 14:14
  15:7

**coming**
  11:7

comment
5:18,21 6:1,5

comments
5:17 11:12 14:9 15:9

community
11:2,7 15:2

companies
11:8

company
11:10,17 15:5

concerns
11:3,5

conclusion
6:1

conditional
4:23 12:22,24

conditions
5:7

considered
9:15

contaminated
14:17,18

continue
11:24

contractor
12:11,12

contractor's
12:16,19

controlled
9:1

Cook
9:5 11:9

correct
12:12,17

County
9:6 11:9

court
8:18 9:5,18,24 10:18

create
9:18

created
9:23

creating
9:22

## D

damage
15:3

date
4:4

de
9:10,12,16

decision
12:5

decision--
9:8

deemed
12:10,11,16,19

delivered
6:2 7:15

determination
12:13,17

dinner
13:18

discussed
5:4

discussion
8:1

Disposal
7:8

district
5:1

document
6:2

documentation
8:7

dollars
7:11 14:8

don't
8:17 13:23 14:21

donations
13:19

## E

empty
13:22

establishes
5:6

evening
4:2 10:20 14:11

event
9:16 12:24

evidence
8:3,7

Excuse
5:14

expired
10:5,8

explain
9:10

express
11:6

## F

facility
4:24

fact
14:17

families
13:17

favor
15:11

firm
7:7

FOIA
8:13

folks
7:8

food
13:16,19

forth
5:8

further
12:11,16

## G

general
5:1

give
12:5

given
11:21

God
14:13,16 15:5

goes
7:13

going
5:16 7:9 9:18 10:12 12:4
14:5,7,13

good
4:2 10:20 14:11 15:14

granted
12:24

granting
4:23

## H

Half
10:6

hand
13:16

haven't
13:11

heard
11:5

hearing
5:4,23 7:20,21,22 8:10,
11,12,14,19 9:7 12:7,9

heart
14:15

history
7:14

HOLCOMB
4:9,11,13,15,17,19 6:8,
12,14,16,18,20,22

## I

I'm
12:4,15 14:5

I've
13:20

I-2
5:1

Illinois
10:24 11:15

impossible
8:10,12

impressive
11:9

income
14:1

Incorrect
10:4

industrial
5:1

informed
12:20

injustice
14:13

instance
12:3

integrity
14:21,24 15:4

interaction
11:10

interest
7:24

issued
11:19 13:5

issues
9:17

it's
4:4 6:3 8:7,19 10:12 14:7

Item
4:21

**J**

JACKSON
4:2,21 5:9,15 6:7,24
10:5,8,16,19 11:12 13:9
14:9 15:8,11,13

James
11:14

Jefferson
4:9,10 5:13 6:16,17

jobs
14:2,7

Joseph
13:10

justice
14:16

**K**

keep
14:6

kid
13:22

know
9:4 11:2,17 12:6 13:8,15
14:15,21 15:4,5

known
5:1 10:21

**L**

land
13:21 14:1,16

Larose
5:14,16,20 6:2 7:4,5,7,22
8:9,20 9:3,13,19,21 10:1,
6,14,18

lately
13:11

Latin
9:13

law
7:7 9:14 10:3

lawsuit
14:18

lawyer
10:7

legislative
9:15

Levere
4:17,18 6:22,23

Lewis
4:13,14 6:6,8,9,11,12,13
15:12

light
11:6

Linda
7:16

little
14:24

lived
13:20

long
13:21

look
15:1

lot
13:11

**M**

Mark
7:6

Marzano
13:9,10

Mayor
5:14 7:5 13:16,18

me--
10:7

means
9:13

meditation
4:6

meeting
4:3 7:22 15:13

meetings
11:4 13:11

members
5:6 6:24 7:6

metal
4:24 12:21

million
7:11

minority
11:8

minutes
7:2

moment
4:5

money
13:24 14:23

motion
5:10 6:24 15:9

moved
5:12 15:10

**N**

name
7:4,6 10:19,20

negatively
13:13

never
14:19

new
4:22 8:15 9:13 11:7

night
15:14

November
4:5

novo
9:10,12,16

**O**

o'clock
4:4 6:3 7:16

offering
14:2

Officers
7:6

Okay
10:1

once
7:2

operate
11:21,24

operating
7:14 11:18,20 12:4,18

opportunity
7:1 8:6

order
4:3 5:15

ordinance
4:22 5:3,8,21 7:18

originally
12:10

outside
6:3

_____

**P**

p.m.
15:13

package
7:16 10:15

paper
13:5

part
7:19 8:20 9:21 10:12,15

participation
11:8

parties
7:24

pass
5:21

passed
6:24 7:18 14:6

Paul
10:20

people
13:12,23 14:3,22 15:2,3

people's
8:4

perfect
7:14

permit
11:18,20,21 12:5,23
13:2,4,6

person
11:1

pick
7:10 14:5

PINKNEY
4:12

Place
13:11

please
4:7 5:10 6:4,7 7:3 10:16

pledge
4:8

podium
10:17

politics
14:4

poor
15:1

positive
11:6

posted
7:12

pray
14:13 15:5

prayer
15:6

praying
14:12

present
4:21

principal
7:7

prior
11:4

problem
13:23

problems
8:4

process
