**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18-cv-02138 |
| vs. | ) ) | Judge Sara L. Ellis |
| THE VILLAGE OF RIVERDALE, a municipal corporation; LAWRENCE L. JACKSON, Mayor of the Village of Riverdale | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S LOCAL RULE 56.l(b)(3)(c) STATEMENT**
**OF ADDITIONAL FACTS REQUIRING THE DENIAL OF SUMMARY JUDGMENT**

NOW COME Defendants, Village of Riverdale and Lawrence L. Jackson, by their attorneys Erin E. Blake and John P. Wise of Montana & Welch, LLC., and for its Answer to plaintiff's Local Rule 56.1(b)(3)(c) Statement of Additional Facts, state as follows:

78. The Mayor has a direct business relationship with the owners of Riverdale Materials (through Centennial Holdings LLC and its managers Lawrence Jackson and Tammy Watson, organized March 15, 2018). (See Illinois Secretary of State LLC File Detail Report on Centennial Holdings attached as Exhibit FF; Ex. E (Jackson deposition transcript) to 56.1 at pp. 17-19). The Mayor and Riverdale Materials' owner, Jim Bracken, frequently socialize for lunches in south suburban Midlothian. Centennial Holdings' March 15, 2018 creation, comes almost immediately after Tri-State criticized the Mayor and Riverdale Materials and filed this lawsuit. (See Declaration of Jeff Germany attached as Exhibit GG at ¶ 3).

**ANSWER:** **Deny.**

1

To determine what is disputed on a motion for summary judgment, the court must focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements. Fed.R.Civ.P. 56. The first step in the summary-judgment process is to ask whether *the evidentiary record* establishes a genuine issue of material fact for trial. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Fact discovery was closed by the Court on March 1, 2021. (Docket #94). Exhibit FF and Exhibit GG, referenced in Paragraph 78, were not disclosed, identified, or produced by the Plaintiff at any time prior to the filing of this Response brief. Federal Rule of Civil Procedure Rule 37(c) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. Rule Civ. Pro. 37(c). The Plaintiff's failure to disclose evidence relating to an alleged relationship between the Mayor and Riverdale Materials is extremely prejudicial to produce and attempt to utilize as evidence in a response brief to a motion for summary judgment, almost a year after discovery has been closed in this case. Utilization of a new affidavit of the plaintiff, after the plaintiff was deposed in this matter, and after the close of fact discovery, to act as supportive evidence of facts is entirely unfair, self-serving, and violative of federal rules of civil procedure.

Specifically, the affidavit attached as Exhibit GG is a sham affidavit that is contradictory to the Tri-State manager's deposition testimony and no independent evidence exists in the record to support several paragraphs in Mr. Germany's affidavit. For example, paragraph 3 of Exhibit GG, wherein Mr. Germany states that he has observed the Mayor and Jim Bracken (Riverdale Materials) socializing for lunches in Midlothian and that he has personal knowledge of those

weekly lunches, while irrelevant to being evidence of a business relationship, is information that was never disclosed in discovery or during Mr. Germany's deposition. The deposition focused on Mr. Germany's allegations that his expression of criticisms against Riverdale Materials caused Mayor Jackson to retaliate against his company; yet he never mentioned alleged evidence of a business relationship between the Mayor and Riverdale Materials at any time prior to this affidavit. The sham affidavit doctrine can be utilized by this Court to strike Exhibit GG. The judge may disregard an affidavit that attempts to create a sham issue of fact. *James v. Hale,* 959 F.3d 307, (7th Cir. 2020). The "sham affidavit rule" exists in every circuit. *Id.*

The Court has broad discretion to determine whether a violation of Rule 37(c) is justified or harmless and a remedy proportionate with the circumstances of the party's failure to comply with discovery rules. *Beaton v. SpeedyPC Software*, 338 F.R.D 232, N.D. Illinois, Eastern Division (March 31, 2021). It is proportionate for the Court to strike and disregard these Exhibits for the Plaintiff's violation of the Court's discovery rules. Further, any alleged disputed facts supported by these inadmissible exhibits should be disregarded.

In answering further, the testimony by Mayor Jackson, cited by the Plaintiff in paragraph 78 is misstated and does not support a contention that there is/was a business relationship between Mayor Jackson and Riverdale Materials. Specifically, Mayor Jackson is asked and testifies as follows:

> Q. Sure. Other than being employed full-time as the Mayor of the Village of Riverdale, do you have any ownership in any other businesses?
> A. My -- my wife and I, yes, we do own a family business.
> Q And what is that family business?
> A Centennial Holdings. Trucking.
> Q And what does Centennial Holdings do?
> A We haul construction materials, concrete, stone, dirt. Independent contractor.
> Q Do you do any hauling for Riverdale Materials?
> A No, sir. Not to the best of my knowledge. No.
> Q Do you do any hauling for any of the companies owned by the Bracken family?

A      Possibly, yes.