12:23

processed
12:1

proper
12:20

proposing
8:3

provided
5:5,22

public
5:16,18,24 6:5 7:1

_____

**Q**

question
11:16 12:15

questions
5:9 11:3

quorum
4:21

_____

**R**

Racine
11:15

raised
11:4

recognized
7:3

recommendation
5:7

record
5:4,22,24 6:3 7:4,20 8:7,
18,21 9:2,18,22,24
10:13,19

recycling
4:24 12:21

redeveloping
14:1

reflection
4:6

refute
8:3

regard
15:5

regular
4:3

relates
8:4

represent
7:8

request
8:13

resident
10:10

residents
13:15,17

respect
7:17

Respectfully
9:9

results
8:13

review
9:5,11,12,16 10:2,3
12:11,16

reviewed
5:24

Reynolds
11:13,14 12:2,8,14 13:2,
4,7

right
9:20 13:15

rights
8:5

Riley-pinkney
4:11 6:18,19

Riverdale
4:23 7:13 11:15,19,22
13:20,24 14:2,8,12,14,22

Roll
4:8 6:7

royalties
7:11

ruling
8:17,23

run
7:9

_____

**S**

Scharnhorst
5:5

school
9:14

second
5:13 6:6 13:20 15:12

see
10:18 13:23

serve
14:22

set
5:8

Shipp
14:10,11

shut

13:1

**sir**
5:15,22 10:16

**sit**
6:4

**site**
7:13

**Smith**
4:19,20 6:14,15

**somebody**
10:7

**South**
11:14

**speak**
7:2 13:12

**spend**
13:24

**stand**
4:7

**start**
12:3,4

**started**
12:18

**state**
7:3 10:19,24

**stated**
5:23 11:23 12:7,8,14

**station**
4:24 7:9,17 12:21

**Stewart**
10:20,21

**stop**
14:3

**Street**
5:2

**stuff**
8:15

**subject**
5:7 9:5,10,16 10:2 13:1

**submit**
8:1,2,3,6,10,13 10:10,11,
14 12:22

**Supply**
7:10

**support**
14:6

**supporting**
14:7

**sworn**
14:22

---

**T**

**take**
5:16 9:17

**taken**
10:6

**tax**
14:7

**team**
10:22

**tell**
10:7

**tells**
14:16

**temporary**
11:20

**thank**
7:5 10:18 11:12 13:7,14
14:9

**Thanksgiving**
13:15,18

**there's**
14:15

**they're**
14:5

**thing**
13:20

**things**
8:14

**think**
8:16 14:3

**three**
7:2

**time**
10:5,8 11:11 13:12,21

**today**
6:3 7:15 9:4

**Today's**
4:4

**told**
10:14

**town**
7:9 15:1,6

**transcript**
8:11

**transfer**
4:24 7:9,17 12:21

**trash**
7:10

**Tri-state**
7:8

**Trustee**
4:9,13,15,17,19 6:8,12,
14,16,18,20,22

**Trustees**
4:3

---

**U**

**understand**
9:12

**understood**
12:23

**unlawfulness**
15:6

**use**
4:23 12:17,21,22,24

---

**V**

**Village**
4:22 5:10 7:11 11:19,22,
23 12:10 14:2,17

---

**W**

**want**
8:17 9:17 10:21 12:3,6
13:12,14 14:11

**wanted**
11:6 13:7

**wanting**
13:23

**We'll**
4:5

**we're**
9:18 15:3

**Welch**
5:2,3,12,18,22 6:4,10
7:21 8:9,19,22 9:3,9,15,
20,23 10:4,10 11:23
12:7,10,15 13:3,5

**weren't**
13:18

**West**
5:2 13:10

**Williams**
4:15,16 6:20,21 15:10

**wish**
10:9

**withh**
10:23

**worked**
10:22

**worthless**
5:20

**wouldn't**
13:17

**wrong**
7:13 9:9

---

**Y**

**yard**
12:11,12,17,19

**year**
7:14

**years**
7:10 10:23 11:10

**You'll**
6:4 7:2

**you're**
5:15,16 7:3 8:3 9:9

---

**Z**

**zoning**
5:6 8:24 9:1,24 10:1,12
12:1

EXHIBIT JJ

Special meetings may be called by the president of the village or any three trustees upon at least twenty-four hours' notice to all members and the president. If all the trustees are present at a special meeting, no notice of the meeting shall be necessary and such notice shall be deemed waived.

## 2.08.050 Presiding officer.

The village president shall be the presiding officer of all regular and special meetings of the board of trustees and at all times when the board meets as a committee of the whole.

## 2.08.060 Quorum.

A majority of the trustees, or three trustees and the village president, shall constitute a quorum to do business.