(Statement of Material Facts (hereinafter "*SOMF*"), Exhibit E, pp. 17)

Several more questions proceed, and Mayor Jackson explains that this trucking company leases a truck and a driver to a secondary company. The secondary company determines what materials will be hauled and to where the truck will haul materials. Centennial Trucking does not have anything to do with the decision. (*SOMF,* Exhibit E, pp. 18-19) Further, Mayor Jackson is not involved with the business; and his wife manages the same. *Id.*

Therefore, the entirety of the assertions made by the Plaintiff in paragraph 78 are unsupported by admissible evidence and must be disregarded. However, even if the Court chooses to consider this new evidence, nothing regarding a lunch with a business entity owner is relevant to the remaining claims in this case – namely retaliation or breach of contract.

79.      Defendant Jackson first promised Tri-State representatives that any permit to Riverdale Materials would include financial assurance, closure bond, and a requirement for Riverdale Materials to pay royalties. The Mayor reneged on that promise. (56.1 at Ex. E (Jackson Dep.), pp. 49-50, Ex. G (Jeff Germany Dep.), pp. 50-51, and Ex. C (Sheryl Germany Dep.), pp. 54-55).

**<u>ANSWER:</u>   Deny.**

The testimony cited by the Plaintiff in support of this "fact" does not exist in Mayor Jackson's testimony. Nowhere on pages 49-50 of Mayor Jackson's deposition does he discuss a "promise" to Tri-State representatives regarding Riverdale Materials. He testifies that the Zoning Board recommended a royalty and closure fee for Riverdale Materials; but the Village Board of Trustees did not include those requirements. (*SOMF*, Exhibit E, pp. 49-50). While the Germany's

may have testified regarding the alleged promise, the testimony is self-serving and evidence only that their speech against Riverdale Materials was motivated by their private business interests.

80.     Regarding the need for financial assurance for closure and post-closure, and the need for some royalties for Riverdale, even Riverdale Materials testified that a site in Harvey was abandoned, and the owner just left all this stuff there. (56.1, Exhibit J, pp. 25.)

**ANSWER:**     The assertion should be stricken or disregarded as it constitutes inadmissible hearsay. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *Rogers v. City of Chi.*, 320 F.3d 748, 751 (7th Cir. 2003). Defendants further deny the assertion as irrelevant, as it is taken out of context and has nothing to do with Riverdale Materials providing financial assurance for closure and post-closure. Rather, the testimony is provided by Riverdale Materials to the Village Planning and Zoning Board to discuss the closure of a recycling facility in Harvey, which would make Riverdale Materials the closest recycling facility for concrete and asphalt to service the City of Chicago. (*SOMF*, Exhibit J, pp. 25).

81.     The Mayor wrote to Tri-State in October 2017 stating the Village's intent to rebid Riverdale's garbage disposal contract and inviting and encouraging Tri-State to participate in the re-bid process. (56.1 at ¶ 23 and Exhibit K attached thereto) Again, the Mayor reneged on this promise. No re-bid ever occurred, and Tri-State as the incumbent contract holder was not given even the opportunity to bid on the contract. (56.1 at Ex. G (Jeff Germany Dep.), pp. 80, 90-92, and Ex. C (Sheryl Germany Dep.), pp. 119-121)

**ANSWER:** Defendants admit that Mayor Jackson informed Tri-State of the Village's intent to re-bid the garbage disposal contract and invited Tri-State to participate in the process. (*SOMF*, ¶ 25). Defendants also admit that the Village did not re-bid the garbage disposal contract; but rather the Village Board of Trustees awarded a garbage collection contract to Flood Brothers Disposal at a

significantly reduced monthly rate. (*SOMF*, ¶ 60).     Defendants deny the remainder of the allegations in paragraph 81, as they consist of conclusory allegations and arguments that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005).

  82. Even though the Village admitted that trash collection was an essential service and that payment for the same was essential to the operation of the Village, almost immediately after Tri-State engaged in protected speech and continuing after it filed this lawsuit, payments to Tri-State went from being paid in less than 45 days, to being delayed more than 180 days. During the time that Tri-State was not being paid by the Village, it suffered damages because it had to scramble to pay its bills because a substantial amount of income was not coming in from the Village. The Village still owes Tri-State some interest on late payments. (56.1 at Ex. C (Sheryl Germany Deposition Transcript) at pp. 98-103; Ex. G (Jeff Germany Deposition Transcript) at pp. 67-73; Declaration of Jeffrey Germany, Exhibit GG at ¶4) Tri-State continued to provide uninterrupted trash service to the Village residents and continued to pay substantial royalties to the Village, even though it was not obligated to do so based on the Village's non-payment. (Declaration of Jeffrey Germany, Exhibit GG at ¶ 5).

**ANSWER:** **Deny.**

 The Defendants deny the unsupported and conclusory assertions in paragraph 82 that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005).  Specifically, Plaintiff does not provide any citations to the conclusory sentence regarding the timing of late payments to Tri-State; and therefore, that sentence should be

disregarded. Similarly, the assertion that Tri-State suffered damages because it had to scramble to pay its bills because income was not coming in from the Village, contains no citation, contradicts the agreed to undisputed facts relating to damages, and is conclusory and improper. It is further denied that any interest or late payment fee was contractually required or due to be paid. (*SOMF* ¶ 8).