## 2.08.070 Ordinances, resolutions and motions – Approval or veto by village president.

All resolutions and motions (A) which create any liability against the village or (B) which provide for the expenditure or appropriation of its money, or (C) to sell any village property, and all ordinances passed by the village board shall be deposited with the village clerk. If the village president approves of them, he shall sign them. Those of which he disapproves, he shall return to the village board, with his written objections, at the next regular meeting of the village board occurring not less than five days after their passage. The village president may disapprove of any one or more sums appropriated in any ordinance, resolution or motion making an appropriation, and if so, the remainder shall be effective. However, the village president may disapprove entirely of an ordinance, resolution or motion making an appropriation. If the village president fails to return any ordinance or any specified resolution with his written objections, within the designated time, it shall become effective despite the absence of his signature.

## 2.08.080 Reconsideration – Passing over veto.

Every resolution and motion specified in RMC 2.08.070, and every ordinance, which is returned to the board of trustees by the village president, shall be reconsidered by the board of trustees. If, after such reconsideration, two-thirds of all the trustees elected to the village board agree to pass an ordinance, resolution or motion, notwithstanding the president's refusal to approve it, then it shall be effective. The vote on the question of passage over the president's veto shall be by yeas and nays, and shall be recorded in the journal.

# EXHIBIT KK

DIVISION 4. FUNCTIONS AND DUTIES OF MAYOR,
COUNCIL AND OFFICERS

(65 ILCS 5/6-4-1) (from Ch. 24, par. 6-4-1)
Sec. 6-4-1. Mayor.
The mayor shall be recognized as the official head of the city or village by the courts for the purpose of serving civil process and by the governor for all legal purposes.

The mayor of any city or village which adopts this Article 6 shall have veto power as provided in Sections 6-4-2 through 6-4-4 and ordinances or measures may be passed over his veto as therein provided. Such mayor shall have the power to vote as provided in Section 6-4-5.

If any other act or any article of this Code other than Article 3 or Article 4 provides for the appointment of a board, commission or other agency by the mayor and the corporate authorities establish such board, commission or agency, such appointments shall be made in manner so provided.
(Source: P.A. 76-746.)


(65 ILCS 5/6-4-2) (from Ch. 24, par. 6-4-2)
Sec. 6-4-2. Ordinances - Approval - Veto.
All ordinances passed by the council shall be deposited with the city or village clerk. If the mayor approves of them, he shall sign them. Those of which he disapproves he shall return to the council, with his written objections, at the next regular meeting of the council occurring not less than 5 days after their passage. The mayor may disapprove of any one or more sums appropriated in any ordinance, resolution, or motion making an appropriation, and, if so, the remainder shall be effective. However, the mayor may disapprove entirely of an ordinance, resolution, or motion making an appropriation. If the mayor fails to return any ordinance or any specified resolution or motion with his written objections, within the designated time, it shall become effective despite the absence of his signature. The vote on every ordinance shall be by yeas and nays, and shall be recorded in the journal.
(Source: P.A. 76-746.)