The Defendants also deny the allegations made in Jeff Germany's affidavit as it is contradictory to the evidence in this case and should be disregarded as set forth in answer to paragraph 78. The affidavit asserts for the first time that Tri-State had no obligation to provide garbage services to the Village or pay royalty fees because of the Village's late payments. This was never addressed in Germany's deposition or in discovery; however, the fact that Tri-State was required to pay royalties pursuant to a 1999 settlement agreement was a topic of his deposition testimony and that agreement is included in evidence. (*SOMF,* ¶ 7). However, even if that is an accurate statement, it is irrelevant to the plaintiff's claims of retaliation and breach of contract and should be disregarded.

83. In addition, Tri-State suffered damages to its reputation by not being allowed to participate in the 2018 Spring Clean-up. Residents called Tri-State for advice on when the clean-up will happen, and because of the Village's action (inaction), Tri-State could not provide them with any information, which made Tri-State look totally incompetent. Other damages include the loss of the opportunity to bid on the garbage contract, which was worth approximately $60,000 to $65,000 per month. Tri-State expected that contract to continue for least five (5)years. Also, Tri-State lost contracts that it had with multi-family building owners when the Mayor approved requiring these owners to use Flood Bros. as its sole garbage contractor. Tri-State earned approximately $6,000 per month on the multi-family contract ($72,000 per year). Tri-State

expected the multi-family contract to go on indefinitely, and lost that approximate $72,000 per year. (Declaration of Jeffrey Germany, Exhibit GG at ¶¶ 6-9).

**ANSWER:**    **Deny.**

This entire paragraph is supported solely by the affidavit of Germany, attached to Plaintiff's Statement of Additional Facts. As previously argued, fact discovery was closed by the Court on March 1, 2021. (Docket #94). Exhibit GG, referenced in Paragraph 83, was not disclosed, identified, or produced by the Plaintiff at any time prior to the filing of this Response brief. Federal Rule of Civil Procedure Rule 37(c) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. Rule Civ. Pro. 37(c). The Plaintiff's failure to disclose this affidavit or provide the information testified to therein, is extremely prejudicial. Utilization of a new affidavit of the plaintiff, after the plaintiff was deposed in this matter, and after the close of fact discovery, to act as supportive evidence of damages is entirely unfair, self-serving, and violative of federal rules of civil procedure.

Specifically, the affidavit attached as Exhibit GG is a sham affidavit that is contradictory to the Tri-State manager's deposition testimony and therefore, the affidavit and the statements within paragraph 83 should be disregarded in their entirety.

The Village was not required to bid the garbage contract (*65 ILCS 5/11-19-1, et seq.*) and plaintiff did not have any written agreement to extend its then existing contract; therefore, plaintiff had no expectation that its contract would continue for at least five years. (*SOMF,* ¶¶ 8, 10, 47, 50).

84.     The Mayor directed the Public Works Director Jerome Russell not to respond to Tri-State regarding Tri-State's normal and annual inquiries regarding its contract obligation to conduct an annual spring clean-up at no cost to the Village. (56.1 at ¶ 44) Instead, the Mayor authorized the Village to hire and pay a separate contractor, Flood Bros., more than $18,000 to perform the service that Tri-State was obligated to perform for free. (56.1 at ¶¶ 57, 58, 62 and at Exhibit BB (which is also Exhibit 16 to Third Amended Complaint))

**ANSWER:     Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co.*, 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005).  None of the paragraphs cited by the Plaintiff as being included in the Undisputed and Agreed Statement of Facts contains the information alleged. (*SOMF*, ¶¶ 57, 58, 62, and Exhibit BB).  The undisputed facts regarding these issues are appropriately stated in the 56.1 Statement.

85.     Tri-State indicated that it would not be scheduling the Spring Clean-Up in 2018 because the Spring Clean-up had already occurred with Flood Brothers at a cost of approximately $18,000 to the Village. (56.1 at ¶ 57). Russell admitted that Flood Bros. did the Spring-Clean up on 5-5-2018, and that that was the only Spring Clean-up in 2018. (56.1 at Ex. Z (Russell Dep.) at pp. 74-75).

**ANSWER:     Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co.*, 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*,

424 F.3d 659, 674 (7th Cir. 2005). Specifically, paragraph 57 of the 56.1 statement does not suggest that the Spring Clean-Up had already occurred. Further, Mr. Russell's testimony in this regard is not quoted directly by the Plaintiff; instead, plaintiff makes improper conclusions based on the same. Therefore, these assertions should be disregarded.

86.     The hearings before the Zoning Board of Appeals (ZBA) were improper and illegal, since in the middle of the ZBA hearing process, and after substantive testimony had already been given and ZBA Chairperson Carmelia Shipp publicly expressed a negative opinion about the Riverdale Materials project, the Mayor fired Chairperson Shipp of the ZBA, and loaded the ZBA with persons totally unaware of the situation and who had not heard substantial testimony at the September 7, 2017 hearing. (Exhibit CC to 56.1, Third Amended Complaint at ¶ 38; October 10, 2017 letter from Mayor Jackson to Carmelia Shipp attached as Exhibit HH)

**ANSWER:     Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). The Plaintiff cites Exhibit CC, its Third Amended Complaint, as evidence of a factual statement. Complaints contain allegations of fact; not evidence supported by fact. The only other evidence cited by the Plaintiff in making this assertion is Exhibit HH, which is correspondence from the Mayor to Ms. Shipp informing her that her appointment on the ZBA had ended and would not be renewed and thanking her for her service. Shipp was not "fired". (*SOMF*, Exhibit HH). In addition, the ZBA hearings are irrelevant to the remaining issues in the case.