# EXHIBIT LL

MARK A. LAROSE *
JOSEPH A. BOSCO *
DAVID KOPPELMAN
DAVID ROSEMEYER
DAVID J. ARON
COSTA DIAMOND
MARISSA R. ALASKA
NATALIE MARTELLO

OF COUNSEL
HON. ANTHONY J. BOSCO (1928-2008)
JOSEPH G. ALIOTO **
ALBERTO QUIROS JAEN***

* ADMITTED IN MICHIGAN ALSO
** ADMITTED IN WISCONSIN ONLY
*** ADMITTED IN PANAMA ONLY



## LAROSE & BOSCO, LTD.
### ATTORNEYS AT LAW

200 N. LASALLE STREET
SUITE 2810
CHICAGO, IL 60601
P: (312) 642-4414
F: (312) 642-0434

135 S. WHITTAKER
NEW BUFFALO, MI 49117
P: (269) 469-8440
F: (269) 469-8442

February 10, 2020

**NOTICE TO CEASE AND DESIST**

**By E-Mail:** mjs@daleygeorges.com
Riverdale Materials, LLC
c/o Mr. Michael Synowiecki
Registered Agent
Daley and Georges
20 S. Clark Street, Suite 400
Chicago, IL 60603

Dear Mr. Synowiecki,

I represent the owners of the retention pond adjacent to Riverdale Materials' facility in Riverdale, Illinois.

During the proceedings to obtain the Village's authorization for Riverdale Materials to conduct business within the Village, representatives of Riverdale Materials testified that stormwater runoff and drainage for its facility would be pursuant to an "on-site retention pond." That was neither true nor accurate. Neither Riverdale Materials nor any entity affiliated with it owns the retention pond. My client does.

Riverdale Materials is hereby put on **notice to cease and desist** from any drainage, stormwater runoff, or any other depositing of materials into my client's retention pond now and in the future. Stormwater runoff from Riverdale Materials' facility and any other water collected at Riverdale Materials' facility needs to be managed on Riverdale Materials' property, and not on my client's property.

We look forward to Riverdale Materials' response to this cease and desist notice, and cooperation. Continued use of my client's retention pond in order to manage its stormwater or other runoff of its facility will not be tolerated, and my client is prepared to take legal action to prevent the same.

In the meantime, if you have any questions or are in need of additional information, please do not hesitate to contact me.

Very truly yours,

Mark A. LaRose

MAL/mk

# EXHIBIT MM

## DECLARATION UNDER OATH OF SHERYL GERMANY

I, Sheryl Germany, being duly sworn on oath and under penalty of perjury, do hereby state as follows:

1. I am the President of Tri-State Disposal, Inc.

2. The facts contained in this Declaration are based on my personal knowledge, and if called to do so, I could competently testify to these facts.

3. To protect the retention pond adjacent to the Riverdale Materials' site from further contamination and to establish that Riverdale Materials did not have ownership or the ability to use the retention pond for stormwater run-off, in May 2019, Tri-State (as managing member of an affiliated company, North Side 138, LLC) purchased the retention pond. At my direction, our attorney issued a Cease and Desist Notice to Riverdale Materials to stop using the retention pond for its runoff from its contaminated site. Riverdale Materials never responded to that letter.

Further Declarant Sayeth Not.

_____
Sheryl Germany

# EXHIBIT NN

# DECLARATION UNDER OATH OF MARK A. LAROSE

I, Mark A. LaRose, being duly sworn on oath and under penalty of perjury, do hereby state as follows:

1. I am the attorney for Tri-State Disposal in this case.

2. The facts contained in this Declaration are based on my personal knowledge, and if called to do so, I could competently testify to these facts.

3. On February 10, 2020, Jim Bracken called me, at night, at home, on my cell phone, and threatened me and my client. I told him I was sleeping, give me a second to get out of bed, and he said 'No, I'm not going to give you any time to record this phone call," at which time he proceeded to threaten me and my client repeatedly.