87.     ZBA Chairperson Camelia Shipp criticized the site and the process at the initial September 7, 2017 ZBA hearing by asking - Why Riverdale (pp. 29-30), expressing concerns about the retention pond and stormwater drainage (p. 77), and other concerns (70-72, 82) (56.1 at Ex. J (9/7/2017 Village Record of Proceedings Transcript) at pp. 29-30, 70-72, 77, 82).

**ANSWER:**    **Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005).  The entirety of Paragraph 87 is plaintiff's conclusory opinion regarding statements made and questions asked by Ms. Shipp during a ZBA hearing.  Those statements speak for themselves, are not properly cited and/or summarized in this paragraph and are irrelevant to the issues of retaliation and breach of contract.

88.     At the follow-up hearing after Ms. Shipp was unilaterally terminated from the ZBA by the Mayor, Shipp testified that she was the chairperson since 2008 and because the Mayor knew she was strongly against the company coming in, the Mayor personally gave her a letter to terminate her position as chairperson and to hire people that would be on his side. (56.1 at Ex. L (11/2/2017 Village Record of Proceedings Transcript) at pp. 40-41

**ANSWER:**    **Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005).  The entirety of Paragraph 88 is plaintiff's conclusory opinion regarding statements made by Ms. Shipp during a ZBA hearing.  Those statements speak for

themselves, are not properly cited and/or summarized in this paragraph and are irrelevant to the issues remaining in this case. Shipp was not terminated from the ZBA, but the term of her appointment had ended. (*SOMF,* Exhibit HH).

89.     The Zoning Board of Appeals hearings were improper because they were chaired by Village Attorney Matt Welch from the law firm Montana and Welch, without any authority to do so, and over the strong objection of Village residents as well as Tri-State. (Exhibit CC to 56.1, Third Amended Complaint at ¶ 40).

**ANSWER:     Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005).   The Plaintiff solely cites Exhibit CC, its Third Amended Complaint, as evidence of a factual statement.   Complaints contain allegations of fact; not evidence supported by fact.   In further answering the allegations relating to the allegedly improper zoning hearing are not relevant to the remaining issues in the case.

90.     After Ms. Shipp was fired by the Mayor as ZBA chairperson, Village Attorney Matt Welch chaired the November 2, 2017 public hearing (56.1 at Ex. L (11/2/2017 Village Record of Proceedings Transcript) at p. 4). Village resident Reynolds complains that only the chairman is supposed to call the meeting to order; Welch administers oaths (Id. at p. 6); Welch questions the Riverdale Materials' witnesses (Id. at pp. 33-34); Welch interrupts and stymies the public's testimony to which most of the public responds to things like – "Don't interrupt me." "Don't shut me down." (Id. at pp. 42-43); resident Horton criticizes Welch because there is no transparency (Id. at p. 43); resident Reynolds testifies asking if the newly-elected board even knows what a

conditional use is or what a variance is. Again, Welch chimes in (Id. at p. 48); Welch continued to interrupt resident William Clark (Id. at pp. 53-57); Welch interrupts resident Kay Randall, and she says that she has the floor and do not interrupt her. She also chastises Welch for not living in Riverdale (Id. at p. 62); resident Gilmore chastises Welch for getting in his car and leaving Riverdale, even though Riverdale residents pay his salary, yet he is trying to cut them off (Id. at p. 63). Tri-State's attorney Mark LaRose also complained and Welch interrupted him, asking why he is saying anything at all (Id. at p. 71).

   **ANSWER:**   **Deny.**

   The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co.*, 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005). The entirety of Paragraph 90 is plaintiff's conclusory opinion regarding statements made by multiple persons during a zoning hearing. Those statements speak for themselves, are not properly cited and/or summarized in this paragraph and are irrelevant to the issues remaining in this case.

   91.   After Shipp was unilaterally terminated by the Mayor, Welch says he is chairing the meeting because a chairperson has not been assigned "at this time" (56.1 at Ex. L (11/2/2017 Village Record of Proceedings Transcript) at p. 71). There was a standing objection to Welch participating in any way and giving them any advice (Id. at p. 96). Welch even went so far as to suggest a condition to the stormwater pollution prevention plan to be reviewed by the Village engineer (Id. at p. 103).

   **ANSWER:**   **Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 84 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). The entirety of Paragraph 91 is plaintiff's conclusory opinion that the Village Attorney should not have been involved in the proceedings – these opinions are not supported by facts, the statements made during the zoning hearings speak for themselves, are not properly cited and/or summarized in this paragraph and are irrelevant to the issues remaining in this case.

92. Riverdale Ordinance 2017-22, Section 4, Condition 4, signed by the Mayor, required Riverdale Materials to submit plans for review and approval by the Village Engineer. (56.1 at Exhibit 1 to Exhibit AA (First Amended Complaint)) Based on a response to a FOIA sent to the Village requesting all documents, information, submittals, approvals, and/or actions pertaining to a stormwater pollution prevention plan and dust control plan, there were no responsive documents to show that anything was reviewed by a Village engineer. (See Declaration of Mark A. LaRose, attached as Exhibit NN at ¶ 6).