4. On February 12, 2020, I sent a letter to Mr. Bracken's lawyers, Daley and Georges, telling them to advise Mr. Bracken to refrain from ever contacting me again.

5. I never received even the courtesy of a response to my letter.

6. Based on a response to a FOIA sent to the Village requesting all documents, information, submittals, approvals, and/or actions pertaining to a stormwater pollution prevention plan and dust control plan, there were no responsive documents to show that anything was reviewed by a Village engineer as required by Village Ordinance 2017-22.


Further Declarant Sayeth Not.


Mark A. LaRose

# EXHIBIT OO

MARK A. LAROSE *
JOSEPH A. BOSCO *
DAVID KOPPELMAN
DAVID ROSEMEYER
DAVID J. ARON
COSTA DIAMOND
MARISSA R. ALASKA
NATALIE MARTELLO

OF COUNSEL
HON. ANTHONY J. BOSCO (1928-2008)
JOSEPH G. ALIOTO **
ALBERTO QUIROS JAEN***

* ADMITTED IN MICHIGAN ALSO
** ADMITTED IN WISCONSIN ONLY
*** ADMITTED IN PANAMA ONLY



## LaRose & Bosco, Ltd.
### ATTORNEYS AT LAW

200 N. LASALLE STREET
SUITE 2810
CHICAGO, IL 60601
P: (312) 642-4414
F: (312) 642-0434

135 S. WHITTAKER
NEW BUFFALO, MI 49117
P: (269) 469-8440
F: (269) 469-8442

February 12, 2020

**By E-Mail: mjs@daleygeorges.com**
Riverdale Materials, LLC
c/o Mr. Michael Synowiecki
Registered Agent
Daley and Georges
20 S. Clark Street, Suite 400
Chicago, IL  60603

Dear Michael,

I presume Daley and Georges still represents Riverdale Materials and Jim Bracken.

On Monday night, February 10, 2020, at 9:45 EST (while I was sleeping), my phone rang repeatedly until my wife finally got frustrated and answered it. It was Jim Bracken.  I told him I was sleeping, give me a second to get out of bed, and he said "No, I'm not going to give you any time to record this phone call."  He then proceeded to threaten me and my client repeatedly.

If you still represent Mr. Bracken and his companies, I would appreciate it if you would advise him not to ever contact me again.

Lawsuits are often a battle, but in the words of the late great Honorable Abraham Lincoln Marovitz, let us ". . . learn how to disagree without being disagreeable." Late night personal threats to me at my home on my private phone could never be construed as anything but absolutely inappropriate.

Very truly yours,

Mark A. LaRose

MAL/mk
cc:     Joseph Bosco (jbosco@laroseboscolaw.com)
        Michael Daley (mdaley@daleygeorges.com)
        Mara Georges (mgeorges@daleygeorges.com)

# EXHIBIT PP

1989 WL 20831
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Brenda WEEKS, Plaintiff,

v.

CITY OF PLANO, Dennis Harris, Harry Haggard, Steve Eaves, Plano Police Department, and Others not presently known to Plaintiff, Defendants.

No. 88 C 0518.
March 7, 1989.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

**\*1** Plaintiff Brenda Weeks brings suit against the City of Plano, Illinois, the Plano Police Department, Chief of Police Dennis Harris, Officers Harry Haggard and Steve Eaves, and others not presently known to Plaintiff. In a Memorandum Opinion and Order dated August 9, 1988, we granted Defendants' motion to dismiss Plaintiff's original complaint. Plaintiff subsequently filed an amended complaint. Currently before us is the City of Plano's motion to dismiss the amended complaint in so far as it pertains to the City. For the reasons set forth below, the motion is denied. The City's motion to strike the portions of the amended complaint seeking punitive damages against the City, is, however, granted.

Our prior opinion set forth the allegations of the original complaint in detail. Because the substance of those allegations remains substantially unchanged, we shall proceed directly to a discussion of the issues presently before us.