**ANSWER:** **Deny.**

As previously discussed, fact discovery was closed by the Court on March 1, 2021. (Docket #94). Exhibit NN, referenced in Paragraph 92, was not disclosed, identified, or produced by the Plaintiff at any time prior to the filing of this Response brief. Federal Rule of Civil Procedure Rule 37(c) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. Rule Civ. Pro. 37(c). The Plaintiff's failure to disclose evidence is extremely prejudicial to

produce and attempt to utilize as evidence in a response brief to a motion for summary judgment, almost a year after discovery has been closed in this case.

Further, attempting to utilize a new affidavit of the plaintiff's attorney to prove the truth of the matter asserted, is inadmissible hearsay.  Plaintiff's attorney will not testify at trial, as he was not a disclosed witness; and thus, his statements will not be admissible evidence.  "When an affidavit contains an out-of-court statement offered to prove the truth of the statement, that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008).  Attempting to utilize this affidavit now to support alleged factual statements is entirely unfair, self-serving, and violative of federal rules of civil procedure.

Specifically, the affidavit attached as Exhibit NN contains allegations that Jim Bracken, the owner of Riverdale Materials, threatened the plaintiff's attorney.  Jim Bracken's alleged threats are hearsay, are inadmissible evidence, have nothing to do with the Village, and are wholly irrelevant to the issues remaining in the case.

The Court has broad discretion to determine whether a violation of Rule 37(c) is justified or harmless and a remedy proportionate with the circumstances of the party's failure to comply with discovery rules.  *Beaton v. SpeedyPC Software*, 338 F.R.D 232, N.D. Illinois, Eastern Division (March 31, 2021).   It is proportionate for the Court to strike and disregard Exhibit NN for the Plaintiff's violation of the Court's discovery rules.  Further, any alleged disputed facts supported by these inadmissible exhibits should be disregarded.

In answering further, the Defendants deny the unsupported and conclusory assertions in paragraph 92 that are not proper and are forbidden under Local Rule 56.1.  *Basta v. Am. Hotel Register Co.*, 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc.*

*v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). The Plaintiff solely cites Exhibit AA, its First Amended Complaint, as evidence of a factual statement. Complaints contain allegations of fact; not evidence supported by fact. In further answering the allegations relating to the allegedly improper plan review process are not relevant to the remaining issues in the case.

93. At the final public hearing on November 28, 2017, the Village Board intended to adopt the ordinance without taking additional public comment. (Village Record of Proceedings Transcript of 11/28/2017 at p. 5, attached as Exhibit II). Mayor Jackson and Village Attorney Matt Welch did not allow any further criticism or testimony before a vote was taken in the Riverdale Materials' matter, and they refused to put in the record additional written criticisms by the plaintiff and its representatives. (Exhibit CC to 56.1, Third Amended Complaint at ¶ 60; Village Record of Proceedings Transcript of 11/28/2017 at pp. 5-10, Exhibit II). Tri-State's attorney Mark LaRose questioned why they would not take additional public comment prior to voting. (Village Record of Proceedings Transcript of 11/28/2017 at p 8, Exhibit II). The Board refused to take Tri-State's supplemental testimony even though it could not have been delivered prior to that date (Village Record of Proceedings Transcript of 11/28/2017 at pp. 8-10, Exhibit II).

**ANSWER:** **Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 92 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). The Plaintiff again cites Exhibit CC, its Third Amended Complaint, as evidence of a factual statement. Complaints contain allegations of fact; not evidence supported by fact.

In further answering, Exhibit II is a transcript of a Board meeting, wherein no witness was sworn; and is inadmissible evidence that should be disregarded. Further, the allegations relating to the allegedly improper zoning approval are not relevant to the remaining issues in the case.

94.    On October 9, 2018, the Village Board passed Resolution 2018-44 signed by Mayor Jackson authorizing the execution of an agreement with Flood Brothers Disposal for Residential Waste Collection. (56.1 at Exhibit 19 (Resolution 2018-44) to Exhibit CC (Third Amended Complaint.

**ANSWER:    Admit.**

95.    While the Mayor tries to hide behind the fact that he did not vote on various matters affecting Tri-State, he did in fact sign the offending ordinances and resolutions, and was required by state and local law to approve the ordinances before signing. (See Riverdale Village Code 2.08.070 attached as Exhibit JJ; 65 ILCS 5/6-4-1 and 5/6-4-2, attached as Exhibit KK; (56.1 at Exhibit 19 (Resolution #2018-44) and Exhibit 20 (Ordinance #2018-22) to Exhibit CC (Third Amended Complaint); Ordinance 2017-22 attached as Exhibit 1 to Plaintiff's First and Second Amended Complaint and incorporated by reference in Plaintiff's Third Amended Complaint)

**ANSWER:    Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 92 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). Paragraph 95 is littered with the Plaintiff's opinions and is completely unsupported by fact, for example, the "Mayor tries to hide behind." This conclusory statement should be disregarded. Further, Plaintiff again cites to Exhibit CC, its Third Amended Complaint, as evidence of a factual statement. Complaints contain allegations of fact; not evidence

17

supported by fact. In addition, Exhibits 19 and 20 do not exist in the 56.1 Statement; but appear to reference ordinances of the Village.