*Discussion*

The City asserts that Plaintiff's Section 1983 claim against it cannot stand because Plaintiff has not pleaded a policy or custom on the part of the City sufficient to hold the City liable under Section 1983. The allegations of the amended complaint relevant to the City's potential liability are twofold. Plaintiff alleges that the campaign of harassment was planned by, among others, Chief of Police Harris. (Amended Complaint, Para. 13) She also alleges that the Mayor of Plano met with Defendants Harris and Haggard prior to Plaintiff's termination, knew of the individual Defendants' actions, and sanctioned those actions. (*Id.* at Para. 25)

The City contends that only the Plano City Council has authority to make policy concerning police conduct. It asserts that any departures from the "Rules and Regulations of the Plano Police Department" passed by the City Council on February 14, 1983 constitute individual action which cannot be attributed to the City for purposes of assigning liability under Section 1983. As we shall explain below, we disagree.

Our decision is guided by the Supreme Court's plurality opinions in *Pembaur v. Cincinnati,* 475 U.S. 469 (1986) and *St. Louis v. Praprotnik,* 108 S.Ct. 915 (1988). In *Pembaur,* the Court [1] made clear that municipal liability may be imposed for a single decision by a municipal policy-maker in appropriate circumstances:

To be sure, "official policy" often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances and over time.... However, ... a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decision-makers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

**\*2** 475 U.S. at 480–81. In *Praprotnik,* the plurality acknowledged that in some cases policy-making responsibility is shared among more than one official or body. 108 S.Ct. at 925. It went on to emphasize that

the authority to make municipal policy is necessarily the authority to make *final* policy. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's

departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.* at 926 (citation omitted).

*Pembaur* makes clear that a decision not intended for general application, but rather tailored to a particular case, is properly attributable to a municipality if made by the municipality's authorized policymakers.
Moreover, *Praprotnik* indicates that ratification of a non-policymaker's decision (and the basis for it) by an authorized policymaker is also sufficient to subject a municipality to liability under Section 1983. Here, Plaintiff has alleged that unconstitutional actions were planned by the Chief of Police and approved by the Mayor. If one or both of these officials are "authorized policymakers," the unconstitutional actions are properly charged to the municipality itself. Thus, the City's potential liability turns on whether the Chief of Police and/or the Mayor are "authorized policymakers."

The identification of policymaking officials is a question of state law, which includes valid local ordinances and regulations. *St. Louis,* 108 S.Ct. at 924. Illinois law provides that the powers and duties of a Mayor are, *inter alia,* "to exercise control of all departments and divisions ... created in this Article ... or that may be created by the council." Ill.Rev.Stat. Ch. 24, Para. 6–4–7. As to the duties of the Chief of Police, the police department rules passed by the Plano City Council provide that "[t]he Chief of Police is the chief executive officer of the Department and the final departmental authority on all matters of policy, operations, and discipline...." (Ch. II, I–A)

We believe that both the Chief of Police, as the "final departmental authority on all matters of policy," and the Mayor, who is empowered to exercise control over all of the municipality's departments, including the police department, are authorized policymakers as to police department operations under state and local law. Thus, the actions of these officials " 'are, properly speaking, acts 'of the municipality.' " *Pembaur,* 475 U.S. at 480; *see also Monell v. Department of Social Services,* 436 U.S. 658 (1978). The motion to dismiss Plaintiff's Section 1983 claim against the City is therefore denied.

**\*3** The City also moves to strike Plaintiff's requests for punitive damages against the City under both Section 1983 and state law. In that respect, Defendant's motion is granted. Municipalities are not subject to punitive damages under Section 1983. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981). Punitive damages against a municipality are similarly unavailable under state law. Ill.Rev.Stat. Ch. 85, Section 2–102. Thus, Plaintiff's requests for punitive damages against the City and against the individual Defendants in their respective official capacities are stricken. *See Monell,* 436 U.S. at 690, n. 55 (suit against public employee in her official capacity tantamount to suit against the municipality itself).

Conclusion

For the foregoing reasons, the motion of the City of Plano to dismiss the complaint against the City is denied, but the amended complaint is stricken in so far as it seeks punitive damages against the City or against individual city employees in their official capacities.

## All Citations

Not Reported in F.Supp., 1989 WL 20831

## Footnotes

| 1 | The portion of *Pembaur* to be quoted represents the opinion of the Court rather than a mere plurality. |
|---|---|