In further answering, Exhibits JJ and KK were never produced or discussed during discovery; but are laws potentially subject to judicial notice, though that was not sought by the Plaintiff. However, those laws solely state the Mayor must sign every ordinance if he approves of the same. The Village admits the Mayor signed the ordinances referenced; but denies that his signature represents his ability to impact the decisions made by the Board of Trustees in relation to their passage of these ordinances. If he does not approve of the same, there is a veto process delineated in the law, including a veto override.

96. Throughout the process, Tri-State complained about the serious and historic contamination at the Riverdale Materials' site, and the fact that Riverdale Materials lied about stormwater runoff going into an "on-site retention pond." (56.1 at Ex. CC (Third Amended Complaint at ¶¶ 21(a)-(b), 23-30, 32, 43(a), 58(b)); 56.1 at Exhibit 2 (9/7/2017 submittal to Riverdale Zoning Board of Appeals) to Ex. AA (First Amended Complaint); 56.1 at Exhibit 3 (11/2/2017 submittal to Riverdale Zoning Board of Appeals) to Ex. AA (First Amended Complaint); 56.1 at Exhibit 4 (11/28/2017 submittal to Mayor Jackson and Village Trustees) to Ex. AA (First Amended Complaint); 56.1 at Ex. J (9/7/2017 Village Record of Proceedings Transcript) at pp. 47-64)

**ANSWER:** **Admit.** However, Defendant still contend that reference to a Complaint to support an allegation of fact is inappropriate.

97. In order to protect the retention pond from further contamination, in May 2019, Tri-State purchased the retention pond and requested that its attorney issue a cease and desist notice to Riverdale Materials to stop using the retention pond for its runoff from its contaminated site.

Riverdale Materials never responded to this letter. (See Cease and Desist Notice to Riverdale Materials dated February 10, 2020 attached as Exhibit LL; Declaration of Sheryl Germany attached as Exhibit MM at ¶ 3)

**ANSWER:** **Admit Tri-State purchased a retention pond adjacent to Riverdale Materials; but deny all other allegations in paragraph 97.**

In further answering, fact discovery was closed by the Court on March 1, 2021. (Docket #94). Exhibit MM, referenced in Paragraph 97, was not disclosed, identified, or produced by the Plaintiff at any time prior to the filing of this Response brief. Federal Rule of Civil Procedure Rule 37(c) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. Rule Civ. Pro. 37(c). Utilization of a new affidavit of the plaintiff, after the plaintiff was deposed in this matter, and after the close of fact discovery, to act as supportive evidence of facts is entirely unfair, self-serving, and violative of federal rules of civil procedure.

Specifically, the affidavit attached as Exhibit MM is a sham affidavit that is contradictory to the Tri-State President's deposition testimony and the Plaintiff's attorney's representations during the same. There is no independent evidence in the record to support paragraph 3 in Mr. Germany's affidavit; and further, the Plaintiff's attorney admitted that the issues relating to the retention pond are irrelevant to the issues in this case.

For example, during Mrs. Germany's deposition, the following on the record discussion occurred:

Q        Did Tri-State purchase the retention pond near 1201 West 138th Street?

MR. LAROSE: Want this on the record or off the record?

MS. BLAKE: I have no idea what you're going to do.

MR. LAROSE: Okay. So let's do it on the record. Right now this lawsuit, unfortunately, I think, is about retaliation and breach of contract. The purchase of the retention pond has nothing to do with that. So if you want to go into that, then understand that my questions to your clients are not going to be limited to retaliation and breach of contract. The retention pond has nothing to do with those two things, nothing. If you want to limit it the way you want to limit it, and I'm okay with that, then let's limit it that way, but if you open this door, I'm going to charge right through it.

(*SOMF*, Exhibit C, Pages 49-50)

MR. LAROSE: So I'm okay -- so you don't go -- you don't go into those areas, and I don't think it's appropriate for me to go into those areas. You don't -- you don't go into, you know, the due process type stuff; and the retention pond is due process. I mean, that's really the main thing to change between the First Amended Complaint and the Second Amended Complaint, in addition to these other claims of property rights, property interest, constitutional property interest, that we now own property adjacent to the site that they're leaching stuff into.

MS. BLAKE: Right. But aren't you claiming damages based on that harm?

MR. LAROSE: Well, I don't think we can because -- well, I mean, unless this thing is reversed on appeal, the damages at this point – at this point, in this transaction, have to be related to the retaliation and breach of contract. I mean, I hate to admit that, but it's true. And it's -- it's the law of where the case is right now.

(*SOMF*, Exhibit C, Page 52)

Based on this interaction, no further questions were asked of Ms. Germany relating to the retention pond. (*SOMF*, Exhibit C). To now, at the time of summary judgement submit an affidavit to explain why the retention pond was purchased is prejudicial and contradictory to prior testimony and irrelevant to the remaining issues of retaliation and breach of contract. Therefore, the sham affidavit doctrine should be utilized by this Court to strike Exhibit MM. The judge may disregard an affidavit that attempts to create a sham issue of fact. *James v. Hale,* 959 F.3d 307, (7th Cir. 2020). The "sham affidavit rule" exists in every circuit. *Id.*

20

The Court has broad discretion to determine whether a violation of Rule 37(c) is justified or harmless and a remedy proportionate with the circumstances of the party's failure to comply with discovery rules. *Beaton v. SpeedyPC Software*, 338 F.R.D 232, N.D. Illinois, Eastern Division (March 31, 2021). It is proportionate for the Court to strike and disregard this Exhibit for the Plaintiff's violation of the Court's discovery rules. Further, any alleged disputed facts supported by this inadmissible exhibit should be disregarded.

However, even if the affidavit is not stricken, during the deposition of Mrs. Germany, it was acknowledged that the retention pond is irrelevant to the retaliation and breach of contract claims remaining in this matter; and therefore, should be disregarded.

98.     The day the cease-and-desist letter was issued, Riverdale Materials' owner Jim Bracken, called Tri-State attorney Mark LaRose, at night, on his cell, and repeatedly threatened both LaRose and Tri-State. (See Declaration of Mark A. LaRose, Exhibit NN at ¶ 3)

**ANSWER:**     **Deny.**

As set forth in answer to paragraph 92, fact discovery was closed by the Court on March 1, 2021. (Docket #94). Exhibit NN, referenced in Paragraph 98, was not disclosed, identified, or produced by the Plaintiff at any time prior to the filing of this Response brief. Federal Rule of Civil Procedure Rule 37(c) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. Rule Civ. Pro. 37(c). The Plaintiff's failure to disclose evidence is extremely prejudicial to produce and attempt to utilize as evidence in a response brief to a motion for summary judgment, almost a year after discovery has been closed in this case.

Further, attempting to utilize a new affidavit of the plaintiff's attorney to prove the truth of the matters asserted therein, is inadmissible hearsay. Plaintiff's attorney will not testify at trial, as he was not a disclosed witness; and thus, his statements will not be admissible evidence. "When an affidavit contains an out-of-court statement offered to prove the truth of the statement, that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008). Attempting to utilize this affidavit now to support alleged factual statements is entirely unfair, self-serving, and violative of federal rules of civil procedure.

Specifically, the affidavit attached as Exhibit NN contains allegations that Jim Bracken, the owner of Riverdale Materials, threatened the plaintiff's attorney after Tri-State issued a cease-and-desist letter regarding the retention pond. Jim Bracken's alleged threats are hearsay, are inadmissible evidence, have nothing to do with the Village, and are wholly irrelevant to the issues remaining in the case.

The Court has broad discretion to determine whether a violation of Rule 37(c) is justified or harmless and a remedy proportionate with the circumstances of the party's failure to comply with discovery rules. *Beaton v. SpeedyPC Software*, 338 F.R.D 232, N.D. Illinois, Eastern Division (March 31, 2021). It is proportionate for the Court to strike and disregard Exhibit NN for the Plaintiff's violation of the Court's discovery rules. Further, any alleged disputed facts supported by this inadmissible exhibit should be disregarded.

In answering further, this alleged "fact" is wholly irrelevant to the issues remaining in this case and should be disregarded. (*SOMF*, Exhibit C, pp. 49-50, 52)

99. Mark LaRose issued a letter to Daley and Georges (Riverdale Materials' registered agent) regarding the threatening phone calls. Daley and Georges never responded. (See letter to

Daley and Georges dated February 12, 2020, attached as Exhibit OO; Declaration of Mark A. LaRose, Exhibit NN at ¶¶ 4-5).

**ANSWER:** **Admit that LaRose issued a letter to Daley and Georges; but deny the remaining assertions in paragraph 99.** As set forth in answer to paragraphs 92 and 98, Defendants again request that LaRose's affidavit be stricken, as it is not admissible evidence. In further answering, these assertions are inadmissible hearsay and irrelevant to the remaining issues in the case and should be disregarded.

100. While the Defendants criticize Tri-State for not expressing speech on matters of public concern, many members of the public, and in fact members of the ZBA expressed the same or similar criticisms: Board Members Carmelia Shipp and Mildred Blount raised questions as to why this facility should be in Riverdale. (56.1 at Ex. J (9/7/2017 Village Record of Proceedings Transcript) at pp. 29-30) Riverdale Materials owner Jim Bracken responded that it is because rich suburbs don't want us. (Id at p. 30) Ms. Shipp also expressed concerns about contamination of the site and the retention pond. (Id. at p. 77) Resident James Reynolds testified about stormwater run-off and the fact that they don't own the retention pond. (56.1 at Ex. L (11/2/2017 Village Record of Proceedings Transcript) at p. 49). Dion Dean testified complaining that information was only given to the community at the fifth hour and expressed concerns about contamination of the site, contaminated retention pond, the need for clean-up, the materials coming from the City of Chicago (Id. at pp. 50-53); Roy McKay testified there was no need for two transfer stations in Riverdale (Id. at p. 53); William Clark testified as to matters of public concern (Id. at pp. 53-57); Cynthia Gilmore testified about property values being down and that there is no need for this – she is dead set against it (Id. at pp. 57-60; 62-63); Kay Randall testified that this is not the type of business they need in Riverdale (Id. at p. 60-62); Paula Williams testified that they are operating without a

permit and that her vote is no, and this was all done without the community's knowledge, it's not a lucrative business or a needed business and they need to reconsider (Id. at pp. 83-85); Patricia Plevens says this will not benefit Riverdale and she says she's been here for a while and all she sees is tyranny (Id. at pp. 85-86); Ms. Meadors testifies that she doesn't think it will benefit the residents (Id. at p. 87).

**ANSWER:    Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 100 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). The Plaintiff concludes that because various members of the public discussed their environmental concerns about the Riverdale Material's site that Tri-State's speech was also motivated by their environmental concern for the property; despite evidence to the contrary in the 56.1 statement and other evidence. (*SOMF*, ¶¶ 65 and 66). This conclusion should be disregarded, as it is unsupported by the evidence.

In further answering, Exhibits J and L are transcripts from the Village's ZBA meetings, wherein only certain witnesses were sworn; and therefore, the majority of the comments cited above are inadmissible evidence that should be disregarded. Specifically, Carmelia Shipp, James Reynolds, Dion Dean, Roy McKay, William Clark, Cynthia Gilmore, Kay Randall, Paula Williams, Patricia Plevins, Ms. Meadors and Mildred Blount were not sworn witnesses and they were not disclosed by the Plaintiff to testify at trial; therefore, their alleged comments should be disregarded. In further answering, these assertions are inadmissible hearsay and irrelevant to the remaining issues of retaliation against plaintiff and breach of contract and should be disregarded.

101.    The Public Works Director, Jerome Russell, admitted the Mayor's policymaking

authority when he admitted that the Village Board of Trustees and the Mayor chose Flood Brothers to perform the Spring Clean-Up in 2018. (56.1 at Ex. Z, Jerome Russell Deposition, pp. 31–33).

**ANSWER:** **Deny.**

Jerome Russell did not admit the Mayor's policymaking authority and would not have the foundation to do so, even if he did. The question of whether the Mayor is a "policymaker" for purposes of a 42 U.S.C. §1983 claim is a question of law and not a statement of fact admissible under Fed.R.Civ.P. 56.1. The entirety of the testimony on pages 31-33 indicates Flood Brothers was chosen for the Spring Clean-Up via ordinance passage by the Board of Trustees. (*SOMF* Exhibit Z, pp. 31–33). In addition, Plaintiff's assertion is contrary to the Undisputed Statement of Facts, wherein it is undisputed that the Mayor did not vote on this ordinance. (*SOMF,* ¶ ¶ 32 and 45).

102.    Many residents and in fact members of the ZBA testified as to the futility and frustration that they have regarding opposing the Riverdale Materials' site, and as one resident put it "the tyranny" that has been rampant in Riverdale for years. Testimony included statements such as: all I've seen is tyranny and that's all I've seen; you took an oath to serve and protect and you're not doing that; there's no transparency, very rarely do we find out anything and when we do it's already at a critical stage, don't find out until it's too late; all you're going to do is approve, not thinking about the long-term, the effects on the lives of people and residents of Riverdale, stop thinking of yourself, think about the future of the community; a lack of information given to the community before this was even moved on, got it at the 5th hour; nobody is trying to bring anything into this community that we need, we suffer from lack of information; this community needs a lot of things, a recycling dump isn't one of them; praying for Riverdale and that the injustice will

come to an end, no integrity. (56.1 at Ex. L (11/2/2017 Village Record of Proceedings Transcript) at pp. 41, 43-44, 49-50, 56, 58, 86; Exhibit II (11/28/2017 Village Record of Proceedings Transcript) at p. 14)

**ANSWER:** **Deny.**

The Defendants deny the unsupported and conclusory assertions in paragraph 102 that are not proper and are forbidden under Local Rule 56.1. *Basta v. Am. Hotel Register Co*., 872 F.Supp.2d 694, 699-700 (N.D.Ill. 2012); *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill*., 424 F.3d 659, 674 (7th Cir. 2005). The Plaintiff concludes that because residents voiced complaints at the ZBA meetings that this is proof of a pattern of wrongdoing by the Village. This conclusion or any other conclusion drawn by review of these comments should be disregarded, as they are unsupported by admissible evidence and are not statements of fact.

In further answering, Exhibits J and L are transcripts from the Village's ZBA meetings, wherein only certain witnesses were sworn; and therefore, the majority of the comments cited above are inadmissible evidence and hearsay being used for the truth of the matters asserted therein. Plaintiff had ample time to disclose these witnesses and/or depose these witnesses; but did not do so; and therefore, their testimony is not evidence of any fact in this matter and should be disregarded.

John P. Wise (ARDC No. 6238380)
Erin E. Blake (ARDC No. 6295914)
**MONTANA & WELCH, LLC**
11950 S. Harlem Avenue, Suite 102
Palos Heights, IL 60463
(708) 448-7005
jwise@montanawelch.com
eblake@montanawelch.com

Respectfully submitted,
***VILLAGE OF RIVERDALE and***
***LAWRENCE JACKSON, DEFENDANTS***

By:     */s/ Erin E. Blake*
       One of Defendants' Attorneys